# UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF NEW YORK

MERCK EPROVA AG
       PLAINTIFF/PETITIONER
VS.

GNOSIS S.P.A.
and
GNOSIS BIORESEARCH S.A.
      DEFENDANT/RESPONDENT

CAUSE #:  1:07 CV 5898 (RJS)

CERTIFICATE OF SERVICE

This service has been completed in compliance with the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters (Done at The Hague November 15, 1965) (Entered Into Force for the U.S. on February 10, 1969). The Certificate of Service attached is also in compliance.

**ABC Legal Services, Inc.**
633 Yesler Way Seattle, WA 98104
206 521-9000
TRACKING # : 4973092

**ORIGINAL
PROOF OF SERVICE**

ALSTON & BIRD LLP
90 PARK AVENUE
NEW YORK, NY 10016
212 210 9465
Page 1 of 1
OR_WGENEVA



# PROCURA DELLA REPUBBLICA
## Presso il TRIBUNALE di MONZA
*Tel. 039.2372968 – fax: 039.323719 – e.mail procuramonza@giustizia.it*

Prot. **216/07** Reg.Not.Est.A          Monza, **4 dicembre 2007**
Risposta a nota n. 1:07CV5898 del 22.10.2007

**RICK HAMILTON**
**633 YESLER WAY**
**SEATTLE, WA 98104**
**UNITED STATES OF AMERICA**

Oggetto: atto giudiziario estero da notificare a: **GNOSIS S.P.A.**
Via Lavoratori Autobianchi n. 1
– 20033 Desio -

Si rende l'atto estero debitamente notificato all'interessato in data 29.11.2007.
Cordiali saluti.



**TRIBUNALE DI DESIO**
Sezione Distaccata del Tribunale di Monza
**20033 DESIO (I) – Via G. Galli n. 3**
tel. 0039-0362-621731  Fax 0039-0362-301373

OFFICIALI GIUDIZIARI

Cron. ⟨ 1731 ⟩ /A1/2007

---

## CERTIFICATO DI NOTIFICAZIONE O COMUNICAZIONE O
## DI MANCATA NOTIFICAZIONE O COMUNICAZIONE DI UN ATTO
### [Articolo 10 del regolamento (CE) n. 1348/2000]

---

La notificazione o comunicazione è effettuata il più presto possibile. Comunque, se non è stato possibile effettuarla entro un termine di un mese a decorrere dalla data di ricezione, il servizio ricevente lo comunica al servizio mittente (a norma dell'articolo 7, paragrafo 2, del regolamento).

---

☒ 12.  ATTUAZIONE DELLA NOTIFICAZIONE O COMUNICAZIONE

a)  12.1.  Data e luogo della notificazione o comunicazione: **29 NOV. 2007   DESIO**

b)  12.2.  L'atto è stato: _____

    A)  12.2.1.  notificato o comunicato a norma della legislazione dello Stato membro richiesto, ossia: ____

    ☒  12.2.1.1.  consegnato: _____ )

        12.2.1.1.1.  personalmente al destinatario: _____

        12.2.1.1.2.  ad un'altra persona: _____

        12.2.1.1.2.1.  Nome: **ENOSIS S.p.a.**

        12.2.1.1.2.2.  Indirizzo: _____

          12.2.1.1.2.2.1.  Via + numero/C.P.: **LAVORATORI AUTOBIANCHI-1-**

          12.2.1.1.2.2.2.  Luogo + codice: **DESIO 20033**

          12.2.1.1.2.2.3.  Paese: _____

        12.2.1.1.2.3.  Legame con il destinatario: _____

        Familiare _____ (Dipendente) _____ Altro _____
        *Sig. Rossi Carlo Alberto*

        12.2.1.1.3.  al domicilio del destinatario: _____

    ▷  12.2.1.2.  notificato o comunicato per posta _____

        12.2.1.2.1.  senza ricevuta di ritorno: _____

        12.2.1.2.2.  con l'allegata ricevuta di ritorno: _____

        12.2.1.2.2.1.  del destinatario: _____

        12.2.1.2.2.2.  di un'altra persona: _____

        12.2.1.2.2.2.1.  Nome: _____

PERVENUTO
alle ore ..........
- 3 DIC. 2007
PROCURA REPUBBLICA
c/o TRIBUNALE MONZA

12.2.1.2.2.2.2.  Indirizzo: _____

    12.2.1.2.2.2.2.1.  Via + numero/C.P.: _____

    12.2.1.2.2.2.2.2.  Luogo + codice: _____

    12.2.1.2.2.2.2.3.  Paese: _____

    12.2.1.2.2.2.3.  Legame con il destinatario: _____

Familiare _____ Dipendente _____ Altro _____

_____

12.2.1.3.  notificato o comunicato in altra forma (precisare): _____

_____

B) 12.2.2.  notificato o comunicato nella forma particolare seguente (precisare): _____

_____

c) 12.3.  Il destinatario dell'atto è stato informato (oralmente) (per iscritto) che può rifiutare di riceverlo se non è redatto in una delle lingue ufficiali del luogo di notificazione o comunicazione o in una lingua ufficiale dello Stato membro mittente di sua comprensione.

