AO 440 (Rev. 10/93) Citazione in azione civile – SDNY WEB 4/99

# TRIBUNALE FEDERALE DI PRIMA ISTANZA

### DISTRETTO Meridionale DI New York

Merck Eprova AG

**CITAZIONE CAUSA CIVILE**

**V.**                                    N. caso: 1:07 CV 5898 (RJS)

GNOSIS S.P.A.
E
GNOSIS BIORESEARCH S.A.

**A:** (Nome e indirizzo del convenuto)

GNOSIS S.P.A.                          GNOSIS BIORESEARCH S.A.
VIA LAVORATORI AUTOBIANCHI 1           Via Lischedi
20033 Desio (MI) Italia                CH – 6592
                                       SAN ANTONINO, SVIZZERA

**La S.V. è citata** e Vi si richiede di notificare all'AVVOCATO DEL RICORRENTE (nome e indirizzo)

> Robert E. Hanlon
> Thomas J. Parker
> ALSTON & BIRD LLP
> 90 PARK AVENUE
> New York, New York 10016

una risposta al ricorso allegato alla presente entro _____20_____ giorni dalla notifica della presente citazione, escluso il giorno di notifica. In caso di mancata risposta si procederà a giudizio in contumacia nei Vs. confronti per la riparazione oggetto del ricorso. È inoltre necessario depositare la Vs. risposta presso il Cancelliere del presente Tribunale entro un ragionevole periodo di tempo dopo la notifica.

J. MICHAEL McMAHON                     **22 OTT 2007**

_____               _____
CANCELLIERE                            DATA

[Firma autografa] Marcos Quintero

_____
(VISTO) VICE CANCELLIERE

AO 440 (Rev. 10/93) Citazione in azione civile – SDNY WEB 4/99

---

## RELATA DI NOTIFICA

| | DATA |
|---|---|
| La notifica della Citazione e del Ricorso è stata eseguita dal sottoscritto | |
| NOME DEL MESSO NOTIFICATORE *(IN STAMPATELLO)* | TITOLO |

*Selezionare una delle caselle sottostanti per indicare il metodo di notifica*

☐ Notificato personalmente al convenuto. Luogo di notifica: _____

☐ Lasciate copie del documento presso l'abitazione o la residenza abituale a persone maggiorenni e responsabili e al momento conviventi

☐ Notifica non avvenuta: _____

☐ Altro *(specificare)*: _____

### DICHIARAZIONE DI SPESE DI NOTIFICA

| SPESE DI VIAGGIO | SPESE DI NOTIFICA | TOTALE |
|---|---|---|

### DICHIARAZIONE DEL MESSO NOTIFICATORE

Il sottoscritto dichiara sotto la propria personale responsabilità (secondo quanto previsto dalle leggi degli Stati Uniti d'America in caso di falsa testimonianza) che le informazioni contenute nella Relata di notifica e nella Dichiarazione di spese di notifica rispondono a verità.

Eseguito il _____        _____
           Data                        Firma del messo notificatore


                                     _____
                                     Indirizzo del messo notificatore

_____

---

(1)  Fare riferimento alla Regola 4 delle Regole Federali di Procedura Civile per chi può notificare una citazione

**TRIBUNALE FEDERALE DI PRIMA ISTANZA
DISTRETTO MERIDIONALE DI NEW YORK**

---

**MERCK EPROVA AG**                                :                                :

                        **Ricorrente**              :                    1:07 CV 5898 (RJS)

                                                    :

**contro**                                          :

**GNOSIS S.P.A.**

**e**                                    **PRIMO RICORSO VERSIONE
                                            DEFINITIVA
                                        (RICHIESTA DI GIURIA)**

**GNOSIS BIORESEARCH S.A.**                        :

                                                    :

                        **Convenuti**               :

                                                    :

---

       Il Convenuto, Merck Eprova AG 8"Merck") presenta questa Prima Rettifica
di Ricorso contro i convenuti Gnosis, S.p.A., e Gnosis Bioresearch SA
(indicati congiuntamente come "Gnosi" o "Convenuti") e a supporto di cui
all'oggetto dichiara quanto segue:

**NATURA E BASE DELL'AZIONE**

       1.    La presente azione si fonda sull'etichettatura (labeling) dei
prodotti dei Convenuti intenzionalmente e consapevolmente falsa e fuorviante.
Le azioni dei convenuti costituiscono pubblicità ingannevole in violazione
della Sezione 43(a) del Lanham Act (legge americana sulla natura e tutela dei
nomi e marchi registrati), Codice degli Stati Uniti (U.S.C.) capitolo 15 §
1125(a)/1)(b); concomitanza di pubblicità ingannevole in violazione della
Sezione 43(a) del Lanham Act, U.S.C. 15 §1125(a); concorrenza sleale in
violazione della common law dello stato di New York; pratiche ingannevoli nel
corso dell'attività commerciale in violazione della General Business Law di
New York, § 349(h) (legge che proibisce gli atti sleali e le pratiche
ingannevoli); e pubblicità ingannevole in violazione della General Business
Law di New York § 350(e)(3). Merck chiede che siano applicati provvedimenti
ingiuntivi temporanei, preliminari e permanenti, chiede i danni effettivi,
danni punitivi e

risarcimento di tutti i costi sostenuti da Merck e le equivalenti spese legali connesse alla presente azione.

