**Judge Sullivan**
**Individual Practices**
**Page 4**

ix.   A designation by each party of deposition testimony to be offered in its case in chief, with any cross-designations and objections by any other party;

x.   A list by each party of exhibits to be offered in its case in chief, with one star indicating exhibits to which no party objects on grounds of authenticity, and two stars indicating exhibits to which no party objects on any ground; and

xi.   A statement whether the parties consent to less than a unanimous verdict.

**B.   Filings Prior to Trial in Civil Cases.**  Unless otherwise ordered by the Court, each party shall file with the Joint Pretrial Order:

i.   In jury cases, proposed voir dire questions, verdict form and requests to charge.  When feasible, proposed jury instructions should also be submitted on a 3.5" diskette in WordPerfect version 11 format;

ii.   In non-jury cases, proposed findings of fact and conclusions of law. Proposed findings of fact should be detailed;

iii.   In all cases, motions addressing any evidentiary or other issues which should be resolved *in limine*; and

iv.   In any case where such party believes it would be useful, a pretrial memorandum.

**C.   Additional Submissions in Non-Jury Cases.**  At the time the joint pretrial order is filed, each party shall serve, but not file, the following:

i.   Affidavits constituting the direct testimony of each trial witness, except for testimony of an adverse party, a person whose attendance must be compelled by subpoena, or a person for whom a party has requested and the court has agreed to hear direct testimony during the trial.  Three business days after submission of such affidavits, counsel for each party shall submit a list of all affiants whom he or she intends to cross-examine at the trial.  Only those witnesses who will be cross-examined need appear at trial.  The original affidavit shall be marked as an exhibit at trial.

ii.   All deposition excerpts which will be offered as substantive evidence, as well as a one-page synopsis (with page references) of those excerpts for

**Judge Sullivan**
**Individual Practices**
**Page 5**

each deposition.

iii.    All documentary evidence.

**D.   Filings in Opposition.**  Any party may file the following documents within one week of the filing of the pretrial order, but in no event less than two (2) days before the scheduled trial date:

i.    Objections to another party's requests to charge or proposed voir dire questions;

ii.   Opposition to any motion *in limine*;

iii.  Opposition to any legal argument in a pretrial memorandum.

**Two courtesy copies of the joint pretrial order and all documents filed or served with the pretrial order should be submitted to chambers on the date of filing or service.**

**4.    Conferences**

**A.   Principal Trial Counsel.**  The attorney who will serve as principal trial counsel **must** appear at all conferences with the Court.

**B.   Initial Case Management Conference.**  The Court will generally schedule a Fed. R. Civ. P. 16(c) conference within three months of the filing of the Complaint.  The Notice of Initial Pretrial Conference will be sent to plaintiff's counsel, who will be responsible for distributing copies to all parties.

**5.    Default Judgments.**  A party who wishes to obtain a default judgment must proceed by way of an order to show cause and use the procedure set forth in Attachment A.

**6.    Bankruptcy Appeals.**  Briefs must be submitted in accordance with Bankr. Rule 8009, 11 U.S.C.  Counsel may extend these dates by stipulation submitted to the Court no later than two business days before the brief is due.

**7.    Notice Regarding Access to Court Filings.**  With limited exceptions, all Opinions will be posted on CourtWeb.  To access CourtWeb, go to www.nysd.uscourts.gov and click **CourtWeb On-Line Rulings**.  Parties will be notified when an Opinion is posted.  Parties also can sign up for the **CourtWeb Watch List**, which will alert the parties to any new postings regarding a particular case.

**Judge Sullivan**
**Individual Practices**
**Page 6**

8.      **Criminal Cases.**  Upon assignment of a criminal case to Judge Sullivan, the parties immediately shall arrange with the Case Manager for a prompt conference at which the defendant will be present in order to set a discovery and motion schedule.  The Assistant United States Attorney shall provide a courtesy copy each of the indictment and the criminal complaint, if one exists, to chambers as soon as practicable through e-mail to Eileen Levine.

March 21, 2001

## INDIVIDUAL PRACTICES OF MAGISTRATE JUDGE DEBRA FREEMAN

Unless otherwise ordered by Judge Freeman, matters before her shall be conducted in accordance with the following practices.

(These practices are applicable to matters before Judge Freeman only if the matter is within the scope of the District Judge's Order of Reference or if the case is before Judge Freeman pursuant to the parties' consent under 28 U.S.C. § 636(c). Otherwise, the practices of the District Judge to whom the case is assigned apply.)

### 1. Communications with Chambers

**A. Letters.** Copies of letters to chambers shall simultaneously be delivered to all counsel. Copies of correspondence between counsel shall not be sent to the court.

**B. Telephone Calls.** In addition to Paragraph 1(D) below, telephone calls to chambers are permitted. For matters other than docketing, scheduling or calendaring, call chambers at 805-4250.

**C. Faxes.** Faxes to chambers are permitted only if copies are also simultaneously faxed or delivered to all counsel. No document longer than 5 pages may be faxed without prior authorization. Do not follow with hard copy. The fax number is 805-4258.

**D. Docketing, Scheduling, and Calendar Matters.** For docketing, scheduling and calendar matters, call Ms. Ivy Siwik at 805-4250 between 9:00 A.M. and 4:30 P.M.

**E. Requests for Adjournments or Extensions of Time.** All requests for adjournments or extensions of time must state (1) the original date, (2) the number of previous requests for adjournment or extension, (3) whether these previous requests were granted or denied, and (4) whether the adversary consents, and, if not, the reasons given by the adversary for refusing to consent. If the requested adjournment or extension affects any other scheduled dates, a proposed Revised Scheduling Order (reflecting only business days) must be attached. If the request is for an adjournment of a court appearance, absent an emergency it shall be made at least 48 hours prior to the scheduled appearance.

### 2. Motions

**A. Pre-Motion Conferences in Civil Cases.** For discovery motions, follow Local Civil Rule 37.2. For motions other than discovery motions, pre-motion conferences are not required.

**B. Courtesy Copies.** Courtesy copies of all motion papers, marked as such, should be submitted for chambers.

**C. Memoranda of Law.** Unless prior permission has been granted, memoranda of law in support of and in opposition to motions are limited to 25 pages, and reply memoranda are limited to 10 pages. Memoranda of 10 pages or more shall contain a table of contents.

**D. Filing of Motion Papers.** Moving, opposing, and reply papers shall each be filed promptly after service, with courtesy copies submitted to chambers at the time of filing.

**E. Oral Argument on Motions.** Parties may request oral argument by letter at the time their moving or opposing or reply papers are filed. The court will determine whether argument will be heard and, if so, will advise counsel of the argument date.

