LITTLETON JOYCE
UGHETTA PARK & KELLY LLP
1 Manhattanville Road, Suite 302
Purchase, New York  10577
Tel: (914) 417-3400
Fax: (914) 417-3401
Attn:  Bryon L. Friedman, Esq. (BF-5752)
        Email: Bryon.Friedman@LittletonJoyce.com

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------- x
MERCK EPROVA AG,                                    :    Case no. 07 Civ. 5898 (RJS)
                                                                  :
                    Plaintiff,                               :
                                                                  :
        -against-                                            :
                                                                  :
GNOSIS S.P.A. and GNOSIS BIORESEARCH S.A.,   :
                                                                  :
                    Defendants.                           :
-------------------------------------------------------------------------- x

# Defendants' Memorandum of Law in Support of Motion under Fed. R. Civ. P. 12(b)(2) to Dismiss the First Amended Complaint for Lack of Personal Jurisdiction

**LITTLETON JOYCE UGHETTA PARK & KELLY LLP**
Attorneys for Defendants
1 Manhattanville Road, Suite 302
Purchase, New York 10577
(914) 417-3400

Of Counsel:
        Bryon L. Friedman, Esq.

2010575

# Table of Contents

Table of Contents ................................................................................................. i

Table of Authorities .............................................................................................. ii

Preliminary Statement ......................................................................................... 1

Statement of Facts ................................................................................................ 1

Legal Arguments .................................................................................................. 1

    1.   The Amended Complaint does not Present Allegations Satisfying the Statutory Requirements for Long-Arm Jurisdiction ........................................ 1

        A.  The Claims do not Arise from any New York Transaction ..................... 2

        B.  Jurisdiction is not Available under CPLR 302(a)(2) Because the Defendants Committed No Acts in New York .......................................... 4

        C.  Jurisdiction under CPLR 302(a)(3) is not Asserted and is not Otherwise Available ............................................................................... 5

            *(1) Merck Eprova Did Not Assert Jurisdiction Under CPLR 302(a)(3).* ..................... 6

            *(2) The Defendants do not Derive Substantial Revenue or Otherwise Regularly Conduct Business in New York.* ..................... 7

            *(3) The Defendants should not have Expected to be Sued in New York.* ..................... 7

            *(4) Merck Eprova Alleges No Injury in New York* ..................... 11

    2.   Exercising Personal Jurisdiction would Violate the Due Process Clause ............... 12

    3.   The Exercise of Jurisdiction does not Comport with Traditional Notions of Fair Play and Substantial Justice. ..................................................... 17

        A.  The Burden on the Defendants ............................................................. 18

        B.  The Interests of the Forum State in Adjudicating the Case.................... 20

        C.  The Plaintiff's Interest in Obtaining Convenient and Effective Relief ............... 20

        D.  The Interstate Judicial System's Interest in Obtaining the Most Efficient Resolution of the Controversy ............................................... 20

        E.  The Shared Interest of the States in Furthering Substantive Social Policies ..... 21

    4.   No Basis for Personal Jurisdiction over Gnosis exists under CPLR 301 ............... 22

    5.   Each Cause of Action Must Separately Warrant Long-Arm Jurisdiction, and Diversity Jurisdiction would not be Available to the State Law Claims ................. 24

Conclusion ........................................................................................................... 25

# Table of Authorities

## Federal Cases

*Alpha Int'l, Inc. v. T-Reproductions, Inc.,*
  2003 U.S. Dist. LEXIS 11224 (S.D.N.Y. June 27, 2003). ...................................................... 7

*American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.,*
  439 F.2d 428 (2d Cir. 1971). ................................................................................................ 11

*Asahi Metal Industry Co., Ltd. v. Superior Court of California,*
  480 U.S. 102 (1987). .................................................................................................... passim

*Ball v. Metallurgie Hoboken-Overpelt, S.A.,*
  902 F.2d 194 (2d Cir.),
  *cert. den.*, 498 U.S. 854 (1990). ......................................................................................... 23

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,*
  171 F.3d 779 (2d Cir. 1999). ............................................................................................... 11

*Beja v. Jahangiri,*
  453 F.2d 959 (2d Cir. 1972). ............................................................................................... 23

*Bensusan Restaurant Corp. v. King,*
  126 F.3d 25 (2d Cir. 1997). ............................................................................................... 3, 5

*Burger King Corp. v. Rudzewicz,*
  471 U.S. 462 (1985). .................................................................................................... passim

*Canada Life Assur. Co. v. Converium Ruckversicherung (Deutschland) AG,*
  335 F.3d 52 (2d Cir. 2003). ................................................................................................ 24

*Chong v. Healthtronics, Inc.,*
  2007 U.S. Dist. LEXIS 45956 (E.D.N.Y. CV-06-1287 June 20, 2007). ................................ 23

*Cosmetech Int'l v. Der Kwei Enter. & Co.,*
  943 F. Supp. 311 (S.D.N.Y. 1996). ..................................................................................... 24

*Hanson v. Denckla,*
  357 U.S. 235 (1958). ........................................................................................................... 12

*International Shoe Co. v. Washington,*
  326 U.S. 310 (1945). ...................................................................................................... 12, 15

*ISI Brands, Inc. v. KCC Int'l, Inc.,*
  458 F. Supp. 2d 81 (E.D.N.Y. 2006). .................................................................................... 7

*Keeton v. Hustler Magazine, Inc.,*
  465 U.S. 770 (1984). ........................................................................................................... 13

*Laumann Mfg. Corp. v. Castings USA, Inc.,*
  913 F. Supp. 712 (E.D.N.Y. 1996). ..................................................................................... 23

*Lehigh Valley Indus., Inc. v. Birenbaum,*
  527 F.2d 87 (2d Cir. 1975). ................................................................................................... 2

*Loberiza v. Calluna Maritime Corp.*,
  781 F. Supp. 1028 (S.D.N.Y. 1992). .................................................................. 23

*McGee v. International Life Ins. Co.*,
  355 U.S. 220 (1957)........................................................................................... 16

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*,
  84 F.3d 560 (2d Cir.),
  *cert. den.*, 519 U.S. 1006 (1996).................................................................. passim

*Montalbano v. Easco Hand Tools, Inc.*,
  766 F.2d 737 (2d Cir. 1985). ......................................................................... 9, 10

*National Football League v. Miller*,
  54 U.S.P.Q.2d (BNA) 1574 (S.D.N.Y. Mar. 30, 2000)......................................... 3

*New Angle Pet Prods., Inc. v. MacWillie's Golf Prods., Inc.*,
  2007 U.S. Dist. LEXIS 46952 (S.D.N.Y. 06-CV-1171 June 28, 2007). ................ 3

*Pahuta v. Massey-Ferguson, Inc.*,
  170 F.3d 125 (2d Cir. 1999). .............................................................................. 9