## 13.  COMUNICAZIONE A NORMA DELL'ARTICOLO 7, PARAGRAFO 2

Non è stato possibile effettuare la notificazione o comunicazione entro un mese dalla ricezione.

## 14.  RIFIUTO DELL'ATTO

Il destinatario ha rifiutato di accettare l'atto a causa della lingua utilizzata. Si allega la documentazione al presente certificato.

## 15.  MOTIVO DELLA MANCATA NOTIFICAZIONE O COMUNICAZIONE DELL'ATTO

15.1.  Indirizzo sconosciuto: _____

15.2.  Destinatario irreperibile: _____

15.3.  Impossibilità di notificare l'atto entro la data o la scadenza di cui al punto 6.2: _____

15.4.  Altro (precisare): _____

Si allega la documentazione al presente certificato.

Fatto a: **DESIO** _____

Data    **2 9 NOV. 2007** _____

            TRIBUNALE - DESIO

Firma e/o timbro:    L'Ufficiale Giudiziario
                 (Leocata Nicolò)

BALZANELLI - MONTEROTONDO - TEL. 06/9068000



# PROCURA DELLA REPUBBLICA
## presso il TRIBUNALE di MONZA
*Tel. 039.2372968 – fax: 039.323719 – e.mail procuramonza@giustizia.it*

| P.M. **216/07** NEA | *( da citare nella corrispondenza )* |
|---|---|

### IL P.M.

Vista la richiesta prot. **7576 U.u.**                in data **20.11.2007**

Con cui si richiede la notificazione di atto giudiziario estero a:
**GNOSIS S.P.A.**
**via Lavoratori Autobianchi n. 1  – 20033 Desio –**

Visto l'art. 71 Legge 31/05/1995 n. 218

### AUTORIZZA E RICHIEDE

Ufficiale giudiziario di **Desio** competente nel territorio per la notifica del suddetto atto.

Monza,  **26 novembre 2007**

### IL SOST. PROCURATORE DELLA REPUBBLICA
Dr. Walter MAPELLI

PROCURA DELLA REPUBBLICA
M O N Z A

**2 6 NOV. 2007**

PROT. N° 216 /or O.T.A.
/07                    DESIO

*UFFICIO UNICO DEGLI UFFICIALI GIUDIZIARI*
*PRESSO LA CORTE DI APPELLO DI ROMA*
<u>*SEZIONE NOTIFICHE ESTERE*</u>
*VIALE GIULIO CESARE, 52*
*00192 ROMA-ITALIA*

*PROT.* 7576

*Roma,* 20.11.07

*Al Signor Procuratore della Repubblica*

20052  Monza

*Si invia ai sensi dell'art. 4 del Regolamento 1348/2000 del Consiglio Europeo un*

*atto proveniente dall'estero che deve essere notificato a:*

Givoss SPA

Vi Lavoratori Autobianchi 1

20033 Desio    (MI)

*Si chiede che la S.V. Ill.ma, previa autorizzazione di cui all'art. 71 della Legge*

*n. 218/95, lo invii all'Ufficiale Giudiziario competente per territorio.*

<u>*Si prega di effettuare la relata di notifica nell'apposito modello allegato,*</u>
<u>*previsto dall'art. 10 del Regolamento CE 1348/2000.*</u>

*Con Osservanza*

7576

# REQUEST
# FOR SERVICE ABROAD OF JUDICIAL OR EXTRAJUDICIAL DOCUMENTS

**Convention on the service abroad of judicial and extrajudicial documents in civil or
commercial matters, signed at The Hague, November 15, 1965.**

| Identity and address of the applicant | Address of receiving authority |
|---|---|
| **Rick Hamilton**<br>**633 Yesler Way**<br>**Seattle, WA 98104**<br>**United States of America**<br><br>Authorized applicant pursuant to public law 97-351 of Feb. 26, 1983<br>which amended rule 4(c) 2(a) Federal Rules of Civil Procedure | L'UFFICIO UNICO DEGLI UFFICIALI<br>GIUDIZIARI PRESSO LA CORTE D'APPELLO LA<br>CORT<br>D'APPELLO DI ROMA<br>ROME |

The undersigned applicant has the honour to transmit-in-duplicate the documents listed below and, in
conformity with article 5 of the above-mentioned Convention, requests prompt service of one copy thereof
on the addressee, i.e.;
(identity and address)

**Gnosis S.p.A.**
**VIA LAVORATORI AUTOBIANCHI 1**
**20033 DESIO (MI)**
**ITALY**
DOB:                                    Phone:

☒ (a) in accordance with the provisons of sub-paragraph (a) of the first paragraph of article 5 of the Convention.*

☐ (b) in accordance with the following particular method (sub-paragraph (b) of the first paragraph of article 5):*

_____

_____

☐ (c) by delivery to the addressee, if he accepts it voluntarily (second paragraph of aticle 5).*

The authority is requested to return or to have returned to the applicant a copy of the documents – and of the
annexes* – with a certificate as provided on the reverse side.