## LE PARTI

2.    Merck è una società per azioni svizzera con sede principale in Im Laternenacker 5, CH-8200 Schaffhausen, Svizzera.

3.    Per informazioni e convinzioni, Gnosi S.p.A. è una società per azioni italiana con sede principale in Via Lavoratori Autobianchi 1, 20033 Desio (MI), Italia. Gnosis Bioresearch è una società svizzera con sede principale in Via Lischedi, CH-6592 San Antonino, Svizzera.

## GIURISDIZIONE E SEDE PROCESSUALE

4.    Questa corte ha giurisdizione sulla materia oggetto della presente azione ex U.S.C. 28 §§ 1331 e 1338 in quanto la causa è disciplinata dal Lanham Act U.S.C. 15 §§ 1051, e seguenti.

5.    Questa corte ha giurisdizione sulle rivendicazioni, ex leggi dello stato, fatte da Merck in base a U.S.C. 28 § 1367 e secondo la dottrina della giurisdizione supplementare (supplemental jurisdiction).

6.    Questa corte ha giurisdizione personale sui Convenuti in quanto essi conducono affari nello stato di New York, regolano contratti di fornitura di beni o servizi nello stato di New York e hanno causato danni o lesioni con le loro azioni (tortious acts) entro lo stato di New York.

7.    La sede processuale è congrua ex U.S.C. 28 § 1391(b) in quanto gran parte degli eventi e delle lesioni che hanno originato le richieste di Merck è avvenuta e continua a verificarsi in questo distretto, e inoltre perché i Convenuti sono entità straniere che possono essere giudicate in qualsiasi distretto come da U.S.C. 28 § 1391(d).

**CONTESTO**

**A. Merck, il suo prodotto L-5-MTHF e il suo famoso marchio commerciale METAFOLIN**

8.    Merck Eprova è l'affiliata svizzera di Merck KGaA e fornisce ingredienti farmaceutici e dietetici alle industrie farmaceutica e nutrizionale per l'uso in test clinici e applicazioni su prodotti commerciali. Uno di questi prodotti viene distribuito in collegamento con marchi commerciali famosi e peculiari, che hanno in tutto o in parte il termine METAFOLIN ("i marchi METAFOLIN").

9.    I marchi METAFOLIN sono stati usati da Merck e i suoi clienti in riferimento all'ingrediente dietetico N-[4-[[(2-ammino-5,6,7,8-tetraidro-4-idrossi-5-metil-(6S)-pteridinil)metil]ammino]benzoil]-acido L glutammico, sale di calcio, ovvero sale di calcio dell'acido L-5 metiltetraidrofolico ("L-5-MTHF").

10.   Merck nel 2001 ha presentato alla FDA una Comunicazione di Nuovo Ingrediente Dietetico a proposito di L-5-MHTF e del suo uso come integratore dietetico. L-5-MTHF dà origine al folato, una vitamina umana essenziale del complesso B.

11.   L'ingrediente dietetico L-5-MTHF è stato impiegato per oltre 5 anni negli integratori dietetici, ivi compresi le vitamine per la gravidanza, alimenti terapeutici (medical foods), integratori nutrizionali e cibo per l'uso in diete speciali.

12.   I marchi METAFOLIN sono proprietà di Merck KGaA. Merck Eprova è l'intestatario della licenza esclusiva per gli Stati Uniti dei marchi METAFOLIN. Merck KGaA è il proprietario della registrazione dei marchi N. 3001087 e 2526532 per METAFOLIN presso l'Ufficio Brevetti e Marchi Commerciali degli Stati Uniti.

13.   Merck ha cominciato a produrre e distribuire l'ingrediente dietetico L-5-MTHF nel 2002. Da allora, Merck e i suoi clienti sono riusciti a creare negli Stati Uniti

un mercato notevole per la commercializzazione, distribuzione, importazione e vendita dei prodotti. Merck dall'ingrediente L-5-MTHF ricava entrate sostanziose.