## 3. Pretrial Procedures

**A. Joint Pretrial Orders in Civil Cases.** Unless otherwise ordered by the Court, within 30 days from the date for the completion of discovery in a civil case, the parties shall submit to the court for its approval a joint pretrial order, which shall include the following:

    i. The full caption of the action.

    ii. The names, addresses (including firm names), and telephone and fax numbers of trial counsel.

    iii. A brief statement by plaintiff as to the basis of subject matter jurisdiction, and a brief statement by each other party as to the presence or absence of subject matter jurisdiction. Such statements shall include citations to all statutes relied on and relevant facts as to citizenship and jurisdictional amount.

    iv. A brief summary by each party of the claims and defenses that party has asserted which remain to be tried, without recital of evidentiary matter but including citations to all statutes relied on. Such summaries shall identify all claims and defenses previously asserted which are not to be tried.

    v. A statement by each party as to whether the case is to be tried with or without a jury, and the number of trial days needed.

    vi. A statement as to whether or not all parties have consented to trial of the case by a magistrate judge (without identifying which parties have or have not so consented).

    vii. Any stipulations or agreed statements of fact or law which have been agreed to by all parties.

    viii. A statement by each party as to the witnesses whose testimony is to be offered in its case in chief, indicating whether such witnesses will testify in person or by deposition.

    ix. A designation by each party of deposition testimony to be offered in its case in chief, with any cross-designations and objections by any other party.

    x. A list by each party of exhibits to be offered in its case in chief, with one star indicating exhibits to which no party objects on grounds of authenticity, and two stars indicating exhibits to which no party objects on any ground.

**B. Filings Prior to Trial in Civil Cases.** Unless otherwise ordered by the Court, each party shall file, 15 days before the date of commencement of trial if such a date has been fixed, or 30 days after the filing of the final pretrial order if no trial date has been fixed:

i.  In jury cases, requests to charge and proposed voir dire questions.  When feasible, proposed jury charges should also be submitted on a 3.5" diskette in WordPerfect version 5.1 or higher format;

ii.  In nonjury cases, a statement of the elements of each claim or defense involving such party, together with a summary of the facts relied upon to establish each element;

iii.  In all cases, motions addressing any evidentiary or other issues which should be resolved in limine; and

iv.  In any case where such party believes it would be useful, a pretrial memorandum.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - x
                                 :

                                 :

                Plaintiff(s),    :

                                 :

          - against -          :

                                 :

                                 :

               Defendant(s).    :

- - - - - - - - - - - - - - - - - - - - - - - - - - x

**CONSENT TO PROCEED BEFORE UNITED STATES MAGISTRATE JUDGE**

_____ Civ. _____ (     ) (     )

**IT IS HEREBY STIPULATED** by the undersigned:

      1. All parties consent, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, that a United States Magistrate Judge conduct all further proceedings in this action, including any trial and entry of final judgment.

      2. Any appeal from a judgment entered in this case will lie to the Court of Appeals for the Second Circuit as from any other judgment of the district court pursuant to 28 U.S.C. § 636(c)(3) and Fed. R. Civ. P. 73(c).

_____      _____
Attorney(s) for Plaintiff(s)                 Attorney(s) for Defendant(s)
Address                                        Address
Telephone                                    Telephone

_____      _____
Attorney(s) for _____       Attorney(s) for _____
Address                                        Address
Telephone                                    Telephone

(Separately executed forms may be submitted. See Fed. R. Civ. P. 73(b).)

**SO ORDERED.**

_____
                                U.S.D.J.

Magistrate Judge _____ was assigned this case on _____.

_____
For: Clerk U.S.D.C. S.D.N.Y.

SDNY Web 4/99

IH - 30

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

# CRITICAL INSTRUCTIONS TO ATTORNEYS:

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## \*\*\*\*    Please Read Immediately \*\*\*\*

You must read and comply with all of the instructions on the attached sheet. Your case **CANNOT** be opened until you have correctly followed ALL of the required steps.

J. MICHAEL McMAHON
CLERK OF COURT

**UNITED STATES DISTRICT COURT**
SOUTHERN DISTRICT OF NEW YORK

WWW.NYSD.USCOURTS.GOV
June 7, 2004

~~300 PEARL STREET, NEW YORK, NY 10007~~
300 QUARROPAS STREET, WHITE PLAINS, NY 10601

# 3rd Amended Instructions for Filing an Electronic Case or Appeal

*Important* - your new case is an electronically filed case (ECF case) and you will be <u>required</u> to file documents electronically instead of on paper (with certain exceptions listed below). If you don't have your ECF password yet, you should <u>register now</u> (no fee required) on the CM/ECF page of the Court's website at www.nysd.uscourts.gov Please follow the instructions below.

**ECF Judges:**

| | | | | | | |
|---|---|---|---|---|---|---|
| Baer *** | Castel ** | Griesa ** | Knapp *** | McMahon * | Preska * | Stein * |
| Batts * | Cedarbaum*** | Haight ** | Koeltl * | Motley *** | Rakoff ** | Swain ** |
| Berman ** | Chin ** | Hellerstein * | Kram *** | Mukasey * | Robinson * | Sweet * |
| Brieant * | Conner * | Holwell ** | Leisure ** | Owen *** | Sand *** | Wood ** |
| Buchwald ** | Cote ** | Jones ** | Lynch ** | Patterson *** | Scheindlin ** | Magistrate- |
| Carter *** | Daniels ** | Kaplan * | Marrero ** | Pauley ** | Sprizzo *** | Judges * |
| Casey ** | Duffy *** | Keenan ** | McKenna *** | Pollack ** | Stanton *** | |

* **ECF Wave 1 Judge**, assigning new cases filed on or after December 2, 2003 to the ECF system.
** **ECF Wave 2 Judge**, assigning new cases filed on or after March 1, 2004 to the ECF system.
*** **ECF Wave 3 Judge**, assigning new cases filed on or after June 7, 2004 to the ECF system.

**Important note on non-ECF cases:** Older cases filed prior to the above dates, as well as Pro Se cases, Habeas Corpus cases, Social Security cases, and Multi-District Litigation <u>will not be electronically filed</u> and should be filed on paper. Do not file documents electronically in cases that are not assigned to the ECF system.

## Instructions

**(1)**    Electronic cases are opened and service of the initiating documents (complaint, notice of removal, etc.) is accomplished in the traditional manner, on paper.