*Pieczenik v. Cambridge Antibody Tech. Group*,
  2004 U.S. Dist. LEXIS 4127 (S.D.N.Y. 03 Civ. 6336 (SAS) March 16, 2004)..... 24

*Pilates, Inc. v. Pilates Inst., Inc.*,
  891 F. Supp. 175 (S.D.N.Y. 1995). ...................................................................... 5

*Ronar, Inc. v. Wallace*,
  649 F. Supp. 310 (S.D.N.Y. 1986). ..................................................................... 2

*Sunward Electronics, Inc. v. McDonald.*
  362 F.3d 17 (2d Cir. 2004). ................................................................................ 2

*Ticketmaster-New York, Inc. v. Alioto*,
  26 F.3d 201 (1st Cir. 1994)............................................................................... 22

*United States v. First Nat'l City Bank*,
  379 U.S. 378 (1965)........................................................................................... 21

*Universal Licensing Corp. v. Paola del Lungo S.p.A.*,
  293 F.3d 579 (2d Cir. 2002). ............................................................................. 24

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980)..................................................................................... passim

## State Cases

*Allen v. Auto Specialties Mfg. Co.*,
  45 A.D.2d 331, 357 N.Y.S.2d 547 (3d Dep't 1974)..................................... 7, 8, 10

*Allen v. Canadian General Elec. Co.*,
  65 A.D.2d 39, 410 N.Y.S.2d 707 (3d Dep't 1978),
  *aff'd*, 50 N.Y.2d 935, 431 N.Y.S.2d 526, 409 N.E.2d 998 (1980). ......................... 7

*Bryant v. Finnish National Airline,*
  15 N.Y.2d 426, 208 N.E.2d 439, 260 N.Y.S.2d 625 (1965)....................................... 23

*Darienzo v. Wise Shoe Stores, Inc.,*
  74 A.D.2d 342, 427 N.Y.S.2d 831 (2d Dep't 1980). ................................. 9, 10, 16

*Gray v. American Radiator & Standard Sanitary Corp.,*
  22 Ill. 2d 432, 176 N.E.2d 761 (1961). ................................................... 8, 9

*Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.,*
  77 N.Y.2d 28, 565 N.E.2d 488, 563 N.Y.S.2d 739 (1990)............................. 22, 23

*Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.,*
  15 N.Y.2d 443, 209 N.E.2d 68, 261 N.Y.S.2d 8,
  *cert. den.,* 382 U.S. 905 (1965).......................................................... 4, 8, 9

*Martinez v. American Standard,*
  91 A.D.2d 652, 457 N.Y.S.2d 97 (2d Dep't 1982),
  *aff'd,* 60 N.Y.2d 873, 458 N.E.2d 826, 470 N.Y.S.2d 367 (1983). .......... 9, 10, 14, 16

*Murdock v. Arenson Int'l USA, Inc.,*
  157 A.D.2d 110, 554 N.Y.S.2d 887 (1st Dep't 1990). ...................................... 7

*Schaadt v. T. W. Kutter, Inc.,*
  169 A.D.2d 969, 564 N.Y.S.2d 865 (3d Dep't 1991). ...................................... 9

*Sybron Corp. v. Wetzel,*
  46 N.Y.2d 197, 385 N.E.2d 1055, 413 N.Y.S.2d 127 (1978)............................. 11

*Tracy v. Paragon Contact Lens Lab., Inc.,*
  44 A D 2d 455, 355 N.Y.S.2d 650 (3d Dep't 1974)........................................... 8

## Statutes and Constitutional Provisions

15 U.S.C. § 1051 *et seq.*................................................................. 1, 7, 24, 25

15 U.S.C. § 1125................................................................................. 1

28 U.S.C. § 1332(a) ......................................................................... 24

N.Y. Civ. Prac. L. & R. § 301. ................................................... 22, 23, 24

N.Y. Civ. Prac. L. & R. § 302(a)(1)............................................. 2, 3, 4, 6

N.Y. Civ. Prac. L. & R. § 302(a)(2)............................................. 2, 4, 5, 6

N.Y. Civ. Prac. L. & R. § 302(a)(3)(i)............................................... 7

N.Y. Civ. Prac. L. & R. § 302(a)(3)(ii)...................................... 7, 10, 13

N.Y. Civ. Prac. L. & R. § 302(a)(3)............................................ 2, 5, 6, 11

N.Y. Civ. Prac. L. & R. § 302(a)...................................................... 2

N.Y. Civ. Prac. L. & R. § 302. .......................................... 2, 5, 12, 25

U.S. Const., amend XIV, § 1. ................................................... passim

**Other Authorities**

MCKINNEY'S PRACTICE COMMENTARIES, CPLR 302, C302.17. ..................................................... 5

## Defendants' Memorandum of Law in Support of Motion under Fed. R. Civ. P. 12(b)(2) to Dismiss the First Amended Complaint for Lack of Personal Jurisdiction

### Preliminary Statement

The plaintiff, a Swiss corporation, is suing an Italian corporation and a Swiss corporation in New York under the Lanham Act[1] and New York State law.  The Defendants are not present or regularly conducting activities in New York.  The complaint presents no factual allegations, other than in bland conclusory form, suggesting that the Defendants have any connection with New York.  Long-arm jurisdiction — the sole alleged basis of jurisdiction — is not available. The complaint should be dismissed.

### Statement of Facts

The relevant facts are fully set forth in the accompanying declaration of Bryon L. Friedman, Esq., the affidavit of Renzo Berna, and the exhibits annexed thereto.  Terms defined therein have the same meanings in this memorandum.

### Legal Arguments

### 1.    The Amended Complaint does not Present Allegations Satisfying the Statutory Requirements for Long-Arm Jurisdiction

New York's long-arm jurisdictional rules apply in this federal-question case because the Defendant do not reside in the forum state, and the relevant federal statute, the Lanham Act, does not provide for national service of process.  The Second Circuit recognized this principal in 2004

---

[1] 15 U.S.C. § 1051 *et seq.* (15 U.S.C. § 1125).

in *Sunward Electronics, Inc. v. McDonald*.[2]   Accordingly, section 302 of New York's Civil Practice Law and Rules ("CPLR")   applies.

CPLR 302 offers various bases for exercising long-arm jurisdiction.  In this case, the only potential relevant bases would be for a claim arising out of: a New York transaction of business, under CPLR 302(a)(1); a tort committed in New York, under CPLR 302(a)(2); or a tort committed outside New York causing injury in New York, under CPLR 302(a)(3).   These potentially applicable subdivisions share a common element:  the plaintiff must show that its claim ***arises from*** New York conduct or consequences.[3]

Furthermore, the plaintiff must plead facts demonstrating a basis of long-arm jurisdiction with sufficient specificity.   As this Court noted in *Ronar, Inc. v. Wallace*,[4] a plaintiff must present "definite evidentiary facts" to make out a *prima facie* showing of long-arm jurisdiction.[5] Thus, jurisdiction under CPLR 302(a) requires the plaintiff to "proffer not bland assertions, but specific facts."[6]  Merck Eprova has not presented such specific factual allegations showing the Defendants' New York conduct or contacts.