Hearing Date:

List of documents:

SUMMONS IN A CIVIL CASE; FIRST AMENDED COMPLAINT
WITH JURY DEMAND; CORPORATE DISCLOSURE
STATEMENT; INDIVIDUAL PRACTICES OF RICHARD J.
SULLIVAN; INDIVIDUAL PRACTICES OF MAGISTRATE
JUDGE DEBRA FREEMAN; CONSENT TO PROCEED
BEFORE UNITED STATES MAGISTRATE JUDGE (BLANK);
CRITICAL INSTRUCTIONS TO ATTORNEYS (SUBMITTED IN
DUPLICATE WITH TRANSLATIONS)

Done at Seattle, Washington USA, on Oct 29 2007

Signature and/or stamp

**PFI** | PROCESS
FORWARDING
INTERNATIONAL

TRACKING #: 4973092

USM-94 (Est. 11/22/77)
(Formerly OBD-116, which was formally LAA-116, both of which may still be used)
* Delete if inappropriate

# SUMMARY OF THE DOCUMENT TO BE SERVED

Convention on the service abroad of judicial and extrajudicial documents in civil or commercial matters, signed at The Hague, November 15, 1965.

### (article 5, fourth paragraph)

Name and address of the requesting authority:    **Rick Hamilton**
**633 Yesler Way**
**Seattle, WA 98104**
**United States of America**

Particulars of the parties:
    **MERCK EPROVA AG**          vs.    **GNOSIS S.P.A.**
                                            **and**
                                            **GNOSIS BIORESEARCH S.A.**

## JUDICIAL DOCUMENT*

Nature of the document:
    To give notice to the Defendant of the institution against them of a claim for civil damages, and summon them to answer to the claim.

Nature and purpose of the proceedings and, where appropriate, the amount in dispute:
    Plaintiff is seeking an injunctive judgment to recover civil damages, amount to be determined in court.

Date and place for entering appearance:*
    Defendant has twenty days from receipt of the Summons to answer to the claim, address is noted on the Summons.

Court which has given judgment:*
    n/a

Date of judgment:*
    n/a

Time limits stated in the document:*
        Hearing Date:

## EXTRAJUDICIAL DOCUMENT*

Name and purpose of the document:
    n/a

Time limits stated in the document:*
    n/a

# CERTIFICATE

**The undersigned authority has the honour to certify, in conformity with article 6 of the Convention,**

1) that the document has been served*
   the (date) _____
   at (place, street, number) _____
   _____

   in one of the following methods authorized by article 5:

   ☐ (a) in accordance with the provisions of sub-paragraph (a)
   of the first paragraph of article 5 of the Convention.*

   ☐ (b) in accordance with the following particular method:*
   _____
   _____

   ☐ (c) by delivery to the addressee, who accepted it voluntarily.*

   The documents referred to in the request have been delivered to:
   (identity and description of person)
   _____
   _____

   relationship to the addressee family, business, or other
   _____

2) that the document has not been served, by reason of the following facts:*
   _____
   _____

**In conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement.***

Annexes

Documents returned:
_____        Done at _____, the _____
_____
_____        Signature and/or stamp

In appropriate cases, documents establishing
the service:
_____        _____
_____
_____

TRACKING #: 4973092



USM-94 (Est. 11/22/77)
(Formerly OBD-116, which was formally LAA-116, both of which may still be used)
* Delete if inappropriate

AO 440 (Rev. 10/93) Summons in a Civil Action - SDNY WEB 4/99

# United States District Court

Southern _____ **DISTRICT OF** New York

MERCK EPROVA AG

**SUMMONS IN A CIVIL CASE**

**V.**

CASE NUMBER: 1:07 CV 5898 (RJS)

Gnosis S.P.A.
     AND
Gnosis Bioresearch S.A.