14.    Il ricorrente Merck è l'unico importatore, titolare di brevetto e distributore principale della sostanza all'ingrosso L-5-MTHF negli Stati Uniti, direttamente oppure tramite i titolari della licenza. Merck fornisce L-5-MTHF come sostanza all'ingrosso. I clienti di Merck usano L-5-MTHF del brand METAFOLIN in diversi integratori alimentari, alimenti terapeutici, integratori nutrizionali, vitamine per la gravidanza e cibo per speciali scopi dietetici. La presenza dell'originale L-5-MTHF per i clienti di Merck fa sì che si tratti di un punto di vendita esclusivo (unique selling point). Merck distribuisce inoltre ai suoi clienti licenze di L-5-MTHF del brand METAFOLIN.

15.    Merck ha condotto approfonditi test clinici e di laboratorio su L-5-MTHF.

16.    I benefici esclusivi di L-5-MTHF sono giustificati dal fatto che si tratta di un unico diasteroisomero del composto acido 5 metiltetraidrofolico e che è un prodotto stabile allo stato cristallino.

17.    Molti prodotti, quale ad esempio l'acido 5 metiltetraidrofolico, si trovano in natura come composti di due o più diasteroisomeri.

18.    I vari diasteroisomeri presenti in tali composti possono avere proprietà radicalmente differenti l'uno dall'altro. In certi casi, un diasteroisomero può avere effetti terapeutici, mentre un altro non ha efficacia terapeutica. Nei casi più gravi, un diasteroisomero può essere altamente tossico mentre un altro può essere di straordinario impiego farmacologico. Se ne deduce che ci sono spesso grandi benefici nel dare ai pazienti e consumatori un prodotto che contiene un solo diasteroisomero invece di quelli che sono composti da una miscela di essi.

19. I vari diasteroisomeri si distinguono l'uno dall'altro con nomi convenzionali che riflettono le loro diverse proprietà. Una di tali convenzioni usa la "D" per indicare un diasteroisomero e una "L" per il composto di un diverso diasteroisomero.

20. L'acido 5 metiltetraidrofolico è una miscela di due diasteroisomeri, "L" e "D".

21. La versione L (cioè, L-5-MTHF) è di gran lunga preferibile alla versione D (cioè, D-5-MTHF) in quanto L è la forma predominante in natura del folato così come si trova nel cibo e nel corpo umano. La versione L è la forma biologicamente attiva di folato, di cui è già stata dimostrata l'alta percentuale di biodisponibilità (la percentuale in cui un farmaco o altra sostanza è disponibile in una parte del corpo precedentemente individuata) negli esseri umani. Al contrario, la D è una forma di folato non presente in natura che il corpo umano non riesce a metabolizzare.

22. L-5-MTHF è la forma diasteroisomerica pura di folato usata dalle cellule del corpo. Negli esseri umani questo particolare composto è la forma predominante nella circolazione e nel trasposto all'interno dei tessuti, ed è l'unico folato che può attraversare la barriera sangue/cervello.

23. Infatti, poiché la forma D non rivela virtualmente alcuna attività benefica, la presenza di uno qualsiasi dei diasteroisomeri di D-5-MTHF può finire l'assorbimento e l'attività del diasteroisomero di L-5-MTHF riducendo quindi la generale usabilità del composto.

24. L-5-MTHF di Merck è conforme a tutti i requisiti richiesti applicabili per gli ingredienti dietetici così come stabiliti dalla Food and Drug Administration degli Stati Uniti ("FDA").

25. Nel corso degli anni, Merck ha speso molti milioni di dollari per la ricerca e lo sviluppo di L-5-MTHF, e ogni anno ha destinato importanti risorse finanziarie al marketing del prodotto.

26. I convenuti non hanno alcun rapporto con il ricorrente Merck né con le entità ad esso collegate.

27. Merck è noto in tutto il mondo per i suoi farmaci innovativi e i suoi prodotti terapeutici.

28. I prodotti di Merck sono alcuni dei più famosi e riconosciuti prodotti al mondo riguardo all'impiego medico e dietetico.

29. Nel corso degli anni, Merck ha lavorato duramente per espandere e dare solidità al suo nome commerciale, ai marchi commerciali e ai suoi prodotti.

30. Nel corso degli anni, Merck ha lavorato molto duramente per assicurare che la qualità del suo prodotto L-5-MTHF fosse estremamente alta e che il prodotto in questione fosse della massima sicurezza ed efficacia.

31. Per esempio, Merck ha condotto innumerevoli esperimenti e test per determinare la sicurezza e l'efficacia di L-5-MTHF, e ha speso anni e milioni di dollari nella ricerca e lo sviluppo per la scoperta e il perfezionamento del prodotto.

## B. Condotta illegale dei Convenuti

32. Per informazioni e convinzioni, il Convenuto – tra l'altro – è un produttore, distributore e fornitore di ingredienti dietetici nutrizionali.