**(2)**    *Important* - In addition to serving the initiating documents in the traditional manner, on paper, you are also required to deliver paper copies of the following documents to all other parties (copies available at the courthouse, & on our website):

    **(a) The assigned Judge's Individual Rules**
    **(b) USDC/SDNY Instructions for Filing an Electronic Case or Appeal (this document)**
    **(c) USDC/SDNY Procedures for Electronic Case Filing**
    **(d) USDC/SDNY Guidelines for Electronic Case Filing.**

**(3)**    <u>Within 24 hours of the assignment of a case number</u>, you are required to <u>email</u> to the Clerk of Court the initiating documents <u>in Adobe Acrobat pdf format only</u>. Failure to do so within 24 hours will delay adding your case to the computerized ECF docket. Include a F.R.C.P. Rule 7.1 Statement (if applicable) and any exhibits. The case number, the Judge's initials, and "ECF CASE" must appear in the document's case caption. Each document must be in a separate pdf file <u>no larger than 2.5 megabytes</u> (separate large computer files into smaller parts if necessary, and label accordingly). When sending email, the subject line of the email & the file name of the pdf should list only the case number followed by a document description (ex. "Re: 01cv1234-complaint"). Send the email (do not file on the ECF system) to:

    **(a)** For new civil cases assigned to a Manhattan Judge, email a pdf copy of the documents to

            case_openings@nysd.uscourts.gov

    **(b)** For new civil cases assigned to a White Plains Judge, email a pdf copy of the documents to

            wpclerk@nysd.uscourts.gov

(4)  File the Affidavit of Service for the initiating document (complaint, notice of removal, etc.) in the following manner:

(a) electronically file the Affidavit of Service for the initiating document on the ECF system (do not send by email),
(b) file the original Affidavit of Service with summons attached in the traditional manner, on paper with the Clerk.

(5)  All subsequent documents, including the Defendant's Answer, must be filed electronically on the ECF system at ecf.nysd.uscourts.gov. Electronic filing involves using your ECF password to docket the item directly into the ECF system. Electronic filing is not the same as email to the Clerk. Read the Judge's Individual Rules to determine if courtesy copies (on paper) are required.

(6)  Appeals will be assigned to the ECF system only if the original case was also electronically filed. File the appeal in the traditional manner, on paper. Then within 24 hours of filing the paper copy of your Appeal at the courthouse, you are required to email to the Clerk of Court an electronic copy of the Appeal in pdf format. Include any exhibits. Each document must be in a separate pdf file no larger than 2.5 megabytes. The District Court case number, the Judge's initials, and "ECF CASE" must appear in the document's case caption.

When sending email, the subject line of the email should always list the case number followed by a document description (ex. "Re: 01cv1234-appeal"). Send the email (do not file on the ECF system) to:

(a) For appeals from an ECF case assigned to a Manhattan Judge, email a pdf copy of the appeal to

**appeals@nysd.uscourts.gov**

(b) For appeals from an ECF case assigned to a White Plains Judge, email a pdf copy of the appeal to

**wpclerk@nysd.uscourts.gov**

(7)  Follow all the rules for Electronic Case Filing (available at www.nysd.uscourts.gov):

(a) SDNY Procedures for Electronic Case Filing       (d) Local Rules of this Court, and
(b) SDNY Guidelines for Electronic Case Filing       (e) Federal Rules of Civil Procedure
(c) Individual Rules of the Assigned Judge

## ✓ Learn More About Electronic Case Filing at www.nysd.uscourts.gov

✓  Click on the "CM-ECF" page for the official ECF filing rules, training information, computer requirements, and more.

✓  Attorneys should use the "Attorney Registration" page to register on-line for a SDNY ECF password (no fee). Your ECF password will be sent to you by email. You must have an ECF password from SDNY District Court to file documents electronically.

✓  Sign up now for a SDNY PACER account if you don't already have one. Call (800) 676-6856, or go to http://pacer.psc.uscourts.gov

✓  Electronically file documents in ECF cases over the Internet at ecf.nysd.uscourts.gov

✓  Don't have a computer or scanner? Bring your ECF password and the paper documents to the courthouse, and you can use our public computers to electronically file your documents. Call the ECF Help Desk for more information.

✓  The ECF Help Desk is available to answer your ECF questions from 8:30 AM to 7:30 PM at (212) 805-0800, and from 8:30 AM to 5:00 PM at (914) 390-4204, and by email at help_desk@nysd.uscourts.gov

**Q. Will I need a password to use ECF?**

Yes, 2 passwords - one for the ECF system and one for PACER. To obtain an ECF password you must first register to be an ECF Filing User at www.nysd.uscourts.gov To obtain a PACER password go to http://ecf.nysd.uscourts.gov If you already use dial up PACER service, then you don't need to change anything - your log-in and password will remain the same.

When a document is electronically filed, all ECF registered attorneys of record in that case will receive an email titled NOTICE OF ELECTRONIC FILING and a hypertext link to the document. That is your "one free look" at the document. If you need a second look or want to view other cases where you are not the attorney of record, you will be required to enter your PACER log-in and password.

**Q. Can I view both civil and criminal dockets over the Internet?**

Civil dockets are available remotely over the Internet to anyone with a PACER account. Criminal dockets are available remotely over the Internet only to the attorney of record. As always, all civil and criminal dockets may be viewed on public access computers at the courthouse.

**Q. How can I sign up other attorneys in my firm to receive electronic notices in my case?**

By adding them as an additional attorney of record. Every attorney of record will receive email notification of filings in his or her case. The ECF system will allow up to two attorneys of record to be entered in each case. Of course, each attorney must be a registered ECF filing user.

**Q. Must the caption of the document indicate it has been electronically filed?**

Yes. (SDNY ECF Procedures, 8a).

**Q. How will I know if I have successfully filed a document electronically?**

The filer will immediately receive a Notice of Electronic Filing, which should be saved and/or printed; it's your receipt. You will also see a list of who will be served electronically and who will not. It is the responsibility of the filing party to serve paper copies on any party that will not receive electronic notice.

**Q. What if I file the wrong document, or file in the wrong case?**

In all cases assigned to the ECF system, if a document is electronically filed in error, the filer shall immediately notify the Clerk of Court in writing, and the Clerk shall seek further guidance from the Court.

**Q. How do I sign an electronically filed document?**

The filing user's ECF log-in and password serve as his/her electronic signature. (ECF Procedures #8). The filing user should place an S/ in place of the signature. Signatures for all other persons must be scanned in order to capture the actual ink signature.

**Q. Will older cases be assigned to the ECF system?**

No. Only those cases filed after the ECF system goes live are subject to electronic filing. Cases filed before the ECF system goes live will not be converted to ECF cases. You will be able to view the docket sheets in older cases on-line, but not the documents.

**Q. Which cases will be ECF cases?**

Civil and criminal cases filed after December 1, 2003, will be subject to electronic filing. Social Security cases, Habeas Corpus cases and Pro Se cases will not be assigned to the ECF system.

**Q. Which Judges will entertain ECF cases?**

Eventually all the courts Judges and Magistrate-Judges will be able to entertain ECF cases. Groups of judges will be added to the ECF system over a 12 month period. The first group will include Judges Batts, Brieant, Conner, Kaplan, Koeltl, McMahon, Mukasey, Preska, Robinson, Stein, Sweet, and all the Court's Magistrate Judges. Parties are directed to refer to each judge's individual rules (available on the court's website) to learn whether a particular case will be assigned to the ECF system.