## A.     The Claims do not Arise from any New York Transaction

Jurisdiction under CPLR 302(a)(1) requires two essential elements: a New York transaction, and a related claim.  The Amended Complaint does not present this showing.  The Defendants made no sales in New York.  All of Gnosis's sales were made to its U.S.-based distributors located in Georgia and California.  Merck Eprova does not allege any sales activity

---

[2] 362 F.3d 17, 21 (2d Cir. 2004).

[3] CPLR 302(a).

[4] 649 F. Supp. 310 (S.D.N.Y. 1986).

[5] *Id*. at 315.

[6] *Id*. at 316, *citing*, *Lehigh Valley Indus., Inc. v. Birenbaum*, 527 F.2d 87, 93-94 (2d Cir. 1975).

in the United States other than products sold to Georgia-based AHD. No claims arise from AHD's single sale of Gnosis's product in New York. Merck Eprova bases its allegations on sales and information that Gnosis provided to Georgia-based AHD, and on non-existent advertising and "marketing" communications.

Merck Eprova specifically refers to Gnosis's internet website, but the website does not constitute a New York contact warranting jurisdiction. As noted, Gnosis only maintains a non-interactive website that can be viewed in New York. As the Second Circuit said in *Bensusan Restaurant Corp. v. King*,[7] merely maintaining a passive website that allows a person to receive information does not constitute a transaction of business in New York under CPLR 302(a)(1), even if a New Yorker can view the site.[8] This Court recognized in *New Angle Pet Products, Inc. v. MacWillie's Golf Products, Inc.*, that receiving an order or inquiry from New York over an interactive website may be considered transacting business here,[9] but Gnosis's passive website only provided information and therefore was not interactive.

The Amended Complaint does not identify any New York business transactions or any agreements to supply goods into New York. Although AHD resold a portion of Gnosis's product in New York, none of Merck Eprova's claims arises from the Defendants' conduct in New York, and none of Gnosis alleged conduct occurred in New York.

---

[7] 126 F.3d 25 (2d Cir. 1997).

[8] *Id. See also*, *New Angle Pet Prods., Inc. v. MacWillie's Golf Prods., Inc.*, 2007 U.S. Dist. LEXIS 46952 at *8 (S.D.N.Y. 06-CV-1171 June 28, 2007); *National Football League v. Miller*, 54 U.S.P.Q.2d (BNA) 1574 (S.D.N.Y. Mar. 30, 2000).

[9] *Supra*, 2007 U.S. Dist. LEXIS 46952 at *8.

**B.    Jurisdiction is not Available under CPLR 302(a)(2) Because the Defendants Committed No Acts in New York**

The Defendants never entered New York or performed any conduct in New York. Accordingly, jurisdiction could not be available under CPLR 302(a)(2), which permits long-arm jurisdiction over a nonresident who commits a tort within New York. The *Feathers v. McLucas* portion of *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*,[10] the leading New York Court of Appeals case applying CPLR 302(a)(2), held that the statute only applies if the defendant's alleged tortious conduct occurred within the State of New York.

The *Longines-Wittnauer* decision resolved three cases: *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, applying CPLR 302(a)(1); and *Feathers v. McLucas* and *Singer v. Walker*, applying CPLR 302(a)(2). Both *Feathers* and *Singer* involved tortious conduct that occurred outside of New York, concerning products manufactured out-of-state.

In language that brings the situation at bar to mind, the Court of Appeals, in the *Singer v. Walker* portion of the opinion, explained that manufacturing and labeling a product out of state is not a tortious act committed within the state, even if the product is distributed and sold in the state.

> [T]he tortious acts attributed … in the **manufacture and labeling** of the hammer **occurred at the place of manufacture** in Illinois and, as in *Feathers*, are **wholly insufficient** to satisfy the requirement of paragraph 2 that the "tortious act" be one committed "within" this State. … **The mere fact that a product defectively manufactured and misleadingly labeled in one state is marketed and sold in another cannot serve to change the place where the original tortious acts were committed or to create a new tortious act.**[11]

---

[10] 15 N.Y.2d 443, 209 N.E.2d 68, 261 N.Y.S.2d 8, *cert. den.*, 382 U.S. 905 (1965).

[11] *Id*. at 465-66, 209 N.E.2d at 81, 261 N.Y.S.2d at 25-26.

In response, the New York Legislature amended CPLR 302 to add subdivision (a)(3),[12] which allowed jurisdiction, under appropriate circumstances, for claims involving out-of-state torts that cause injury in New York.  Nevertheless, the interpretation of subdivision (a)(2) still stands.  As the Second Circuit colorfully noted in 1997:

> The official Practice Commentary to *CPLR § 302* explains that 'if a New Jersey domiciliary were to lob a bazooka shell across the Hudson River at Grant's tomb, *Feathers* would appear to bar the New York courts from asserting personal jurisdiction over the New Jersey domiciliary in an action by an injured New York plaintiff.[13]

Since the amended complaint does not allege that either Defendant performed any act in New York, jurisdiction is not available under CPLR 302(a)(2).

## C.    Jurisdiction under CPLR 302(a)(3) is not Asserted and is not Otherwise Available

Merck Eprova does not assert jurisdiction under CPLR 302(a)(3).  In paragraph 6 of the amended complaint, Merck Eprova alleges, "This Court has personal jurisdiction over the Defendant because the Defendant **transacts business** within the State of New York, **contracts to supply goods** or services in the State of New York, and has engaged in **tortious acts within** the State of New York."[14]  Merck Eprova does not allege that the Defendants committed tortious acts outside New York that caused injury here, and it does not allege elements necessary to establish jurisdiction under that subdivision.

CPLR 302(a)(3) allows long-arm jurisdiction for a tort committed outside New York that causes injury in New York, provided either (i) the defendant has a regular course of New York

---

[12] *See, e.g.*, *Pilates, Inc. v. Pilates Inst., Inc.*, 891 F. Supp. 175, 182 n.3 (S.D.N.Y. 1995).

[13] *Bensusan Restaurant Corp. v. King,* 126 F.3d 25, 28 (2d Cir. 1997), *quoting*, McKinney's Practice Commentaries, CPLR 302, C302.17.

[14] Amended Complaint, ¶ 6.

business or conduct, or (ii) the defendant "derives substantial revenue from interstate or international commerce" and expected or reasonably should have expected to be sued here.