TO: (Name and address of defendant)
Gnosis S.P.A.
Via Lavoratori Autobianchi 1
20033 Desio (MI) Italy

Gnosis Bioresearch SA
Via Lischedi,
CH-6592
San Antonino, Switzerland

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Robert E. Hanlon
Thomas J. Parker
Alston & Bird LLP
90 Park Avenue
New York, New York 10016

an answer to the complaint which is herewith served upon you, within _____ 20 _____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON

_____        DATE    OCT 2 2 2007
CLERK    Marcos Quintero
_____
(BY) DEPUTY CLERK

AO 440 (Rev. 10/93) Summons in a Civil Action -SDNY WEB 4/99

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and Complaint was made by me[1] | |
| NAME OF SERVER (PRINT) | TITLE |

*Check one box below to indicate appropriate method of service*

☐  Served personally upon the defendant. Place where served: _____

☐  Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.
Name of person with whom the summons and complaint were left: _____

☐  Returned unexecuted: _____

☐  Other (specify): _____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____     _____
　　　　　　　　　　Date　　　　　　　　　　　　　　　　Signature of Server

　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　Address of Server

_____
(1)　　As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **MERCK EPROVA AG** | |
| **Plaintiff,** | 1:07 CV 5898 $(RJS)$ |
| -v.- | |
| **GNOSIS S.P.A.** | |
| **and** | **FIRST AMENDED COMPLAINT** |
| **GNOSIS BIORESEARCH S.A.** | **(JURY DEMAND)** |
| **Defendant.** | |

Plaintiff Merck Eprova AG ("Merck") files this First Amended Complaint against Defendant Gnosis, S.p.A. and Gnosis Bioresearch SA (collectively "Gnosis" or "Defendant") and in support thereof alleges as follows:

### NATURE AND BASIS OF ACTION

1.     This action arises out of Defendant's knowing and willful false and misleading labeling of its product. Defendant's actions constitute false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(b); contributory false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(b); federal unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); unfair competition in violation of New York common law; deceptive trade practices in violation of N.Y. Gen. Bus. Law § 349(h); and false advertising in violation of N.Y. Gen. Bus. Law § 350(e)(3).   Merck seeks temporary, preliminary and permanent injunctive relief, actual damages, punitive damages, and

recovery of Merck's costs and reasonable attorneys' fees incurred in connection with this action.

## THE PARTIES

2.      Merck is a Swiss corporation with a principal place of business at Im Laternenacker 5, CH-8200 Schaffhausen, Switzerland.

3.      Upon information and belief, Gnosis S.p.A. is an Italian corporation with its principal place of business at Via Lavoratori Autobianchi 1, 20033 Desio (MI) Italy. Gnosis Bioresearch SA, is a Swiss association, with a principal place of business at Via Lischedi, CH-6592 San Antonino, Switzerland.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338 because this case arises under the Lanham Act 15 U.S.C. §§ 1051, *et seq.*

5.      This Court has jurisdiction over Merck's state law claims pursuant to 28 U.S.C. § 1367 and the doctrine of supplemental jurisdiction.

6.      This Court has personal jurisdiction over the Defendant because the Defendant transacts business within the State of New York, contracts to supply goods or services in the State of New York, and has engaged in tortious acts within the State of New York.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and injury giving rise to Merck's claims have and continue to occur in this district, and because the Defendant is a foreign person and venue is proper in any District pursuant to 28 U.S.C. § 1391(d).

## FACTUAL BACKGROUND

A.     **Merck, Its Product L-5-MTHF and Its Famous Trademark, METAFOLIN**

8.     Merck Eprova is the Swiss affiliate of Merck KGaA and provides active pharmaceutical and dietary ingredients to the pharmaceutical and nutritional industry for use in clinical trials and commercial product applications.  One such product is marketed in connection with famous and distinctive trademarks consisting in whole or in part of the term METAFOLIN (the "METAFOLIN Marks").

9.     The METAFOLIN Marks have been used by Merck and its customers in connection with the dietary ingredient N-[4-[[(2-amino-5,6,7,8-tetrahydro-4-hydroxy-5-methyl-(6S)-pteridinyl)methyl]amino]benzoyl]-L-glutamic acid, calcium salt, called L-5-methyltetrahydrofolic acid calcium salt ("L-5-MTHF").

10.     Merck filed a New Dietary Ingredient Notification with the FDA in 2001 for its dietary ingredient L-5-MTHF for use in dietary supplements.  L-5-MTHF is a source of folate, an essential human vitamin of the B complex.

11.     For over 5 years, the dietary ingredient L-5-MTHF has been used in dietary supplements, including, pregnancy vitamins, medical foods, nutritional supplements, and food for special dietary use.

12.     The METAFOLIN Marks are owned by Merck KGaA.  Merck Eprova has an exclusive license from Merck KGaA to use these METAFOLIN Marks in the United States.  Merck KGaA owns Trademark Registration Nos. 3001087 and 2526532 in the United States Patent and Trademark Office for the METAFOLIN Marks.

13.     Merck began manufacturing and distributing its L-5-MTHF dietary ingredient in 2002.  Since then, Merck and its customers have established a considerable

market in the United States for the product marketed, distributed, imported, and sold. Merck receives substantial revenue from its L-5-MTHF dietary ingredient.