33. Attraverso i suoi agenti, Gnosis vende e distribuisce i suoi prodotti in tutto il mondo, comprese la vendita e la distribuzione negli Stati Uniti e nello stato di New York in particolare.

34.  Gnosis vende l'ingrediente dietetico 5-MTHF, una miscela di diasteroisomeri, già etichettato in modo ingannevole e di cui si continua questa falsa etichettatura come il diasteroisomero puro L-5-MTHF (il "composto Gnosis").

35.  Che Gnosis contraffaccia l'etichetta del suo prodotto usando l'etichetta L-5-MTHF è facilmente riscontrabile perché Gnosis omette di seguire il linguaggio standard del labeling approvato dalla FDA. Nello specifico, FDA ha emesso una Nuova Comunicazione Ingrediente Dietetico ("NDI") per un'altra ditta che vuole usare e commercializzare 5-MTHF, lo stesso ingrediente del composto Gnosis. Questa NDI ha stabilito che la ditta che ha presentato richiesta deve etichettare il suo prodotto come "metiltetraidrofolato" o "5-MTHF". In questo modo il regolamento di FDA stabilisce che è improprio denominare il prodotto 5-MTHF di Gnosis come L-5-MTHF.

36.  Nell'ottobre 2006, Merck fu avvisato per la prima volta che il Convenuto stava distribuendo e commercializzando attivamente un prodotto come L-5 MTHF in paesi quali Stati Uniti e Germania.

37.  Il sito web di Denk Feinchemie GmbH (www.denk-feinchemie.de), distributori internazionali di materie prime, nell'ottobre 2006 riferì che Gnosis era il produttore di L-5-MTHF, ovvero sale di calcio dell'acido L-5 metiltetraidrofolico.

38.  In un comunicato stampa del 10 aprile 2007, Gnosis ha annunciato che stava per stipulare un nuovo accordo di distribuzione con una società avente sede nel Regno Unito per la vendita dei prodotti Gnosis nel Regno Unito e in Irlanda. Uno dei prodotti oggetto dell'accordo si chiama Extrafolate, che, secondo il comunicato stampa rilasciato da Gnosis, è dichiaratamente sale di calcio dell'acido L-5 metiltetraidrofolico.

39. Per informazioni e convinzioni, Gnosis sta facendo in modo che il composto Gnosis sia commercializzato come Extrafolate.

40. Gnosis ha fornito il composto Gnosis ad altri distributori, compreso AHD International LLC ("AHD"), una società per azioni della Georgia.

41. Merck ha promosso un'azione legale contro AHD nel distretto settentrionale della Georgia, ovvero causa N. 1:07 CV 0597 ("l'azione AHD"), per - tra l'altro - aver etichettato in modo falso il suo prodotto come il diasteroisomero puro L-5-MTHF, quando, in effetti quell'ingrediente conteneva la miscela diasteroisomerica 5-MTHF e non il puro L-5-MTHF.

42. Come parte dell'accordo compositivo dell'azione AHD, AHD da allora ha smesso di vendere e pubblicizzare 5-MTHF, comunque non prima di aver rivelato che la loro miscela diasteroisomerica veniva prodotta e fornita da Gnosis.

43. Merck ha ottenuto campioni del composto Gnosis ed ha eseguito test analitici per determinarne la composizione.

44. I test in oggetto hanno concluso che il composto Gnosis non è puro L-5-MTHF ma la miscela diasteroisomerica 5-MTHF.

45. Come ulteriore parte dell'accordo compositivo dell'azione AHD, AHD ha fornito a Merck copie dei certificati delle analisi che AHD ha ricevuto da Gnosis per il prodotto 5-MTHF in loro possesso ricevuto da Gnosis stesso.

46. I certificati di analisi di cui sopra, le etichette del prodotto, le specifiche del prodotto che Gnosis ha fornito a AHD e agli altri suoi clienti, rivendica falsamente che il composto Gnosis è L-5-MTHF puro mentre in effetti non lo è.

47. Gnosis è consapevole che il composto Gnosis è la miscela diasteroisomerica 5-MTHF e non il diasteroisomero puro L-5-MTHF.

48. Gnosis ha ammesso con Merck in più di una occasione, direttamente o attraverso un legale esterno, che il composto Gnosis è la miscela diasteroisomerica 5-MTHF e non il diasteroisomero puro L-5-MTHF.

49. Nonostante queste ammissioni, Gnosis continua a dichiarare ai suoi distributori e ai consumatori che il composto Gnosis consiste nel diasteroisomero puro L-5-MTHF.