**Q. How do I view a document in an ECF case?**

Use an approved Internet web browser (see above) and go to **https://ecf.nysd.uscourts.gov** Click on Query, enter the case number, find the document, and click on the blue hyperlink next to that entry. An electronic copy of the complete document will then appear on your computer screen. If there is no blue hyperlink, then there is no electronic version of that document.

**Q. Does filing electronically affect the filing deadline?**

No. Filing electronically does not change your obligation to comply with the Federal Rules and any applicable Local Rules. Filing must be <u>completed</u> before midnight local time in order to be considered timely filed that day (ECF Procedures 3c)(See also Judges Individual Rules).

**Q. How do I open an ECF case?**

To open a civil action, you must file the complaint on paper at the courthouse, pay any applicable fee, and serve the documents in the traditional manner, on paper. (See SDNY ECF Procedures 1d). Then you must <u>email</u> (not electronically file) a pdf copy of all filed documents to the Clerk of Court within 24 hours. All documents must be marked with the case number and assigned Judge's name. Email a copy of all filed documents in pdf format to:

**Q. How do I file a proposed order, judgment or stipulation?**

Proposed orders, judgments and stipulations should not be submitted through the ECF system. Instead they should be sent by email to the Clerk. Proposed orders should be submitted in word processing format (WordPerfect or Word) rather than as a pdf document. Stipulations should be submitted in pdf format. Stipulations must contain all required signatures (the last person to sign can email it to the clerk). Email the proposed order, judgment or stipulation to:

For cases assigned to a Manhattan Judge: **orders_and_judgments@nysd.uscourts.gov**

For cases assigned to a White Plains Judge: **wpclerk@nysd.uscourts.gov**

**Q. How do I file an Order to Show Cause?**

In all cases assigned to the ECF system, Orders to Show Cause seeking a stay shall be submitted in the traditional manner, in person before the Court.

Orders to Show Cause that do not seek a stay, shall be submitted by email (not filed on the ECF system) to the Clerk in word processing format (WordPerfect or Word) rather than as a pdf document. Email the proposed Order to Show Cause to:

For cases assigned to a Manhattan Judge: **orders_and_judgments@nysd.uscourts.gov**

For cases assigned to a White Plains Judge: **wpclerk@nysd.uscourts.gov**

**Q. How do I file a default judgment?**

Default judgments should not be submitted through the ECF system. Instead they should be sent by email to the Clerk, in word processing format (WordPerfect or Word) rather than as a pdf document. Email the default judgment documents to:

For cases assigned to a Manhattan Judge: **orders_and_judgments@nysd.uscourts.gov**

For cases assigned to a White Plains Judge: **wpclerk@nysd.uscourts.gov**

**Q. How do I submit a letter?**

In the traditional manner on paper. Do not submit letters through the ECF system. (See also each Judge's Individual Rules).

**Q. Will sealed documents be filed electronically?**

No. Sealed documents will filed in the traditional manner, in paper form.

On the Court's website you will find "ECF 101", an on-line introduction to ECF, as well as detailed training materials for beginners and advanced users. Go to www.nysd.uscourts.gov

(c) Filing a document electronically does not alter the filing deadline for that document. Filing must be completed before midnight local time where the Court is located in order to be considered timely filed that day.

(d) Individual judges' practices should continue to be followed with respect to delivery of courtesy copies.

## 4. Entry of Court Orders

(a) All orders, decrees, judgments, and proceedings of the Court will be filed in accordance with these procedures and entered on the docket kept by the Clerk under Fed.R.Civ.P. 58 and 79 and Fed.R.Crim.P. 49 and 55. Each document signed by a judge shall be scanned so as to contain an image of the judge's signature and shall be filed electronically by the Court, and the manually signed original shall be filed by the Clerk of the Court. In the event of a discrepancy between the electronically filed copy and the manually signed original, the manually signed original shall control.

(b) A Filing User submitting a document electronically that requires a judge's signature must promptly deliver the document in such other form as the Court requires, if any.

## 5. Attachments and Exhibits

Filing Users must submit in electronic form all documents referenced as exhibits or attachments, unless the Court permits paper filing. A Filing User must submit as exhibits or attachments only those excerpts of the referenced documents that are relevant to the matter under consideration by the Court. Excerpted material must be clearly and prominently identified as such. Filing Users who file excerpts of documents as exhibits or attachments under this procedure do so without prejudice to their right to file timely additional excerpts or the complete document. Responding parties may file timely additional excerpts that they believe are relevant or the complete document. A party may move for permission to serve and file in hard copy documents that cannot reasonably be scanned. In cases where the record of an administrative or other prior proceeding must be filed with the Court, such record may be served and filed in hard copy without prior motion and order of the Court.

## 6. Sealed Documents

Documents ordered to be placed under seal may not be filed electronically unless specifically authorized by the Court. A motion to file documents under seal should be filed electronically unless prohibited by law; however, a motion to file under seal that includes a statement of why the filing should not be made electronically may be made in paper copy. The order of the Court authorizing the filing of documents under seal may be filed electronically unless prohibited by law. A paper copy of the order must be attached to the documents under seal and be delivered to the Clerk.

## 7. Retention Requirements

Documents that are electronically filed and require original signatures other than that of the Filing User must be maintained in paper form by the Filing User until one year after all time periods for appeals expire, except that affidavits, declarations and proofs of service must be maintained in

**11. Technical Failures**

A Filing User whose filing is made untimely as the result of a technical failure may seek appropriate relief from the Court.

**12. Public Access**

A person may review at the Clerk's office filings that have not been sealed by the Court. A person also may access the Electronic Filing System at the Court's Internet site www.nysd.uscourts.gov by obtaining a PACER log-in and password. A person who has PACER access may retrieve docket sheets in civil and criminal cases and documents in a civil case, but only counsel for the government and for a defendant may retrieve documents in a criminal case. Only a Filing User under Procedure 2 herein may file documents.

AO 440 (Rev. 10/93) Citazione in azione civile – SDNY WEB.4/99

# TRIBUNALE FEDERALE DI PRIMA ISTANZA

### DISTRETTO *Meridionale* DI *New York*

*Merck Eprova AG*

**CITAZIONE CAUSA CIVILE**

**V.**

N. caso: 1:07 CV 5898 (RJS)

*GNOSIS S.P.A.*
*E*
*GNOSIS BIORESEARCH S.A.*

**A:** (Nome e indirizzo del convenuto)

*GNOSIS S.P.A.*
*VIA LAVORATORI AUTOBIANCHI 1*
*20033 Desio (MI) Italia*

*GNOSIS BIORESEARCH S.A.*
*Via Lischedi*
*CH – 6592*
*SAN ANTONINO, SVIZZERA*

**La S.V. è citata** e Vi si richiede di notificare all'AVVOCATO DEL RICORRENTE (nome e indirizzo)

*Robert E. Hanlon*
*Thomas J. Parker*
*ALSTON & BIRD LLP*
*90 PARK AVENUE*
*New York, New York 10016*

una risposta al ricorso allegato alla presente entro _____20_____ giorni dalla notifica della presente citazione, escluso il giorno di notifica. In caso di mancata risposta si procederà a giudizio in contumacia nei Vs. confronti per la riparazione oggetto del ricorso. È inoltre necessario depositare la Vs. risposta presso il Cancelliere del presente Tribunale entro un ragionevole periodo di tempo dopo la notifica.