> (a) Acts which are the basis of jurisdiction. As to a cause of action *arising from* any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
>         \* \* \*
>
> 3. commits a tortious act without the state causing *injury* to person or property *within the state*, except as to a cause of action for defamation of character arising from the act, if he
>
>> (i) *regularly* does or solicits business, or engages in any other *persistent course of conduct*, or derives *substantial revenue* from goods used or consumed or services rendered, *in the state*, or
>>
>> (ii) *expects or should reasonably expect* the act to have consequences in the state and derives substantial revenue from interstate or international commerce.[15]

## *(1)    Merck Eprova Did Not Assert Jurisdiction Under CPLR 302(a)(3).*

As noted above, Merck Eprova only asserts jurisdiction under CPLR 302(a)(1) or (a)(2), but not under subdivision (a)(3). That omission should effectively end any inquiry on this point. Nevertheless, the Court should also note that Merck Eprova does not allege facts that might support jurisdiction under subdivision (a)(3). It does not allege that it suffered any injury in New York. Furthermore, as noted, the Defendants conduct no activities in New York. Their activities are all in Europe, and Gnosis's only sales in the United States are to non-New York distributors. They have no contacts with New York.

---

[15] CPLR 302(a)(3) (emphasis added).

*(2)* **The Defendants do not Derive Substantial Revenue or Otherwise Regularly Conduct Business in New York.**

The one sale of Gnosis's product that AHD completed in New York — of one kilogram, for $5,000 — cannot, as a matter of law, be considered "substantial revenue." Courts applying CPLR 302(a)(3)(i) have regularly held that a similar sales volume is not "substantial" under the statute. For example, in 1990 the Appellate Division determined that $9,000 of New York sales, representing .05% of the defendant's total sales, were not substantial under either CPLR 302(a)(3)(i) or (a)(3)(ii).[16] While the Court may look at New York sales either as dollars or as a percentage of overall revenue,[17] under either approach this one sale cannot constitute "substantial revenue." Concededly, this Court in *Alpha International, Inc. v. T-Reproductions, Inc.*,[18] sustained jurisdiction for Lanham Act false advertising claims where the defendant had sold only $8,000 worth of beverage in New York. But as the Eastern District noted in *ISI Brands, Inc. v. KCC International, Inc.*,[19] the *Alpha International* court looked beyond these sales to the defendant's other New York contacts, which included an interactive website, national advertising, direct New York mailings, and at least 143 New York sales.

*(3)* **The Defendants should not have Expected to be Sued in New York.**

Jurisdiction would likewise be unavailable under CPLR 302(a)(3)(ii). Although Gnosis derives most of its revenue from international commerce, its ethereal connections with New York could not possibly lead to an expectation to be sued in New York. As for Bioresearch, all of its sales are to Gnosis, in Europe. Bioresearch sells no product in the United States, engages

---

[16] *Murdock v. Arenson Int'l USA, Inc.*, 157 A.D.2d 110, 113-14, 554 N.Y.S.2d 887, 889 (1st Dep't 1990).

[17] *Allen v. Canadian General Elec. Co.*, 65 A.D.2d 39, 410 N.Y.S.2d 707, 708-09 (3d Dep't 1978), *aff'd*, 50 N.Y.2d 935, 431 N.Y.S.2d 526, 409 N.E.2d 998 (1980); *Allen v. Auto Specialties Mfg. Co.*, 45 A.D.2d 331, 357 N.Y.S.2d 547, 550 (3d Dep't 1974).

[18] 2003 U.S. Dist. LEXIS 11224 (S.D.N.Y. June 27, 2003).

[19] 458 F. Supp. 2d 81 (E.D.N.Y. 2006).

in no activity in the United States, and has no connection to the United States. Gnosis does sell product in the United States, but only to distributors located in Georgia and Los Angeles. It conducts no sales or other business activities in New York.

As the Appellate Davison noted in *Allen v. Auto Specialties Manufacturing Co.*,[20] this expectation element presents an objective foreseeability test concerning potential New York consequences in general rather then a specific injury-causing event. This prong requires the Court to find "that the presence of defendant's product in New York with some potential consequence was reasonably foreseeable rather than fortuitous."[21] Accordingly, the court in *Allen v. Auto Specialties Manufacturing*,[22] found that the New York consequences were foreseeable because the defendant "had entered into agreements with agents to solicit business in New York and further solicited business by its own employees."[23] Those elements are not present at bar.

For example, some courts in products liability cases — most prominently, the Illinois Supreme Court in *Gray v. American Radiator & Standard Sanitary Corp.*,[24] — apply a "stream of commerce" analysis of "purposeful availment," which would subject a manufacturer, whose product enters the national or international stream of commerce, to suit wherever that product foreseeably landed. The New York Court of Appeals has not spoken directly on the constitutionality of "stream of commerce," but it rejected *Gray* in *Longines-Wittnauer* to the extent *Gray* would have treated placing a defective product into the stream of commerce as a tort

---

[20] *Supra*, at 333, 357 N.Y.S.2d at 550.

[21] *Tracy v. Paragon Contact Lens Lab., Inc.*, 44 A D 2d 455, 458, 355 N.Y.S.2d 650, 653 (3d Dep't 1974).

[22] *Supra.*

[23] *Id*. at 333, 357 N.Y.S.2d at 550.

[24]  22 Ill. 2d 432, 176 N.E.2d 761 (1961).

committed within the state.[25]  Nevertheless, the Appellate Division rejected the theory in *Schaadt v. T. W. Kutter, Inc.*,[26] saying, "it is not enough that a defendant foresaw the possibility that its product would find its way here; foreseeability must be ***coupled with evidence of a purposeful New York affiliation***, for example, a discernible effort to directly or indirectly serve the New York market."[27]  Other New York Appellate Division cases — most notably, the Second Department's 1982 decision in *Martinez v. American Standard*[28] — have consistently rejected a *Gray*-type stream-of-commerce theory:  Merely being able to foresee that the stream of commerce may bring a manufacturer's product into the state, without more, is not enough to warrant jurisdiction.  Accordingly, given the great deference generally afforded to intermediate appellate state courts on state-law issues when the highest court has not spoken,[29] the Court should follow this rule.

As the Second Circuit noted in *Montalbano v. Easco Hand Tools, Inc.*,[30] merely placing a product in the stream of commerce, which foreseeably could bring it into New York, does not create this type of expectation.[31]  Rather, the plaintiff must demonstrate some "tangible manifestation" of a "purposeful affiliation" designed to service the New York market.  The *Montalbano* court referred to two New York decisions, the *Martinez*[32] case mentioned above and *Darienzo v. Wise Shoe Stores, Inc.*,[33] both of which still apply and are instructive.  The court in

---

[25] *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, *supra*, at 462-63, 209 N.E.2d at 79, 261 N.Y.S.2d at 22-23.

[26] 169 A.D.2d 969, 564 N.Y.S.2d 865 (3d Dep't 1991).

[27] *Id*. at 970, 564 N.Y.S.2d at 866 (emphasis added).