14.    Plaintiff Merck is the sole importer, licensor, and primary distributor of the bulk substance L-5-MTHF in the United States, directly and through its licensees. Merck supplies L-5-MTHF as a bulk substance.  Merck's customers use METAFOLIN brand L-5-MTHF in various dietary supplements, medical foods, nutritional supplements, pregnancy vitamins, and food for special dietary use.  The presence of genuine L-5-MTHF is used by Merck's customers as a unique selling point.  Merck distributes, as well as, licenses METAFOLIN brand L-5-MTHF to its customers.

15.    Merck has conducted extensive clinical and laboratory trials and testing on its L-5-MTHF.

16.    The unique benefits of L-5-MTHF come from the fact that it consists of a single diastereoisomer of the compound 5-methyltetrahydrofolic acid and the fact that it is a stable crystalline product.

17.    Many products, such as 5-methyltetrahydrofolic acid, naturally occur as mixtures of two or more diastereoisomers.

18.    The various diastereoisomers that are present in such mixtures can have radically different properties from one another. In some cases, one diastereoisomer can have a therapeutic effect, while another diastereoisomer is therapeutically ineffective.  In the most severe instances, one diastereoisomer may be highly toxic while another diastereoisomer may have incredible pharmacological utility.  Thus, there are often great benefits to providing patients and consumers with a product that contains only a single diastereoisomer as opposed to a diastereoisomeric mixture.

25.    Over the years, Merck has spent many millions of dollars researching and developing its L-5-MTHF, and devotes significant financial resources each year to marketing its product.

26.    Defendant is in no way affiliated with Plaintiff Merck or its related entities.

27.    Merck is acclaimed worldwide for its novel drugs and therapeutic products.

28.    Merck's products are some of the most well-known and well-respected medical and dietetic products worldwide.

29.    Over the years, Merck has worked hard to expand and to build its trade name, trademarks and products.

30.    Merck has over the years worked extremely hard to ensure that the quality of the Merck product L-5-MTHF is extraordinarily high and that this product is of the highest safety and efficacy.

31.    For example, Merck conducted countless experiments and tests to determine the safety and efficacy of its L-5-MTHF, and spent years and millions of dollars on research and development to discover and perfect the product.

**B.    Defendant's Unlawful Conduct**

32.    Upon information and belief, Defendant is a manufacturer, distributor and supplier of nutritional dietary ingredients, among other things.

33.    Through its agents, Gnosis sells and distributes its products worldwide, including sale and distribution into the United States and into New York State, in particular.

34.    Gnosis sells the dietary ingredient, 5-MTHF, the diastereoisomeric mixture, which it has falsely labeled and continues to falsely label as the pure L-5-MTHF diastereoisomer (the "Gnosis Compound").

35.    That Gnosis mislabels its product by using the L-5-MTHF label is readily apparent because Gnosis fails to follow standard labeling language that has been approved by the FDA.   Specifically, the FDA issued a New Dietary Ingredient Notification ("NDI") for another company seeking to use and market 5-MTHF, the identical ingredient that makes up the Gnosis Compound.   The NDI stated that the requesting company must label its product as "methyltetrahydrofolate" or "5-MTHF." Thus, FDA ruling establishes that it is improper to label Gnosis's 5-MTHF product as L-5-MTHF.

36.    In October 2006, Merck was first alerted to the fact that Defendant was distributing and actively marketing a product which Defendant claimed was L-5-MTHF in countries such as the United States and Germany.

37.    The website of Denk Feinchemie GmbH (www.denk-feinchemie.de), international distributors of raw materials, provided as of October, 2006 that Gnosis was the manufacturer of L-5-MTHF, specifically L-5-Methyltetrahydrofolic acid calcium salt.

38.    In a press release dated April 10, 2007, Gnosis announced that it was entering into a new distribution agreement with a UK-based company for the sale of Gnosis products in the United Kingdom and Ireland.   One of the products subject to the agreement is Extrafolate, which, according to the press release of Gnosis, is allegedly L-5-Methyltetrahydrofolic acid and calcium salt.

39.    Upon information and belief, Gnosis is providing the Gnosis Compound to be marketed as Extrafolate.

40.    Gnosis has provided the Gnosis Compound to other distributors, including AHD International LLC ("AHD"), a Georgia corporation.

41.    Merck filed suit against AHD in the Northern District of Georgia, Case No. 1:07 CV-0597 ("the AHD Action"), for, *inter alia,* falsely labeling its ingredient as the pure L-5-MTHF diastereoisomer, when, in fact, that ingredient contained the diastereoisomeric mixture 5-MTHF and not pure L-5-MTHF.

42.    As part of a settlement agreement in the AHD Action, AHD has since ceased selling and advertising 5-MTHF, however, not before revealing that its diastereoisomeric mixture product was manufactured and supplied by Gnosis.

43.    Merck has obtained samples of the Gnosis Compound and performed analytical tests to determine the composition of the Gnosis Compound.