50. Per informazioni e convinzioni, attraverso materiale accessibile via internet e attraverso materiale distribuito a clienti e potenziali clienti, Gnosi ha commercializzato la sua miscela diasteroisomerica 5-MTHF come il diasteroisomero puro L-5-MTHF nello sforzo di indurre i clienti a credere che il composto Gnosis sia puro L-5-MTHF, quando non lo è, ovvero a credere che il composto Gnosis sia equivalente a L-5-MTHF, cosa che non è.

51. Gnosis ha tenuto i succitati comportamenti ovunque, sia negli Stati Uniti che nello stato di New York.

52. Gnosis ha deliberatamente mistificato le dichiarazioni fatte ai consumatori, al pubblico e sul mercato, sostenendo che il composto Gnosis abbia la stessa efficacia e sicurezza di L-5-MTHF detenuto da Merck, quando, in effetti, i due prodotti non sono gli stessi e non hanno lo stesso effetto terapeutico.

53. Per informazioni e convinzioni, Gnosis sapeva che i suoi clienti stavano etichettando impropriamente il composto Gnosis come L-5-MTHF e ha permesso e incoraggiato i clienti nel labeling il composto Gnosis come L-5-MTHF, nonostante fosse la miscela diasteroisomerica 5-MTHF.

54.  Gnosis ha pubblicizzato il composto Gnosis come diasteroisomero puro e della migliore qualità, quando in effetti non è così.

55.  Il composto Gnosis viene commercializzato come prodotto concorrente dell'originale L-5-MTHF.

56.  Il consumo del composto Gnosis avrà risultati terapeutici inferiori rispetto a L-5-MTHF e indurrà i consumatori a dubitare dell'efficacia complessiva di tutti i prodotti con L-5-MTHF.

57.  Le conclusioni di cui sopra possono esporre il pubblico dei consumatori, compresi quelli degli Stati Uniti e dello stato di New York, a implicazioni mediche pericolose.

58.  La distribuzione e la vendita del composto Gnosis ha provocato e continuerà a provocare per Merck perdite nella vendita dell'originale L-5-MTHF sia ai clienti Merck esistenti che a quelli potenziali.

59.  L'associazione del composto Gnosis all'originale L-5-MTHF può danneggiare la reputazione sia di Merck che del suo L-5-MTHF in quanto il composto Gnosis non raggiunge il previsto livello di purezza ed è di gran lunga inferiore a L-5-MTHF.

### I FONDAMENTO DELL'AZIONE

### PUBBLICITA' INGANNEVOLE

60.  Merck incorpora al punto presente e dichiara nuovamente, come se fossero estese completamente nel presente paragrafo, le dichiarazioni dal paragrafo 1 al 59 compreso.

61.  Le dichiarazioni del convenuto rilasciate alla stampa, le dichiarazioni fatte via internet, la pubblicità e le promozioni, e il labeling del composto Gnosis, che affermano che il composto Gnosis è fatto con il diasteroisomero puro L-5-MTHF, sono false nella sostanza e possono indurre nel consumatore confusione, errore o inganno relativamente

alla qualità e all'affidabilità del composto Gnosis. I clienti, ovvero i potenziali clienti, possono, e potrebbero, fidarsi di dichiarazioni non corrispondenti al vero. Le azioni del convenuto pertanto tendono a deviare e danneggiare i clienti e i consumatori come vengono danneggiati il buon nome e la reputazione di Merck in violazione della Sezione 43(a) del Lanham Act, U.S.C. 15 § 1125(a).

62.    La distribuzione da parte del convenuto di certificati di analisi che affermano che il composto Gnosis è il diasteroisomero puro L-5-MTHF sono dichiarazioni false nella sostanza e possono indurre nel consumatore confusione, errore o inganno relativamente alla qualità e all'affidabilità del composto Gnosis. I clienti, ovvero i potenziali clienti, possono, e potrebbero, fidarsi di dichiarazioni non corrispondenti al vero. Le azioni del convenuto pertanto tendono a deviare e danneggiare i clienti e i consumatori come vengono danneggiati il buon nome e la reputazione di Merck in violazione della Sezione 43(a) del Lanham Act, U.S.C. 15 § 1125(a).

63.    Considerate la consapevolezza e le ammissioni di Gnosis sul fatto che il composto Gnosis fosse la miscela diasteroisomerica 5-MTHF, e non il diasteroisomero puro L-5-MTHF, gli atti summenzionati sono da interpretare come compiuti deliberatamente e volontariamente e con l'intenzione di indurre confusione, errore, ovvero inganno.

64.    Gli atti summenzionati del convenuto hanno provocato, e continueranno a farlo, danni al ricorrente in un ammontare che dovrà essere quantificato durante il dibattimento.

65.    Gli atti summenzionati del convenuto hanno provocato e, se non limitati e proibiti dalla Corte, continueranno a causare danni irreparabili, perdite, e lesioni alla reputazione del Ricorrente per i quali il Ricorrente non ha un adeguato rimedio (remedy at law).