J. MICHAEL McMAHON

**22 OTT 2007**

_____

_____

CANCELLIERE

DATA

[Firma autografa] *Marcos Quintero*

_____

(VISTO) VICE CANCELLIERE

AO 440 (Rev. 10/93) Citazione in azione civile – SDNY WEB.4/99

## RELATA DI NOTIFICA

| | |
|---|---|
| La notifica della Citazione e del Ricorso è stata eseguita dal sottoscritto | DATA |
| NOME DEL MESSO NOTIFICATORE *(IN STAMPATELLO)* | TITOLO |

*Selezionare una delle caselle sottostanti per indicare il metodo di notifica*

☐ Notificato personalmente al convenuto. Luogo di notifica: _____

☐ Lasciate copie del documento presso l'abitazione o la residenza abituale a persone maggiorenni e responsabili e al momento conviventi

☐ Notifica non avvenuta: _____

☐ Altro *(specificare)*: _____

## DICHIARAZIONE DI SPESE DI NOTIFICA

| SPESE DI VIAGGIO | SPESE DI NOTIFICA | TOTALE |
|---|---|---|
| | | |

## DICHIARAZIONE DEL MESSO NOTIFICATORE

Il sottoscritto dichiara sotto la propria personale responsabilità (secondo quanto previsto dalle leggi degli Stati Uniti d'America in caso di falsa testimonianza) che le informazioni contenute nella Relata di notifica e nella Dichiarazione di spese di notifica rispondono a verità.

Eseguito il _____        _____
               Data                                        Firma del messo notificatore


                                                           _____
                                                           Indirizzo del messo notificatore


                        _____

(1)  Fare riferimento alla Regola 4 delle Regole Federali di Procedura Civile per chi può notificare una citazione

**TRIBUNALE FEDERALE DI PRIMA ISTANZA**
**DISTRETTO MERIDIONALE DI NEW YORK**

---

**MERCK EPROVA AG**                              :

              **Ricorrente**                      :          **1:07 CV 5898 (RJS)**

                                                  :

**contro**                                        :

**GNOSIS S.P.A.**

**e**                                             **PRIMO RICORSO VERSIONE**
                                                  **DEFINITIVA**
                                                  **(RICHIESTA DI GIURIA)**
**GNOSIS BIORESEARCH S.A.**                       :

                                                  :

              **Convenuti**                       :

---

    Il Convenuto, Merck Eprova AG 8"Merck") presenta questa Prima Rettifica di Ricorso contro i convenuti Gnosis, S.p.A., e Gnosis Bioresearch SA (indicati congiuntamente come "Gnosi" o "Convenuti") e a supporto di cui all'oggetto dichiara quanto segue:

**NATURA E BASE DELL'AZIONE**

    1.    La presente azione si fonda sull'etichettatura (labeling) dei prodotti dei Convenuti intenzionalmente e consapevolmente falsa e fuorviante. Le azioni dei convenuti costituiscono pubblicità ingannevole in violazione della Sezione 43(a) del Lanham Act (legge americana sulla natura e tutela dei nomi e marchi registrati), Codice degli Stati Uniti (U.S.C.) capitolo 15 § 1125(a)/1)(b); concomitanza di pubblicità ingannevole in violazione della Sezione 43(a) del Lanham Act, U.S.C. 15 §1125(a); concorrenza sleale in violazione della common law dello stato di New York; pratiche ingannevoli nel corso dell'attività commerciale in violazione della General Business Law di New York, § 349(h) (legge che proibisce gli atti sleali e le pratiche ingannevoli); e pubblicità ingannevole in violazione della General Business Law di New York § 350(e)(3). Merck chiede che siano applicati provvedimenti ingiuntivi temporanei, preliminari e permanenti, chiede i danni effettivi, danni punitivi e

**CONTESTO**

**A. Merck, il suo prodotto L-5-MTHF e il suo famoso marchio commerciale METAFOLIN**

8.    Merck Eprova è l'affiliata svizzera di Merck KGaA e fornisce ingredienti farmaceutici e dietetici alle industrie farmaceutica e nutrizionale per l'uso in test clinici e applicazioni su prodotti commerciali. Uno di questi prodotti viene distribuito in collegamento con marchi commerciali famosi e peculiari, che hanno in tutto o in parte il termine METAFOLIN ("i marchi METAFOLIN").

9.    I marchi METAFOLIN sono stati usati da Merck e i suoi clienti in riferimento all'ingrediente dietetico N-[4-[[(2-ammino-5,6,7,8-tetraidro-4-idrossi-5-metil-(6S)-pteridinil)metil]ammino]benzoil]-acido L glutammico, sale di calcio, ovvero sale di calcio dell'acido L-5 metiltetraidrofolico ("L-5-MTHF").

10.    Merck nel 2001 ha presentato alla FDA una Comunicazione di Nuovo Ingrediente Dietetico a proposito di L-5-MHTF e del suo uso come integratore dietetico. L-5-MTHF dà origine al folato, una vitamina umana essenziale del complesso B.

11.    L'ingrediente dietetico L-5-MTHF è stato impiegato per oltre 5 anni negli integratori dietetici, ivi compresi le vitamine per la gravidanza, alimenti terapeutici (medical foods), integratori nutrizionali e cibo per l'uso in diete speciali.

12.    I marchi METAFOLIN sono proprietà di Merck KGaA. Merck Eprova è l'intestatario della licenza esclusiva per gli Stati Uniti dei marchi METAFOLIN. Merck KGaA è il proprietario della registrazione dei marchi N. 3001087 e 2526532 per METAFOLIN presso l'Ufficio Brevetti e Marchi Commerciali degli Stati Uniti.

13.    Merck ha cominciato a produrre e distribuire l'ingrediente dietetico L-5-MTHF nel 2002. Da allora, Merck e i suoi clienti sono riusciti a creare negli Stati Uniti

un mercato notevole per la commercializzazione, distribuzione, importazione e vendita dei prodotti. Merck dall'ingrediente L-5-MTHF ricava entrate sostanziose.