[28] 91 A.D.2d 652, 457 N.Y.S.2d 97 (2d Dep't 1982), *aff'd*, 60 N.Y.2d 873, 458 N.E.2d 826, 470 N.Y.S.2d 367 (1983).

[29] *Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 133 (2d Cir. 1999).

[30] 766 F.2d 737 (2d Cir. 1985).

[31] *Id*. at 742.

[32] *Supra*.

[33] 74 A.D.2d 342, 427 N.Y.S.2d 831 (2d Dep't 1980).

*Martinez*, mindful of the U.S. Supreme Court's decision in *World-Wide Volkswagen Corp. v. Woodson*,[34] held that merely introducing a product into the stream of commerce would not trigger the expectation element of CPLR 302(a)(3)(ii), which requires some tangible New York-directed conduct. *Darienzo's* distinguishable facts, which *Montalbano* does not fully explain, led to a different result, and the case at bar is more like *Martinez* than *Darienzo*.

*Martinez*[35] involved a defective air conditioner. The manufacturer of the unit's compressor tried to implead its Rhode Island-based terminal-pin supplier. The pin supplier's sales to the compressor manufacturer all occurred outside of New York. The pin supplier had no activities in New York, had not granted distributorships to any New Yorkers, and had no relationship with its distributors. It may have been foreseeable that the pin would wind up in a compressor that would find its way into a New York air conditioner, but the lack of necessary tangible connectors to New York rendered that mere possibility insufficient.[36] Conversely, the New Hampshire-based defendant-manufacturer in *Darienzo* produced a defective shoe and sold it to another New Hampshire-based company, who distributed the shoe in New York. But the two companies shared executive management. Also, the manufacturer packaged the shoes for direct interstate shipment and delivered them directly to a common carrier for delivery to the distributor's customers. At bar, Gnosis had none of this type of purposeful affiliation with its distributor. Gnosis delivered its product to the distributor and was not otherwise involved in the distributor's sales activities.

---

[34] 444 U.S. 286 (1980).

[35] *Supra.*

[36] *Id.* at 653, 457 N.Y.S.2d at 98.

**(4)    *Merck Eprova Alleges No Injury in New York***

As noted above, Merck Eprova does not present any facts suggesting it was injured in New York.  The closest it comes is suggesting that some unidentified New York residents might be injured.  But Merck Eprova does not assert that *it* suffered an injury involving some type of consequence in New York.  As the Second Circuit recognized in *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*[37] (and under *Sybron Corp. v. Wetzel*,[38] the leading New York Court of Appeals decision on point), for purposes of CPLR 302(a)(3), "situs of injury is the location of the original event which caused the injury, not the location where the resultant damages are subsequently felt by plaintiff."[39]  In connection with commercial torts, this original event is not necessarily where the tort was committed but rather where the resulting impact occurred.[40]  Thus, for example, in an unfair competition case, the situs would not be the plaintiff's home but rather might be where any lost customers were located.[41]

At bar, Merck Eprova alleges no injuries in New York.  Speculative allegations of possible injuries to hypothetical, unnamed, unrelated New Yorkers cannot be read as alleging injuries to Merck Eprova.  Merck Eprova does not identify any other New York consequences.  Accordingly, even if it sought to amend its complaint (again), jurisdiction would nevertheless be unavailable under CPLR 302(a)(3).

---

[37] 171 F.3d 779 (2d Cir. 1999).

[38] 46 N.Y.2d 197, 385 N.E.2d 1055, 413 N.Y.S.2d 127 (1978).

[39] *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, supra*, at 791, *quoting Hermann v. Sharon Hospital, Inc.*, 135 A.D.2d 682, 683, 522 N.Y.S.2d 581, 582 (2d Dep't 1987).

[40] *Id*. at 793.

[41] *American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.*, 439 F.2d 428, 434-35 (2d Cir. 1971).

## 2.      Exercising Personal Jurisdiction would Violate the Due Process Clause

In addition to satisfying CPLR 302, any exercise of jurisdiction must also comply with Constitutional Due Process requirements.  The Defendants lack sufficient minimum contacts with the forum, and they have not purposefully availed themselves of the privilege of conducting business here.  Exercising jurisdiction would not meet Due Process standards.

The United States Supreme Court, in *Hanson v. Denckla*,[42] set purposeful availment as the standard — now universally accepted — for determining constitutional minimum contacts under the Due Process Clause of the Fourteenth Amendment.  As the Court noted, citing its earlier decision in *International Shoe Co. v. Washington*,[43] "it is essential in each case that there be some act by which the defendant ***purposefully avails*** itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[44]

The "purposeful availment" standard seeks to treat non-residents fairly by looking for two factors: *quid pro quo* and fair warning.  As the name suggest, *quid pro quo* calls on those who accept a state's benefits to answer for claims there.  If a defendant benefits from conducting business in a state, then it is fair to impose the reasonable resulting and related burdens on it, including amenability to suit.[45]  Similarly, "fair warning" suggests that one who accepts a state's benefits should not be surprised when he is sued there.[46]

---

[42] 357 U.S. 235 (1958).

[43] 326 U.S. 310, 319 (1945).

[44] *Hanson v. Denckla, supra,* at 253 (emphasis added); *see also, Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985).

[45] *See, e.g., Burger King Corp. v. Rudzewicz, supra.*

[46] *Id.*

*Quid pro quo* and fair warning both stem from foreseeability. As the Court said in *World-Wide Volkswagen Corp. v. Woodson*,[47] foreseeability "is critical to due process analysis," because "the defendant's conduct and connection with the forum State [should be] such that he should reasonably anticipate being haled into court there."[48] Thus, foreseeability and its sibling "predictability" empower the Due Process Clause to give non-residents the freedom "to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit."[49] The Court restated this principle in *Burger King Corp. v. Rudzewicz*,[50] where it said, "The 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts."[51]

"Stream of commerce," which as noted will not afford sufficient foreseeability under CPLR 302(a)(3)(ii), also fails to satisfy Due Process requirements. The United States Supreme Court addressed the "stream of commerce" analysis twice: in 1980 in the *World-Wide Volkswagen*[52] case, and in 1987 in *Asahi Metal Industry Co., Ltd. v. Superior Court of California*.[53]

*World-Wide Volkswagen* involved a car accident in Oklahoma. The plaintiffs bought an Audi-brand car in New York and had an accident while driving through Oklahoma.[54] They sued, in Oklahoma, the New York-based dealer who sold them the car and the wholesale distributor

---

[47] *Supra.*

[48] *Id.* at 297.

[49] *Id.*

[50] *Supra.*

[51] *Id.* at 475, *citing Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984).

[52] *Supra.*

[53] 480 U.S. 102 (1987).