44.    These tests concluded that the Gnosis Compound is not pure L-5-MTHF, but is instead the diastereoisomeric mixture 5-MTHF.

45.    Also as part of that settlement agreement in the AHD Action, AHD provided Merck with copies of the certificates of analysis that AHD received from Gnosis for the 5-MTHF product AHD received from Gnosis.

46.    Those certificates of analysis, product labels, and product specification, which Gnosis provided to AHD and to its other customers, falsely claim that the Gnosis Compound is pure L-5-MTHF when, in fact, it is not.

47.    Gnosis has knowledge that the Gnosis Compound is the diastereoisomeric mixture 5-MTHF and not the pure L-5-MTHF diastereoisomer.

48.    Gnosis has admitted to Merck on multiple occasions, directly and through outside counsel, that the Gnosis Compound is the diastereoisomeric mixture 5-MTHF and not the L-5-MTHF diastereoisomer.

49.    Despite these admissions, Gnosis continues to falsely represent to its distributors and the consuming public that the Gnosis Compound consists only of the pure L-5-MTHF diastereoisomer.

50.    Upon information and belief, through materials accessible through the internet and through materials distributed to customers and potential customers, Gnosis has marketed its diastereoisomeric mixture 5-MTHF product as the pure L-5-MTHF diastereoisomer in an effort to induce customers to believe that the Gnosis Compound was genuine L-5-MTHF, when it is not, or to believe that the Gnosis Compound is equivalent to L-5-MTHF, when it is not.

51.    Gnosis has performed the aforementioned acts globally, as well as within the United States and the State of New York.

52.    Gnosis is deliberately misrepresenting to consumers, the public and the marketplace that the Gnosis Compound has the same efficacy and safety as Merck's proprietary L-5-MTHF, when, in fact, the two products are not the same and do not have the same therapeutic effect.

53.    Upon information and belief, Gnosis knew that its customers were improperly labeling the Gnosis Compound as L-5-MTHF and allowed and encouraged the customers to label the Gnosis Compound as L-5-MTHF, despite it being the diastereoisomeric mixture 5-MTHF.

54.    Gnosis has advertised that the Gnosis Compound is a pure diastereoisomer and of the highest quality, when, in fact, it is not.

55.    The Gnosis Compound is marketed as a competing product to genuine L-5-MTHF.

56.    The public's use of the Gnosis Compound will have inferior therapeutic results as compared to L-5-MTHF and will cause consumers to doubt the overall efficacy of all L-5-MTHF products.

57.    Any of the above results could expose the general public, including the United States and New York consumers, to dangerous medical implications.

58.    The distribution and sale of the Gnosis Compound has and will continue to cause Merck to lose sales of its genuine L-5-MTHF to both existing Merck customers and to potential customers.

59.    The association of the Gnosis Compound as genuine L-5-MTHF is likely to tarnish the reputation of both Merck and its L-5-MTHF in that the Gnosis Compound fails to provide the expected level of purity and is far inferior to L-5-MTHF.

## COUNT I

### FALSE ADVERTISING

60.    Merck incorporates herein and realleges, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 through 59 above, inclusive.

61.    Defendant's statements made to the press, statements made on the internet, advertising and promotions, and labeling of the Gnosis Compound, which state that the Gnosis Compound is composed of the pure L-5-MTHF diastereoisomer, are materially false statements that are likely to cause consumer confusion, mistake, or deception as to

the quality and reliability of the Gnosis Compound. These are material misrepresentations upon which customers or potential customers have, and will rely. Defendant's actions therefore mislead and harm customers and consumers as well as damage Merck's good name and reputation in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

62.    Defendant's distribution of certificates of analysis which state that the Gnosis Compound is the pure L-5-MTHF diastereoisomer are materially false statements that are likely to cause consumer confusion, mistake or deception as to the quality and reliability of the Gnosis Compound. These are material misrepresentations upon which customers or potential customers have and will rely. Defendant's actions, therefore, mislead and harm customers and consumers as well as damage Merck's good name and reputation in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

63.    Given Gnosis's knowledge and admissions that the Gnosis Compound is the diastereoisomeric mixture 5-MTHF, and not the pure L-5-MTHF diastereoisomer, the aforesaid acts were undertaken willfully and deliberately and with the intention of causing confusion, mistake, or deception.

64.    The aforesaid acts of Defendant have caused, and will continue to cause, damage to Plaintiff in an amount to be determined at trial.

65.    The aforesaid acts of Defendant have caused, and unless restrained and enjoined by this Court, will continue to cause irreparable harm, loss, and injury to Plaintiff for which Plaintiff has no adequate remedy at law.

**COUNT II**

**CONTRIBUTORY FALSE ADVERTISING**

66.    Merck incorporates herein and realleges, as if fully set forth in this Paragraph, the allegations of Paragraphs 1 through 65 above, inclusive.