## II FONDAMENTO DELL'AZIONE

## CONCOMITANZA DI PUBBLICITA' INGANNEVOLE

66.    Merck incorpora al punto presente e dichiara nuovamente, come se fossero estese completamente nel presente paragrafo, le dichiarazioni dal paragrafo 1 al 65 compreso.

67.    Il convenuto ha detto il falso ai distributori, ovvero che il composto Gnosis è il diasteroisomero puro L-5-MTHF.

68.    Per informazioni e convinzioni, il convenuto ha esibito ai suoi distributori falsi certificati di analisi, etichette e specifiche dei prodotti che il composto Gnosis è il diasteroisomero puro L-5-MTHF.

69.    Il convenuto ha indotto i suoi distributori alla pubblicità ingannevole con il labeling e il marketing del composto Gnosis come diasteroisomero puro L-5-MTHF.

70.    Il convenuto sapeva o aveva ragione di sapere che avrebbe coinvolto i suoi distributori nella pubblicità ingannevole con il labeling e il marketing del composto Gnosis come diasteroisomero puro L-5-MTHF.

71.    Come risultato, i distributori di Gnosis hanno reso dichiarazioni false che possono indurre nel consumatore confusione, errore o inganno relativamente alla qualità e all'affidabilità del composto Gnosis. I clienti, ovvero i potenziali clienti, possono, e potrebbero, fidarsi di dichiarazioni non corrispondenti al vero. Le azioni del convenuto pertanto hanno indotto i distributori a fuorviare e danneggiare i clienti e i consumatori così come vengono danneggiati il buon nome e la reputazione di Merck in violazione della Sezione 43(a) del Lanham Act, U.S.C. 15 § 1125(a).

72.    Considerate la consapevolezza e le ammissioni di Gnosis sul fatto che il composto Gnosis fosse la miscela diasteroisomerica 5-MTHF, e non il diasteroisomero puro L-5-MTHF, gli

atti summenzionati sono da interpretare come compiuti deliberatamente e volontariamente e con l'intenzione di indurre confusione, errore, ovvero inganno.

73.   Gli atti summenzionati del convenuto hanno provocato, e continueranno a farlo, danni al ricorrente in un ammontare che dovrà essere quantificato durante il dibattimento.

74.   Gli atti summenzionati del convenuto hanno provocato e, se non limitati e proibiti dalla Corte, continueranno a causare danni irreparabili, perdite, e lesioni alla reputazione del Ricorrente per i quali il Ricorrente non ha un adeguato rimedio (remedy at law).

### III FONDAMENTO DELL'AZIONE

#### USO DI DESCRIZIONI FALSE E FALSE DICHIARAZIONI

75.   Merck incorpora al punto presente e dichiara nuovamente, come se fossero estese completamente nel presente paragrafo, le dichiarazioni dal paragrafo 1 al 74 compreso.

76.   Le dichiarazioni del convenuto rilasciate alla stampa, le dichiarazioni fatte via internet, la pubblicità e le promozioni, e il labeling del composto Gnosis, che affermano che il composto Gnosis è fatto con il diasteroisomero puro L-5-MTHF, sono false nella sostanza e possono indurre nel consumatore confusione, errore o inganno relativamente alla qualità e all'affidabilità del composto Gnosis.

77.   La distribuzione da parte del convenuto di certificati di analisi che affermano che il composto Gnosis è il diasteroisomero puro L-5-MTHF sono dichiarazioni false nella sostanza che danno una presentazione non veritiera della natura, le caratteristiche e la qualità del composto Gnosis.

78.   Tali dichiarazioni false nella sostanza hanno indotto e possono indurre nel consumatore confusione, errore o inganno relativamente alla qualità e all'affidabilità del composto Gnosis.

79.   Gnosis pertanto ha volontariamente promosso il composto Gnosis nel commercio tra stati, provocando tra i consumatori confusione o errore relativamente

alla qualità e al contenuto del composto Gnosis, tutto per il profitto di Gnosis e a danno del pubblico e di Merck.

80.   Considerate la consapevolezza e le ammissioni di Gnosis sul fatto che il composto Gnosis fosse la miscela diasteroisomerica 5-MTHF, e non il diasteroisomero puro L-5-MTHF, gli atti summenzionati sono da interpretare come compiuti deliberatamente e volontariamente.

81.   I summenzionati atti di Gnosis costituiscono uso di descrizioni false e false dichiarazioni nel commercio tra stati in violazione della Sezione 43(a) del Lanham Act, U.S.C. 15 § 1125(a).

82.   Gli atti summenzionati di Gnosis hanno provocato, e continueranno a farlo, danni al ricorrente in un ammontare che dovrà essere quantificato durante il dibattimento.