14.    Il ricorrente Merck è l'unico importatore, titolare di brevetto e distributore principale della sostanza all'ingrosso L-5-MTHF negli Stati Uniti, direttamente oppure tramite i titolari della licenza. Merck fornisce L-5-MTHF come sostanza all'ingrosso. I clienti di Merck usano L-5-MTHF del brand METAFOLIN in diversi integratori alimentari, alimenti terapeutici, integratori nutrizionali, vitamine per la gravidanza e cibo per speciali scopi dietetici. La presenza dell'originale L-5-MTHF per i clienti di Merck fa sì che si tratti di un punto di vendita esclusivo (unique selling point). Merck distribuisce inoltre ai suoi clienti licenze di L-5-MTHF del brand METAFOLIN.

15.    Merck ha condotto approfonditi test clinici e di laboratorio su L-5-MTHF.

16.    I benefici esclusivi di L-5-MTHF sono giustificati dal fatto che si tratta di un unico diasteroisomero del composto acido 5 metiltetraidrofolico e che è un prodotto stabile allo stato cristallino.

17.    Molti prodotti, quale ad esempio l'acido 5 metiltetraidrofolico, si trovano in natura come composti di due o più diasteroisomeri.

18.    I vari diasteroisomeri presenti in tali composti possono avere proprietà radicalmente differenti l'uno dall'altro. In certi casi, un diasteroisomero può avere effetti terapeutici, mentre un altro non ha efficacia terapeutica. Nei casi più gravi, un diasteroisomero può essere altamente tossico mentre un altro può essere di straordinario impiego farmacologico. Se ne deduce che ci sono spesso grandi benefici nel dare ai pazienti e consumatori un prodotto che contiene un solo diasteroisomero invece di quelli che sono composti da una miscela di essi.

19.   I vari diasteroisomeri si distinguono l'uno dall'altro con nomi convenzionali che riflettono le loro diverse proprietà. Una di tali convenzioni usa la "D" per indicare un diasteroisomero e una "L" per il composto di un diverso diasteroisomero.

20.   L'acido 5 metiltetraidrofolico è una miscela di due diasteroisomeri, "L" e "D".

21.   La versione L (cioè, L-5-MTHF) è di gran lunga preferibile alla versione D (cioè, D-5-MTHF) in quanto L è la forma predominante in natura del folato così come si trova nel cibo e nel corpo umano. La versione L è la forma biologicamente attiva di folato, di cui è già stata dimostrata l'alta percentuale di biodisponibilità (la percentuale in cui un farmaco o altra sostanza è disponibile in una parte del corpo precedentemente individuata) negli esseri umani. Al contrario, la D è una forma di folato non presente in natura che il corpo umano non riesce a metabolizzare.

22.   L-5-MTHF è la forma diasteroisomerica pura di folato usata dalle cellule del corpo. Negli esseri umani questo particolare composto è la forma predominante nella circolazione e nel trasposto all'interno dei tessuti, ed è l'unico folato che può attraversare la barriera sangue/cervello.

23.   Infatti, poiché la forma D non rivela virtualmente alcuna attività benefica, la presenza di uno qualsiasi dei diasteroisomeri di D-5-MTHF può finire l'assorbimento e l'attività del diasteroisomero di L-5-MTHF riducendo quindi la generale usabilità del composto.

24.   L-5-MTHF di Merck è conforme a tutti i requisiti richiesti applicabili per gli ingredienti dietetici così come stabiliti dalla Food and Drug Administration degli Stati Uniti ("FDA").

25.  Nel corso degli anni, Merck ha speso molti milioni di dollari per la ricerca e lo sviluppo di L-5-MTHF, e ogni anno ha destinato importanti risorse finanziarie al marketing del prodotto.

26.  I convenuti non hanno alcun rapporto con il ricorrente Merck né con le entità ad esso collegate.

27.  Merck è noto in tutto il mondo per i suoi farmaci innovativi e i suoi prodotti terapeutici.

28.  I prodotti di Merck sono alcuni dei più famosi e riconosciuti prodotti al mondo riguardo all'impiego medico e dietetico.

29.  Nel corso degli anni, Merck ha lavorato duramente per espandere e dare solidità al suo nome commerciale, ai marchi commerciali e ai suoi prodotti.

30.  Nel corso degli anni, Merck ha lavorato molto duramente per assicurare che la qualità del suo prodotto L-5-MTHF fosse estremamente alta e che il prodotto in questione fosse della massima sicurezza ed efficacia.

31.  Per esempio, Merck ha condotto innumerevoli esperimenti e test per determinare la sicurezza e l'efficacia di L-5-MTHF, e ha speso anni e milioni di dollari nella ricerca e lo sviluppo per la scoperta e il perfezionamento del prodotto.

## B. Condotta illegale dei Convenuti

32.  Per informazioni e convinzioni, il Convenuto – tra l'altro – è un produttore, distributore e fornitore di ingredienti dietetici nutrizionali.

33.  Attraverso i suoi agenti, Gnosis vende e distribuisce i suoi prodotti in tutto il mondo, comprese la vendita e la distribuzione negli Stati Uniti e nello stato di New York in particolare.

34.    Gnosis vende l'ingrediente dietetico 5-MTHF, una miscela di diasteroisomeri, già etichettato in modo ingannevole e di cui si continua questa falsa etichettatura come il diasteroisomero puro L-5-MTHF (il "composto Gnosis").

35.    Che Gnosis contraffaccia l'etichetta del suo prodotto usando l'etichetta L-5-MTHF è facilmente riscontrabile perché Gnosis omette di seguire il linguaggio standard del labeling approvato dalla FDA. Nello specifico, FDA ha emesso una Nuova Comunicazione Ingrediente Dietetico ("NDI") per un'altra ditta che vuole usare e commercializzare 5-MTHF, lo stesso ingrediente del composto Gnosis. Questa NDI ha stabilito che la ditta che ha presentato richiesta deve etichettare il suo prodotto come "metiltetraidrofolato" o "5-MTHF". In questo modo il regolamento di FDA stabilisce che è improprio denominare il prodotto 5-MTHF di Gnosis come L-5-MTHF.

36.    Nell'ottobre 2006, Merck fu avvisato per la prima volta che il Convenuto stava distribuendo e commercializzando attivamente un prodotto come L-5 MTHF in paesi quali Stati Uniti e Germania.

37.    Il sito web di Denk Feinchemie GmbH (www.denk-feinchemie.de), distributori internazionali di materie prime, nell'ottobre 2006 riferì che Gnosis era il produttore di L-5-MTHF, ovvero sale di calcio dell'acido L-5 metiltetraidrofolico.

38.    In un comunicato stampa del 10 aprile 2007, Gnosis ha annunciato che stava per stipulare un nuovo accordo di distribuzione con una società avente sede nel Regno Unito per la vendita dei prodotti Gnosis nel Regno Unito e in Irlanda. Uno dei prodotti oggetto dell'accordo si chiama Extrafolate, che, secondo il comunicato stampa rilasciato da Gnosis, è dichiaratamente sale di calcio dell'acido L-5 metiltetraidrofolico.