[54] *World-Wide Volkswagen Corp. v. Woodson, supra*, at 288.

whose sales territory was limited to New York, New Jersey, and Connecticut.[55]  The Court did not extend jurisdiction over those defendants even though it was foreseeable that their mobile product, a car, might find its way into Oklahoma, because the foreseeability necessary to support jurisdiction is "not the mere likelihood that a product will find its way into the forum state." Foreseeability is a relevant factor in analyzing Due Process, but foreseeability is "not the mere likelihood that a product will find its way into the forum State.  Rather, it is that the defendant's ***conduct and connection with the forum State*** are such that he should reasonably anticipate being haled into court there."[56]  Furthermore, the "marginal revenues" that the defendants may have enjoyed because the Volkswagen and Audi service centers in Oklahoma may have supported the brand was "far too attenuated a contact to justify that State's exercise of *in personam* jurisdiction over them."[57]  As noted above, New York's Appellate Division in *Martinez v. American Standard*,[58] following *World-Wide Volkswagen*, rejected a "stream of commerce" rule that would subject a manufacturer to jurisdiction anywhere merely by placing its product "on the market for general distribution."[59]

The Supreme Court revisited the "stream of commerce" approach in *Asahi*.[60]  The Supreme Court of California held that Asahi's "intentional" act of placing its assemblies into the stream of commerce in Taiwan, coupled with its awareness that some of them could eventually reach California, sufficiently supported jurisdiction.  The U.S. Supreme Court unanimously reversed but divided in its rationale.  The Opinion of the Court said placing a product into the stream of commerce would not subject a defendant to long-arm jurisdiction absent additional

---

[55] *Id*. at 288-89.

[56] *Id*. at 297.

[57] *Id*. at 299.

[58] *Supra.*

[59] *Id*. at 653, 457 N.Y.S.2d at 99.

[60] *Supra.*

conduct — such as "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State"[61] — indicating "intent or purpose to serve the market."[62] Notably, the four justices who joined this portion of the opinion would have denied jurisdiction even if the defendant knew "that the stream of commerce may or will sweep the product into the forum State."[63] Despite this split over stream-of-commerce, eight justices joined in the portion of the Opinion of the Court that said asserting jurisdiction would "offend traditional notions of fair play and substantial justice."[64] Just like the situation at bar, the dispute at issue was between two non-U.S. companies,[65] so the forum had a "diminished" interest in the claim. The Court also considered the interests of other states and nations,[66] a caution that seems particularly applicable at bar where no party is a U.S. resident.

Due Process requires "minimum contacts … such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'."[67] These contacts may not be isolated or limited, but rather must be such that the defendants "'should reasonably anticipate being haled into court' in another jurisdiction."[68] A touchstone of minimum contacts is the defendant's actions toward the forum state, which must demonstrate "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum

---

[61] *Id*. at 112.

[62] *Id.*

[63] *Id.*

[64] *Id*. at 113-14 (Opinion of the Court).

[65] *Id*. at 114.

[66] *Id.*

[67] *International Shoe Co. v. Washington, supra*, at 316.

[68] *Burger King Corp. v. Rudzewicz, supra*, at 486.

state, thus invoking the benefits and protections of its laws."[69] Jurisdiction requires contacts that "proximately result" from the defendant's actions "that create a 'substantial connection' with the forum State."[70]

This "substantial connection" must result from the defendant's actions that are "purposefully directed toward the forum State."[71] Merely placing a product into the stream of commerce is not "purposefully directed toward the forum State"[72] even if the defendant knows the stream of commerce might "sweep the product into the forum state."[73] Simply placing a product in the stream of commerce is not purposeful availment without "a discernible effort to serve, directly or indirectly, a market in the forum state."[74] The Amended Complaint alleges no such discernible effort.

The rationale for this doctrine makes imminent good sense. Due process protects an entity without meaningful ties to the forum state from being subjected to binding foreign judgments.[75] By requiring "fair warning" that an entity's activities in a state may subject it to suit there, the Due Process clause protects liberty and "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit."[76]

The Defendants have not purposefully availed themselves of the privileges of conducting business in New York and have not sustained the level of minimum contacts with New York

---

[69] *Asahi Metal Industry Co., Ltd. v. Superior Court of California, supra*, at 112 (citations omitted).

[70] *Id.*, at 109, *quoting McGee v. International Life Ins. Co*., 355 U.S. 220, 223 (1957).

[71] *Id.*

[72] *Id.*

[73] *Id.*

[74] *Martinez v. American Standard, supra*, at 654, 457 N.Y.S.2d at 99, *citing Darienzo v. Wise Shoe Stores, supra*.

[75] *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp*., 84 F.3d 560, 567 (2d Cir.), *cert. den*., 519 U.S. 1006 (1996); *see also, Burger King Corp. v. Rudzewicz, supra*, at 472,

[76] *Burger King Corp. v. Rudzewicz, supra*, at 472, *citing World-Wide Volkswagen Corp. v. Woodson, supra*, at 297.

necessary to establish personal jurisdiction.  The Defendants are Italian and Swiss corporations.

They do not conduct any manufacturing or marketing activities in New York.  They do not

design any of their products, including the product at issue, specifically for the New York

market.  They do not sell their products to any New York residents.  They do not pursue sales or

sales contracts in New York, nor have they solicited business or directly marketed their products

in New York.  They do not own or lease property in New York.  They have no bank accounts or

other assets in New York.  Neither is licensed, authorized, or registered to do business in New

York.  They do not, nor are they required, to pay taxes in New York.  Neither has any offices,

officers, directors, or employees in New York.  They have not acted in a manner to purposefully

avail themselves of New York's privileges and protections, so they could not have expected to be

haled into court here.


**3.      The Exercise of Jurisdiction does not Comport with Traditional Notions of Fair Play and Substantial Justice.**

Assuming, *arguendo*, Merck Eprova demonstrates sufficient minimum contacts, the

Court must then determine whether jurisdiction is reasonable under *Asahi's* five-factor test.[77]

The fact-specific portion of the *Asahi* Opinion of the Court, which eight justices joined, balanced

five factors to determine whether jurisdiction would be reasonable even if threshold minimum

contacts existed.  Those factors are the burden on the defendant, the forum state's interest in the

litigation, the plaintiff's interest in obtaining relief, efficient dispute resolution, and "the shared

interest of the several States in furthering fundamental substantive social policies."[78]  The

Second Circuit applied this test in *Metropolitan Life Insurance Co. v. Robertson-Ceco Corp.*,[79]

---

[77] *Asahi Metal Industry Co., Ltd. v. Superior Court of California, supra*, at 113.

[78] *Id*.

[79] *Supra*.

noting that it would not exercise jurisdiction even on a showing of minimum contacts if "the defendant presents 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'"[80]

## A.    The Burden on the Defendants

The Second Circuit in *Metropolitan Life* found it a significant burden to the defendant in that case that none of the Pennsylvania-domiciled defendant's records, files, or witnesses with information about the litigation were located in the forum state of Vermont.[81]  These same difficulties exist here, but magnified exponentially.  The Defendants' records, files, and witnesses are not located a few hundred miles away in the same time zone and in the same country; they are located in Switzerland and Italy, half a world and six time zones away.