67.    Defendant has falsely told its distributors that the Gnosis Compound is the pure L-5-MTHF diastereoisomer.

68.    Upon information and belief, Defendant has provided false certificates of analysis, product labels and product specifications, to its distributors which state that the Gnosis Compound is the pure L-5-MTHF diastereoisomer.

69.    Defendant induced its distributors to engage in false advertising by labeling and marketing the Gnosis Compound as the pure L-5-MTHF diastereoisomer.

70.    Defendant knew or had reason to know that its distributors would engage in false advertising by labeling and marketing the Gnosis Compound as the pure L-5-MTHF diastereoisomer.

71.    As a result, Gnosis's distributors made materially false statements that are likely to cause consumer confusion, mistake, or deception as to the quality and reliability of the Gnosis Compound.  These are material misrepresentations upon which customers or potential customers have and will rely.  Defendant's actions, therefore, caused its distributors to mislead and harm customers and consumers as well as damage Merck's good name and reputation in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

72.    Given Gnosis's knowledge and admissions that the Gnosis Compound is the diastereoisomeric mixture 5-MTHF and not the pure L-5-MTHF diastereoisomer, the

aforesaid acts were undertaken willfully and deliberately and with the intention of causing confusion, mistake, or deception.

73.    The aforesaid acts of Defendant have caused, and will continue to cause, damage to Plaintiff in an amount to be determined at trial.

74.    The aforesaid acts of Defendant have caused, and unless restrained and enjoined by this Court, will continue to cause irreparable harm, loss, and injury to Plaintiff for which Plaintiff has no adequate remedy at law.

## COUNT III

### USE OF FALSE DESCRIPTIONS AND FALSE REPRESENTATIONS

75.    Merck incorporates herein and realleges, as if fully set forth in this paragraph, the allegations of paragraphs 1 through 74 above, inclusive.

76.    Defendant's statements made to the press, statements made on the internet, advertising and promotions, and labeling of the Gnosis compound, which state that the Gnosis Compound is the pure L-5-MTHF diastereoisomer, are materially false statements that misrepresent the nature, characteristics, and quality of the Gnosis Compound.

77.    Defendant's distribution of certificates of analysis, which state that the Gnosis Compound is the pure L-5-MTHF diastereoisomer, are materially false statements that misrepresent the nature, characteristics, and quality of the Gnosis Compound.

78.    Such materially false statements have caused and are likely to continue to cause consumer confusion, mistake, or deception as to quality and reliability of the Gnosis Compound.

79.    Gnosis, therefore, has willfully promoted the Gnosis Compound in interstate commerce so as to cause confusion or mistake among the public as to the

quality and content of the Gnosis Compound, all to Gnosis's profit and the public's and Merck's damage.

80.    Given Gnosis's knowledge and admissions that the Gnosis Compound is the diastereoisomeric mixture 5-MTHF and not the pure L-5-MTHF diastereoisomer, the aforesaid acts were undertaken willfully and deliberately.

81.    The aforesaid acts of Gnosis constitute use of false descriptions and false representations in interstate commerce in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

82.    The aforesaid acts of Gnosis have caused, and will continue to cause, damage to Plaintiff in an amount to be determined at trial.

83.    The aforesaid acts of Defendant have caused, and unless restrained and enjoined by this Court, will continue to cause irreparable harm, loss, and injury to Plaintiff for which Plaintiff has no adequate remedy at law.

## COUNT IV

## COMMON LAW UNFAIR COMPETITION

84.    Merck incorporates herein and realleges, as if fully set forth in this paragraph, the allegations of paragraphs 1 through 83 above, inclusive.

85.    Gnosis has made false statements to the public and its customers and has mislabeled the Gnosis Compound with the intent of deceiving and misleading the public as to the quality and nature of its product.

86.    The aforesaid acts have enabled Gnosis to misappropriate the labors and expenditures of Merck in developing the market for the pure L-5-MTHF diastereoisomer.

87.    Additionally, the aforesaid acts have caused, and are likely to continue to cause injury to the public and to Merck's business representation, and result in Gnosis unfairly competing with Merck.

88.    Given Gnosis's knowledge and admissions that the Gnosis Compound is the diastereoisomeric mixture 5-MTHF and not the pure L-5-MTHF diastereoisomer, the aforesaid acts were undertaken willfully and deliberately.

89.    The aforesaid acts of Defendant have caused, and will continue to cause, damage to Plaintiff in an amount to be determined at trial.

90.    The aforesaid acts of Defendant have caused, and unless restrained and enjoined by this Court, will continue to cause irreparable harm, loss, and injury to Plaintiff for which Plaintiff has no adequate remedy at law.

## COUNT V

### DECEPTIVE TRADE PRACTICES
### IN VIOLATION OF N.Y. GEN. BUS. LAW § 349(H)

91.    Merck incorporates herein and realleges, as if fully set forth in this paragraph, the allegations of paragraphs 1 through 90 above, inclusive.