83.   Gli atti summenzionati del convenuto hanno provocato e, se non limitati e proibiti dalla Corte, continueranno a causare danni irreparabili, perdite, e lesioni alla reputazione del Ricorrente per i quali il Ricorrente non ha un adeguato rimedio (remedy at law).

### IV FONDAMENTO DELL'AZIONE

### CONCORRENZA SLEALE IN BASE ALLA COMMON LAW

84.   Merck incorpora al punto presente e dichiara nuovamente, come se fossero estese completamente nel presente paragrafo, le dichiarazioni dal paragrafo 1 al 83 compreso.

85.   Gnosis ha reso false dichiarazioni in pubblico e ai suoi clienti e ha falsato le etichette del composto Gnosis con l'intendo di ingannare e fuorviare i consumatori relativamente alla qualità e alla natura del suo prodotto.

86.   Gli atti summenzionati hanno autorizzato Gnosis ad appropriarsi indebitamente del lavoro e del dispendio - in termini di costi e impegno – di Merck nello sviluppare il mercato per il diasteroisomero puro L-5-MTHF.

87.   Inoltre, gli atti summenzionati hanno provocato, e presumibilmente continuano a provocare danni ai consumatori e alla rappresentanza commerciale di Merck, e il risultato è la concorrenza sleale di Gnosis nei confronti di Merck.

88.   Considerate la consapevolezza e le ammissioni di Gnosis sul fatto che il composto Gnosis fosse la miscela diasteroisomerica 5-MTHF, e non il diasteroisomero puro L-5-MTHF, gli atti summenzionati sono da interpretare come compiuti deliberatamente e volontariamente.

89. Gli atti summenzionati di Gnosis hanno provocato, e continueranno a farlo, danni al ricorrente in un ammontare che dovrà essere quantificato durante il dibattimento.

90.   Gli atti summenzionati del convenuto hanno provocato e, se non limitati e proibiti dalla Corte, continueranno a causare danni irreparabili, perdite, e lesioni alla reputazione del Ricorrente per i quali il Ricorrente non ha un adeguato rimedio (remedy at law).

### V FONDAMENTO DELL'AZIONE

### PRATICHE COMMERCIALI INGANNEVOLI

### IN VIOLAZIONE DI § 349(H) N.Y. GEN.BUS. LAW

91.   Merck incorpora al punto presente e dichiara nuovamente, come se fossero estese completamente nel presente paragrafo, le dichiarazioni dal paragrafo 1 al 90 compreso.

92.   Gnosis in New York si è impegnato - e lo fa tuttora - in azioni ovvero pratiche volontariamente ingannevoli contro Merck e il pubblico nella conduzione della propria attività attraverso i seguenti atti destinati al consumatore; dichiarazioni false e fuorvianti rilasciate alla stampa; dichiarazioni false e fuorvianti su internet, pubblicità o promozioni commerciali false e fuorvianti; contraffazione dell'etichetta del composto Gnosis come se fosse il diasteroisomero puro L-5-MTHF; e falsi e fuorvianti certificati di analisi e specifiche del prodotto, e tutti questi fattori, per informazioni e convinzioni, nella sostanza alterano la natura, le caratteristiche e qualità dei beni e servizi associati

al composto Gnosis. Gli atti summenzionati sono in violazione di § 349(b) N.Y. Gen. Bus. Law.

93.   Inoltre, i summenzionati atti fuorvianti di Gnosis hanno provocato, e presumibilmente continuano a provocare danni ai consumatori, ivi compresi i consumatori di New York, e alla reputazione commerciale di Merck.

94.   Gli atti di Gnosis hanno provocato e, se non limitati dalla Corte, continueranno a causare grandi e irreparabili danni al pubblico e all'attività di Merck e alla reputazione per i quali Merck e il pubblico non hanno un adeguato rimedio (remedy at law).

95.   Come risultato della cattiva condotta volontaria e intenzionale da parte di Gnosis, Merck e la pubblica utenza sono pertanto autorizzati a un rimedio appropriato come richiesto più avanti, ivi compresi i provvedimenti ingiuntivi preliminari e permanenti.

96.   Inoltre, la violazione consapevole e volontaria della Sezione 349(h) giustifica il riconoscimento dei danni in misura tripla e il risarcimento delle spese legali.

### VI FONDAMENTO DELL'AZIONE

### PUBBLICITA' INGANNEVOLE

### IN VIOLAZIONE DI § 350(E)(3) N.Y. GEN.BUS. LAW

97.   Merck incorpora al punto presente e dichiara nuovamente, come se fossero estese completamente nel presente paragrafo, le dichiarazioni dal paragrafo 1 al 96 compreso.