39.  Per informazioni e convinzioni, Gnosis sta facendo in modo che il composto Gnosis sia commercializzato come Extrafolate.

40.  Gnosis ha fornito il composto Gnosis ad altri distributori, compreso AHD International LLC ("AHD"), una società per azioni della Georgia.

41.  Merck ha promosso un'azione legale contro AHD nel distretto settentrionale della Georgia, ovvero causa N. 1:07 CV 0597 ("l'azione AHD"), per - tra l'altro - aver etichettato in modo falso il suo prodotto come il diasteroisomero puro L-5-MTHF, quando, in effetti quell'ingrediente conteneva la miscela diasteroisomerica 5-MTHF e non il puro L-5-MTHF.

42.  Come parte dell'accordo compositivo dell'azione AHD, AHD da allora ha smesso di vendere e pubblicizzare 5-MTHF, comunque non prima di aver rivelato che la loro miscela diasteroisomerica veniva prodotta e fornita da Gnosis.

43.  Merck ha ottenuto campioni del composto Gnosis ed ha eseguito test analitici per determinarne la composizione.

44.  I test in oggetto hanno concluso che il composto Gnosis non è puro L-5-MTHF ma la miscela diasteroisomerica 5-MTHF.

45.  Come ulteriore parte dell'accordo compositivo dell'azione AHD, AHD ha fornito a Merck copie dei certificati delle analisi che AHD ha ricevuto da Gnosis per il prodotto 5-MTHF in loro possesso ricevuto da Gnosis stesso.

46.  I certificati di analisi di cui sopra, le etichette del prodotto, le specifiche del prodotto che Gnosis ha fornito a AHD e agli altri suoi clienti, rivendica falsamente che il composto Gnosis è L-5-MTHF puro mentre in effetti non lo è.

47.  Gnosis è consapevole che il composto Gnosis è la miscela diasteroisomerica 5-MTHF e non il diasteroisomero puro L-5-MTHF.

48.   Gnosis ha ammesso con Merck in più di una occasione, direttamente o attraverso un legale esterno, che il composto Gnosis è la miscela diasteroisomerica 5-MTHF e non il diasteroisomero puro L-5-MTHF.

49.   Nonostante queste ammissioni, Gnosis continua a dichiarare ai suoi distributori e ai consumatori che il composto Gnosis consiste nel diasteroisomero puro L-5-MTHF.

50.   Per informazioni e convinzioni, attraverso materiale accessibile via internet e attraverso materiale distribuito a clienti e potenziali clienti, Gnosi ha commercializzato la sua miscela diasteroisomerica 5-MTHF come il diasteroisomero puro L-5-MTHF nello sforzo di indurre i clienti a credere che il composto Gnosis sia puro L-5-MTHF, quando non lo è, ovvero a credere che il composto Gnosis sia equivalente a L-5-MTHF, cosa che non è.

51.   Gnosis ha tenuto i succitati comportamenti ovunque, sia negli Stati Uniti che nello stato di New York.

52.   Gnosis ha deliberatamente mistificato le dichiarazioni fatte ai consumatori, al pubblico e sul mercato, sostenendo che il composto Gnosis abbia la stessa efficacia e sicurezza  di L-5-MTHF detenuto da Merck, quando, in effetti, i due prodotti non sono gli stessi e non hanno lo stesso effetto terapeutico.

53.   Per informazioni e convinzioni, Gnosis sapeva che i suoi clienti stavano etichettando impropriamente il composto Gnosis come L-5-MTHF e ha permesso e incoraggiato i clienti nel labeling il composto Gnosis come L-5-MTHF, nonostante fosse la miscela diasteroisomerica 5-MTHF.

II FONDAMENTO DELL'AZIONE

CONCOMITANZA DI PUBBLICITA' INGANNEVOLE

66.   Merck incorpora al punto presente e dichiara nuovamente, come se fossero estese completamente nel presente paragrafo, le dichiarazioni dal paragrafo 1 al 65 compreso.

67.   Il convenuto ha detto il falso ai distributori, ovvero che il composto Gnosis è il diasteroisomero puro L-5-MTHF.

68.   Per informazioni e convinzioni, il convenuto ha esibito ai suoi distributori falsi certificati di analisi, etichette e specifiche dei prodotti che il composto Gnosis è il diasteroisomero puro L-5-MTHF.

69.   Il convenuto ha indotto i suoi distributori alla pubblicità ingannevole con il labeling e il marketing del composto Gnosis come diasteroisomero puro L-5-MTHF.

70.   Il convenuto sapeva o aveva ragione di sapere che avrebbe coinvolto i suoi distributori nella pubblicità ingannevole con il labeling e il marketing del composto Gnosis come diasteroisomero puro L-5-MTHF.

71.   Come risultato, i distributori di Gnosis hanno reso dichiarazioni false che possono indurre nel consumatore confusione, errore o inganno relativamente alla qualità e all'affidabilità del composto Gnosis. I clienti, ovvero i potenziali clienti, possono, e potrebbero, fidarsi di dichiarazioni non corrispondenti al vero. Le azioni del convenuto pertanto hanno indotto i distributori  a fuorviare e danneggiare i clienti e i consumatori così come vengono danneggiati il buon nome e la reputazione di Merck in violazione della Sezione 43(a) del Lanham Act, U.S.C. 15 § 1125(a).

72.   Considerate la consapevolezza e le ammissioni di Gnosis sul fatto che il composto Gnosis fosse la miscela diasteroisomerica 5-MTHF, e non il diasteroisomero puro L-5-MTHF, gli

atti summenzionati sono da interpretare come compiuti deliberatamente e volontariamente e con l'intenzione di indurre confusione, errore, ovvero inganno.

73.    Gli atti summenzionati del convenuto hanno provocato, e continueranno a farlo, danni al ricorrente in un ammontare che dovrà essere quantificato durante il dibattimento.

74.    Gli atti summenzionati del convenuto hanno provocato e, se non limitati e proibiti dalla Corte, continueranno a causare danni irreparabili, perdite, e lesioni alla reputazione del Ricorrente per i quali il Ricorrente non ha un adeguato rimedio (remedy at law).

### III FONDAMENTO DELL'AZIONE

#### USO DI DESCRIZIONI FALSE E FALSE DICHIARAZIONI

75.    Merck incorpora al punto presente e dichiara nuovamente, come se fossero estese completamente nel presente paragrafo, le dichiarazioni dal paragrafo 1 al 74 compreso.

76.    Le dichiarazioni del convenuto rilasciate alla stampa, le dichiarazioni fatte via internet, la pubblicità e le promozioni, e il labeling del composto Gnosis, che affermano che il composto Gnosis è fatto con il diasteroisomero puro L-5-MTHF, sono false nella sostanza e possono indurre nel consumatore confusione, errore o inganno relativamente alla qualità e all'affidabilità del composto Gnosis.