The hardships for the Pennsylvania litigant in *Metropolitan Life* and the European litigants here are not even comparable.  A Pennsylvania witness appearing in Vermont would not have to undertake 10-12 hour flights each way to and from the forum.  A flight from Pennsylvania to Vermont takes at most two hours, while a flight from Italy to New York takes over 10-12 hours.  Defendants' witness who would appear in the Southern District would face over 20 hours of roundtrip air travel for each deposition or trial appearance, not four like the Pennsylvanian in *Metropolitan Life*, at a commensurate difference in expense.

Similarly, when the Pennsylvanian litigates in a Vermont federal court, he litigates under his own Constitution, in a dispute governed by procedural rules and substantive law that is essentially the same as he might face at home.  The Pennsylvanian sued in Vermont gets a judge, a jury, and an advocate who speak his native language.  None of these things are the same for an

---

[80] *Id.* at 568, *quoting Burger King Corp. v. Rudzewicz, , supra*, at 477.
[81] *Id*. at 574.

Italian or Swiss defendant litigating in New York. The Italian or Swiss defendant in New York faces far greater burdens than a Pennsylvania defendant litigating in Vermont.

As Justice O'Connor said in *Asahi*, "the burden on the [non-U.S.] defendant in this case is severe…. [T]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."[82] Technology may have eased modern communications, but transportation has only become more difficult since the 1987 *Asahi* opinion. Also, technology does little or nothing to ease the burdens existing of trying to defend a lawsuit under the impediments of a foreign language, a foreign culture, and a foreign legal system. Technology cannot substantially ease the 6-hour time change or the time away from home and family. Technology cannot resolve the reality that the Defendants and their counsel, unlike the Pennsylvanian's in *Metropolitan Life*, are divided by an ocean, cannot meet except at huge expense, and have only minimal overlapping business hours. In short, no changes in transportation and communication since 1987, when Justice O'Connor suggested that the "unique burdens" of another foreign litigant deserved "significant weight" in the reasonableness calculation, have occurred that should reduce the weight given to the Defendants' burden here. If anything, security burdens and airline scheduling inconsistencies over the last few years have only increased the burdens of international travel. Any contrary suggestion is mistaken and would reflect the insufficient weighting given to the burden on the Defendants in this leg of the "reasonableness" test.

---

[82] *Asahi Metal Industry Co., Ltd. v. Superior Court of California, supra*, at 114.

**B.     The Interests of the Forum State in Adjudicating the Case**

The state's interest in adjudicating this case in New York is not strong, as no party is a New York or even a U.S. resident.[83]  Merck Eprova could easily obtain jurisdiction over the Defendants in its home, Switzerland, which it shares with Bioresearch, or even in the neighboring Italy, with far less disruption than haling the Defendants across the ocean.  Even if the Court finds that New York State has a strong interest in adjudicating this case, the forum state's interest in this case does not begin to offset the burdens on these Swiss and Italian citizens imposed by continuing the litigation here.

**C.     The Plaintiff's Interest in Obtaining Convenient and Effective Relief**

Allowing this lawsuit to continue in New York would gut the protections against procedural shortcuts the Due Process Clause is meant to provide.  In the portion of the *Asahi* opinion joined by eight justices, Justice O'Connor said that "pressures will be placed on [the manufacturer] by the purchasers of its components as long as those who … sell those products in [the forum], are subject to the application of [the forum's] tort law."[84]  These pressures and the fact that even the plaintiff is a Swiss corporation, suggest jurisdiction is inappropriate, particularly since the plaintiff can easily obtain "convenient and effective relief" in its home.

**D.     The Interstate Judicial System's Interest in Obtaining the Most Efficient Resolution of the Controversy**

In evaluating this factor, courts generally consider where witnesses and evidence are likely to be located.[85]  At bar, no witness or other evidence — not even the plaintiff — is located in New York.  All of the parties are in Switzerland or Italy.  Gnosis's identified distributor,

---

[83] *Id.*

[84] *Id*. at 115.

[85] *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, *supra*, at 574.

AHD, is in Georgia.  Since it appears no witness or evidence is located in New York, this factor weighs heavily in favor of dismissal.

### E.    The Shared Interest of the States in Furthering Substantive Social Policies

This factor requires the Court to consider the common interests of the several states in promoting substantive social policies.[86]  Plaintiff bears the burden of establishing the furtherance of any substantive social policies by permitting this lawsuit to proceed in New York.[87]  Plaintiff cannot establish that keeping this lawsuit in New York would further the substantive social policies of the states.  Rather, allowing jurisdiction in a case like this could be very deleterious to orderly relations among sister states and with foreign relations.

Justice O'Connor wrote in the *Asahi* plurality opinion that "*World-Wide Volkswagen* also admonished courts to take into consideration the interests of the 'several States,' in addition to the forum State, in the efficient judicial resolution of the dispute and the advancement of substantive policies.  In the present case, this advice calls for a court to consider the procedural and substantive policies of other nations whose interests are affected by the assertion of jurisdiction by the [forum State's] court."[88]  The courts should also weigh the interests of the government's foreign relations policies.[89]  "Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field."[90]

Although New York has a secondary interest in hearing this lawsuit (since Merck Eprova adds claims under its statutes), this Court should take into consideration the policies of foreign

---

[86] *Id.*, at 575.

[87] *Id.*

[88] *Asahi Metal Industry Co., Ltd. v. Superior Court of California, supra*, at 115.

[89] *Id.*

[90] *Id.*, quoting *United States v. First Nat'l City Bank*, 379 U.S. 378, 404 (1965) (Harlan, J., dissenting).

governments and this government's foreign relations policies in determining whether to exercise personal jurisdiction over the Defendants.[91]  Since no party to this action is a New York resident, that interest is extremely limited.

Finally, in bringing these five weighted factors together to decide where the scale of justice tips, the Second Circuit in *Metropolitan Life* cited with approval the First Circuit's statement in *Ticketmaster-New York, Inc. v. Alioto*,[92] "that the reasonableness prong of the due process inquiry evokes a sliding scale:  the weaker the plaintiff's showing [on minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction."[93] If the Court reaches the reasonableness test in this case, it will have arrived here on the barest possible showing of minimum contacts.  The evidence of minimum contacts in this case being singularly weak, the Defendants' burden in demonstrating unreasonableness should be commensurately low.

Thus a sliding scale "unreasonableness" threshold applied to the vaporous minimum contacts in this case does not even raise a close jurisdictional case.  As in *Asahi* and *Metropolitan Life*, the "reasonableness" test points compellingly toward the immediate dismissal.