92.    Gnosis has been and is engaging in willful deceptive acts or practices in New York against Merck and the public in the conduct of its business through the following consumer-oriented acts: making false and misleading statements in press releases; making false and misleading statements on the internet; making false and misleading commercial advertising or promotions; mislabeling the Gnosis Compound as the pure L-5-MTHF diastereoisomer; and providing false and misleading certificates of analysis and product specification, all of which, upon information and belief, materially misrepresent the nature, characteristics and qualities of the goods and services associated

with the Gnosis Compound. The aforesaid acts of Gnosis are in violation of N.Y. Gen. Bus. Law § 349(h).

93.    The aforesaid misleading acts of Gnosis have additionally caused, and are likely to continue to cause injury to the public, including consumers in New York, and injury to Merck's business reputation.

94.    Gnosis's acts have caused, and unless restrained by this Court, will continue to cause, great and irreparable damage to the public and to Merck's business and goodwill for which Merck and the pubic have no adequate remedy at law.

95.    As a result of Gnosis's willful and intentional misconduct, Merck and the public are therefore entitled to appropriate relief as prayed for hereinafter, including preliminary and permanent injunctive relief.

96.    Moreover, Gnosis's willful and knowing violation of Section 349(h) warrants treble damages and the recovery of attorneys' fees.

## COUNT VI

### FALSE ADVERTISING
### IN VIOLATION OF N.Y. GEN. BUS. LAW § 350(E)(3)

97.    Merck incorporates herein and realleges, as if fully set forth in this paragraph, the allegations of paragraphs 1 through 96 above, inclusive.

98.    Gnosis has been and is engaging in false advertising in New York against Merck and the public in the conduct of its business through the following consumer-oriented acts: making false and misleading statements in press releases; making false and misleading statements on the internet; making false and misleading commercial advertising or promotions; mislabeling the Gnosis Compound as the pure L-5-MTHF diastereoisomer; and providing false and misleading certificates of analysis and product

specification, all of which, upon information and belief, materially misrepresent the nature, characteristics and qualities of the goods and services associated with the Gnosis Compound. The aforesaid acts of Gnosis are in violation of N.Y. Gen. Bus. Law § 350(e)(3).

99. The aforesaid false statements of Gnosis have additionally caused, and are likely to continue to cause injury to the public, including consumers in New York, and injury to Merck's business representation.

100. Gnosis's acts have caused, and unless restrained by this Court, will continue to cause, great and irreparable damage to the public and to Merck's business and goodwill for which Merck and the pubic have no adequate remedy at law.

101. As a result of Gnosis's willful and intentional misconduct, Merck and the public are therefore entitled to appropriate relief as prayed for hereinafter, including preliminary and permanent injunctive relief.

102. Moreover, Gnosis's willful and knowing violation of Section 350(e)(3) warrants treble damages and the recovery of attorneys' fees.

**JURY DEMAND**

MERCK demands a trial by jury of all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Merck respectfully prays for the following relief:

A. The Court enter judgment that Defendant, as a result of its willful, deliberate, and materially false statements regarding the quality and content of its product has: engaged in false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(b); engaged in contributory false advertising in violation of Section

43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(b); engaged in federal unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); engaged in unfair competition in violation of New York common law; engaged in deceptive trade practices in violation of N.Y. Gen. Bus. Law § 349(h); and engaged in false advertising in violation of N.Y. Gen. Bus. Law § 350(e)(3).

   B.  The Court issue temporary, preliminary, and permanent injunctions ordering Defendant to, *inter alia*, immediately cease all distribution and sale of the Gnosis Compound;

   C.  The Court order a recall of all of the Gnosis Compound currently in the marketplace;

   D.  The Court order a recall of all products containing the Gnosis Compound currently in the marketplace;

   E.  The Court order that Gnosis engage in a program of corrective advertising, satisfactory to Merck, to ameliorate the false and misleading information that Gnosis has promulgated;

   F.  The Court grant an award of damages in an amount sufficient to compensate Merck for injury it has sustained as a consequence of Defendant's unlawful acts;

   G.  The Court grant an award of treble damages;

   H.  The Court grant an award of punitive damages in an amount sufficient to punish and deter Defendant from engaging in further knowing acts of unfair competition;

   I.  The Court grant the costs of this action and the reasonable attorneys' fees Merck incurs in connection with this action; and

J.    The Court grant such other, different, and additional relief as the Court

deems just and proper.

Dated: October 22, 2007

Respectfully submitted,

By: _____
Robert E. Hanlon (RH 8794)
Thomas J. Parker (TP 7219)
Alston & Bird LLP
90 Park Avenue
New York, New York 10016
Tel: 212-210-9400
Fax: 212-210-9444
robert.hanlon@alston.com
thomas.parker@alston.com

*Attorneys for Plaintiff Merck Eprova AG*