92.   Gnosis in New York si è impegnato - e lo fa tuttora - in azioni ovvero pratiche volontariamente ingannevoli contro Merck e il pubblico nella conduzione della propria attività attraverso i seguenti atti destinati al consumatore; dichiarazioni false e fuorvianti rilasciate alla stampa; dichiarazioni false e fuorvianti su internet, pubblicità o promozioni commerciali false e fuorvianti; contraffazione dell'etichetta del composto Gnosis come se fosse il diasteroisomero puro L-5-MTHF; e falsi e fuorvianti certificati di analisi e specifiche del prodotto,

e tutti questi fattori, per informazioni e convinzioni, nella sostanza alterano la natura, le caratteristiche e qualità dei beni e servizi associati al composto Gnosis. Gli atti summenzionati sono in violazione di § 350(e)(3) N.Y. Gen. Bus. Law.

99.  Inoltre, i summenzionati atti fuorvianti di Gnosis hanno provocato, e presumibilmente continuano a provocare danni ai consumatori, ivi compresi i consumatori di New York, e alla rappresentanza commerciale di Merck.

100.  Gli atti di Gnosis hanno provocato e, se non limitati dalla Corte, continueranno a causare grandi e irreparabili danni al pubblico e all'attività di Merck e alla reputazione per i quali Merck e il pubblico non hanno un adeguato rimedio (remedy at law).

101. Come risultato della cattiva condotta volontaria e intenzionale da parte di Gnosis, Merck e la pubblica utenza sono pertanto autorizzati a un rimedio appropriato come richiesto più avanti, ivi compresi i provvedimenti ingiuntivi preliminari e permanenti.

102.  Inoltre, la violazione consapevole e volontaria della Sezione 350(e)(3) giustifica la tripla richiesta per i danni subiti e il risarcimento delle spese legali.

### RICHIESTA DI GIURIA

MERCK richiede un dibattimento con giuria per tutte le istanze da discutere.

### RICHIESTA DI SENTENZA

LADDOVE, Merck richiede a codesta Corte che venga emessa una sentenza nei seguenti termini:

A.  Che la Corte emetta un giudizio dove si dichiara che il Convenuto, come risultato delle sue dichiarazioni volontarie, deliberate e false nella sostanza sulla qualità e il contenuto del suo prodotto, si è impegnato in pubblicità ingannevole in violazione della Sezione 43(a) del Lanham Act, U.S.C. 15 § 1125((a)(1)(b); si è reso responsabile di concomitanza in pubblicità ingannevole in violazione della Sezione

43(a) del Lanham Act, U.S.C. 15 § 1125((a)(1)(b); si è reso responsabile di concorrenza sleale federale in violazione della Sezione 43(a) del Lanham Act, U.S.C. 15 § 1125((a; si è reso responsabile di concorrenza sleale in violazione della common law di New York; si è reso responsabile di pratiche commerciali ingannevoli in violazione di § 349(h) N.Y. Gen. Bus. Law;e si è reso responsabile di pubblicità ingannevole in violazione di § 350(e)(3) N.Y. Gen. Bus. Law.

B.  Che la Corte emetta ingiunzioni temporanee, preliminari e permanenti ordinando al convenuto, tra l'altro, di cessare immediatamente tutta la distribuzione e la vendita del composto Gnosis;

C.  Che la Corte ordini il richiamo di tutto il composto Gnosis attualmente sul mercato;

D.  Che la Corte ordini il richiamo di tutti i prodotti che contengono il composto Gnosis attualmente sul mercato;

E.  Che la Corte ordini a Gnosis di impegnarsi in un programma di pubblicità correttiva, soddisfacente per Merck, che rimedi alle informazioni false e fuorvianti che Gnosis ha diffuso;

F.  Che la Corte conceda il riconoscimento dei danni in un ammontare sufficiente per compensare Merck degli illeciti subiti a causa delle illegalità del convenuto ;

G.  Che la Corte riconosca i danni in misura tripla;

H.  Che la Corte riconosca i danni punitivi in un ammontare sufficiente per punire il convenuto e scoraggiarlo dall'intraprendere ulteriori atti consapevoli di concorrenza sleale;

I.  Che la Corte riconosca i costi per questa azione e le spese legali consequenziali che Merck deve sostenere relativamente all'azione stessa;

J. Che la Corte riconosca ogni altra ulteriore diversa riparazione ritenuta giusta e appropriata dalla Corte stessa.

Data: 22 ottobre 2007

In fede

*Firma illeggibile*
Robert E. Hanlon (RH 8794)
Thomas J. Parker (TP 7219)
Studio Legale Alston & Bird
90 Park Avenue
New York, New York 10016
Tel. 212-210-9400
Fax 212-210-9444
robert.hanlon@alston.com
thomas.parker@alston.com

*Avvocati del ricorrente Merck Eprova AG*