77.    La distribuzione da parte del convenuto di certificati di analisi che affermano che il composto Gnosis è il diasteroisomero puro L-5-MTHF sono dichiarazioni false nella sostanza che danno una presentazione non veritiera della natura, le caratteristiche e la qualità del composto Gnosis.

78.    Tali dichiarazioni false nella sostanza hanno indotto e possono indurre nel consumatore confusione, errore o inganno relativamente alla qualità e all'affidabilità del composto Gnosis.

79.    Gnosis pertanto ha volontariamente promosso il composto Gnosis nel commercio tra stati, provocando tra i consumatori confusione o errore relativamente

alla qualità e al contenuto del composto Gnosis, tutto per il profitto di Gnosis e a danno del pubblico e di Merck.

80.  Considerate la consapevolezza e le ammissioni di Gnosis sul fatto che il composto Gnosis fosse la miscela diasteroisomerica 5-MTHF, e non il diasteroisomero puro L-5-MTHF, gli atti summenzionati sono da interpretare come compiuti deliberatamente e volontariamente.

81.  I summenzionati atti di Gnosis costituiscono uso di descrizioni false e false dichiarazioni nel commercio tra stati in violazione della Sezione 43(a) del Lanham Act, U.S.C. 15 § 1125(a).

82.  Gli atti summenzionati di Gnosis hanno provocato, e continueranno a farlo, danni al ricorrente in un ammontare che dovrà essere quantificato durante il dibattimento.

83.  Gli atti summenzionati del convenuto hanno provocato e, se non limitati e proibiti dalla Corte, continueranno a causare danni irreparabili, perdite, e lesioni alla reputazione del Ricorrente per i quali il Ricorrente non ha un adeguato rimedio (remedy at law).

### IV FONDAMENTO DELL'AZIONE

### CONCORRENZA SLEALE IN BASE ALLA COMMON LAW

84.  Merck incorpora al punto presente e dichiara nuovamente, come se fossero estese completamente nel presente paragrafo, le dichiarazioni dal paragrafo 1 al 83 compreso.

85.  Gnosis ha reso false dichiarazioni in pubblico e ai suoi clienti e ha falsato le etichette del composto Gnosis con l'intendo di ingannare e fuorviare i consumatori relativamente alla qualità e alla natura del suo prodotto.

86.  Gli atti summenzionati hanno autorizzato Gnosis ad appropriarsi indebitamente del lavoro e del dispendio – in termini di costi e impegno – di Merck nello sviluppare il mercato per il diasteroisomero puro L-5-MTHF.

87.   Inoltre, gli atti summenzionati hanno provocato, e presumibilmente continuano a provocare danni ai consumatori e alla rappresentanza commerciale di Merck, e il risultato è la concorrenza sleale di Gnosis nei confronti di Merck.

88.   Considerate la consapevolezza e le ammissioni di Gnosis sul fatto che il composto Gnosis fosse la miscela diasteroisomerica 5-MTHF, e non il diasteroisomero puro L-5-MTHF, gli atti summenzionati sono da interpretare come compiuti deliberatamente e volontariamente.

89.   Gli atti summenzionati di Gnosis hanno provocato, e continueranno a farlo, danni al ricorrente in un ammontare che dovrà essere quantificato durante il dibattimento.

90.   Gli atti summenzionati del convenuto hanno provocato e, se non limitati e proibiti dalla Corte, continueranno a causare danni irreparabili, perdite, e lesioni alla reputazione del Ricorrente per i quali il Ricorrente non ha un adeguato rimedio (remedy at law).

**V FONDAMENTO DELL'AZIONE**

**PRATICHE COMMERCIALI INGANNEVOLI**

**IN VIOLAZIONE DI § 349(H) N.Y. GEN.BUS. LAW**

91.   Merck incorpora al punto presente e dichiara nuovamente, come se fossero estese completamente nel presente paragrafo, le dichiarazioni dal paragrafo 1 al 90 compreso.

92.   Gnosis in New York si è impegnato - e lo fa tuttora - in azioni ovvero pratiche volontariamente ingannevoli contro Merck e il pubblico nella conduzione della propria attività attraverso i seguenti atti destinati al consumatore; dichiarazioni false e fuorvianti rilasciate alla stampa; dichiarazioni false e fuorvianti su internet, pubblicità o promozioni commerciali false e fuorvianti; contraffazione dell'etichetta del composto Gnosis come se fosse il diasteroisomero puro L-5-MTHF; e falsi e fuorvianti certificati di analisi e specifiche del prodotto, e tutti questi fattori, per informazioni e convinzioni, nella sostanza alterano la natura, le caratteristiche e qualità dei beni e servizi associati

al composto Gnosis. Gli atti summenzionati sono in violazione di §
349(b) N.Y. Gen. Bus. Law.

93.  Inoltre, i summenzionati atti fuorvianti di Gnosis hanno provocato,
e presumibilmente continuano a provocare danni ai consumatori, ivi compresi i
consumatori di New York, e alla reputazione commerciale di Merck.

94.  Gli atti di Gnosis hanno provocato e, se non limitati dalla Corte,
continueranno a causare grandi e irreparabili danni al pubblico e all'attività
di Merck e alla reputazione per i quali Merck e il pubblico non hanno un
adeguato rimedio (remedy at law).

95.  Come risultato della cattiva condotta volontaria e intenzionale da
parte di Gnosis, Merck e la pubblica utenza sono pertanto autorizzati a un
rimedio appropriato come richiesto più avanti, ivi compresi i provvedimenti
ingiuntivi preliminari e permanenti.

96.  Inoltre, la violazione consapevole e volontaria della Sezione 349(h)
giustifica il riconoscimento dei danni in misura tripla e il risarcimento
delle spese legali.

### VI FONDAMENTO DELL'AZIONE

### PUBBLICITA' INGANNEVOLE

### IN VIOLAZIONE DI § 350(E)(3) N.Y. GEN.BUS. LAW

97.  Merck incorpora al punto presente e dichiara nuovamente, come se
fossero estese completamente nel presente paragrafo, le dichiarazioni dal
paragrafo 1 al 96 compreso.

92.  Gnosis in New York si è impegnato - e lo fa tuttora - in azioni
ovvero pratiche volontariamente ingannevoli contro Merck e il pubblico nella
conduzione della propria attività attraverso i seguenti atti destinati al
consumatore; dichiarazioni false e fuorvianti rilasciate alla stampa;
dichiarazioni false e fuorvianti su internet, pubblicità o promozioni
commerciali false e fuorvianti; contraffazione dell'etichetta del composto
Gnosis come se fosse il diasteroisomero puro L-5-MTHF; e falsi e fuorvianti
certificati di analisi e specifiche del prodotto,