## 4.    No Basis for Personal Jurisdiction over Gnosis exists under CPLR 301

CPLR 301 provides a statutory predicate for a traditional basis of jurisdiction.  As New York's Court of Appeals said in *Landoil Resources Corp. v. Alexander & Alexander Services, Inc*.,[94] CPLR 301 permits a court to exercise personal jurisdiction over a foreign corporation that "has engaged in such a continuous and systematic course of 'doing business' here that a finding

---

[91]  *Id.*

[92]  26 F.3d 201, 210 (1st Cir. 1994).

[93]  *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp*., *supra*, at 569.

[94]  77 N.Y.2d 28, 565 N.E.2d 488, 563 N.Y.S.2d 739 (1990).

of its 'presence' in this jurisdiction is warranted."[95]    The court enunciated a "simple and pragmatic" test,[96] requiring permanent and continuous rather than occasional or casual presence, to establish jurisdiction.[97]  In *Ball v. Metallurgie Hoboken-Overpelt, S.A.*,[98] the Second Circuit similarly required a "continuous and systematic course of 'doing business'" to support jurisdiction under CPLR 301.

   Merck Eprova does not allege facts supporting jurisdiction under CPLR 301, so the defendant's lack of "presence" in New York for purposes of CPLR 301 is undisputed.  The point, nevertheless, should be reviewed, as this Court did under similar circumstances in *Laumann Manufacturing Corp. v. Castings USA, Inc.*[99]

   None of the traditional indicia that courts generally look to in determining whether a foreign corporation is "doing business" under CPLR 301 are present in this case.  As New York's Court of Appeals said in *Bryant v. Finnish National Airline*,[100] a foreign corporation is "doing business" so as to allow jurisdiction under CPLR 301 if it engages in New York-based activities such as maintaining an office, employees, bank accounts, or a telephone listing; soliciting business; or owning or renting real property.[101]  Being licensed to do business in New York can also support jurisdiction under CPLR 301.[102]  Merck Eprova does not allege that either defendant engaged in any of these activities.

---

[95] *Id*. at 33, 565 N.E.2d at 490, 563 N.Y.S.2d at 741.

[96] *Id*. at 33, 565 N.E.2d at 490, 563 N.Y.S.2d at 741, *citing Bryant v. Finnish National Airline*, 15 N.Y.2d 426, 432, 208 N.E.2d 439, 441, 260 N.Y.S.2d 625, 628 (1965).

[97] *Id*. at 33-34, 565 N.E.2d at 490, 563 N.Y.S.2d at 741.

[98] 902 F.2d 194, 198 (2d Cir.), *cert. den.*, 498 U.S. 854 (1990).

[99] 913 F. Supp. 712, 716 (E.D.N.Y. 1996).

[100] 15 N.Y.2d 426, 208 N.E.2d 439, 260 N.Y.S.2d 625 (1965).

[101] *Loberiza v. Calluna Maritime Corp.*, 781 F. Supp. 1028, 1030-31 (S.D.N.Y. 1992).

[102] *Beja v. Jahangiri*, 453 F.2d 959, 962 (2d Cir. 1972); *Chong v. Healthtronics, Inc*., 2007 U.S. Dist. LEXIS 45956, /18-19 (E.D.N.Y. CV-06-1287 June 20, 2007).

Accordingly, and particularly in light of Merck Eprova's acknowledgement that CPLR 301 does not apply, a traditional basis of in person am jurisdiction over the defendants is not available.

**5.    Each Cause of Action Must Separately Warrant Long-Arm Jurisdiction, and Diversity Jurisdiction would not be Available to the State Law Claims**

The Court must also "determine the issue of personal jurisdiction separately for each cause of action asserted in the plaintiff's complaint."[103]   The first three of Merck Eprova's six counts assert claims under the Lanham Act, but the last three assert claims under New York State law.   Accordingly, if there is no personal jurisdiction for the Lanham Act claims, there could be no subject matter jurisdiction for last three.   All parties to the suit are citizens of foreign nations, so diversity jurisdiction would therefore be unavailable.   Diversity jurisdiction under 28 U.S.C. § 1332(a) may be available in a dispute between a U.S. citizen and an alien or between citizens of different U.S. states if an alien is also a party, but diversity jurisdiction is not available if all parties are citizens of foreign nations.[104]

None of the allegations specific to the Lanham Act counts even mentions New York or any activity in New York.   Other than the non-specific allegations in paragraphs 33, 51, and 57, of the Amended Complaint's general allegations, Merck Eprova makes no attempt to tie its Lanham Act claims to New York.   The allegations specific to the Lanham Act counts do not mention New York or any conduct or consequences in New York.

---

[103] *Cosmetech Int'l v. Der Kwei Enter. & Co.*, 943 F. Supp. 311, 317 (S.D.N.Y. 1996); *see also, Pieczenik v. Cambridge Antibody Tech. Group*, 2004 U.S. Dist. LEXIS 4127, *25 (S.D.N.Y. 03 Civ. 6336 (SAS) March 16, 2004).

[104] *Universal Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579, 580-81 (2d Cir. 2002); *see also Canada Life Assur. Co. v. Converium Ruckversicherung (Deutschland) AG*, 335 F.3d 52, 54 (2d Cir. 2003).

Since the causes of action must be analyzed separately, the New York references in the state law counts cannot bootstrap a jurisdictional basis for the Lanham Act claims. Merck Eprova's failure to assert any connection to New York requires dismissal of the Lanham Act claims. Dismissal of the Lanham Act claims would necessarily leave the Court without subject-matter jurisdiction as to the last three state-law counts, because there can be no diversity jurisdiction.

## Conclusion

The defendants have no connections to New York, and the Amended Complaint's insubstantial jurisdictional allegations do not stand up to analysis under CPLR 302 or Due Process requirements. Merck Eprova's allegations do not meet statutory standards, and the minimum contacts required to satisfy due process are likewise absent. The motion should be granted and the complaint should be dismissed.

Dated: Purchase, New York
      February 1, 2008

                                    Respectfully submitted,

                                    LITTLETON JOYCE
                                    UGHETTA PARK & KELLY LLP
                                    Attorneys for Defendants

                                    By:    /s/
                                         Bryon L. Friedman (BF 5752)
                                    1 Manhattanville Road, Suite 302
                                    Purchase, New York  10577
                                    (914) 417-3400
                                    File no. 00080.00001

CERTIFICATE OF SERVICE

I, BRYON L. FRIEDMAN, an attorney duly admitted to practice law before this court, declares as follows under the penalties of perjury:

On February 1, 2008, I caused the annexed DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION UNDER FED. R. CIV. P. 12(B)(2) TO DISMISS THE FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION to be served by Federal Express upon:

> ALSTON & BIRD LLP
> 90 Park Avenue
> New York, NY 10016
> Attn: Robert E. Hanlon, Esq.

Dated: Purchase, New York
        February 1, 2008

                                        /s/
                                        Bryon L. Friedman, Esq.

- 26 -