**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **MERCK EPROVA AG** | |
| **Plaintiff,** | |
| **-v.-** | |
| **GNOSIS S.P.A.** | **Case No. 07 Civ. 5898 (RJS)** |
| **and** | |
| **GNOSIS BIORESEARCH S.A.** | |
| **Defendants** | |

**PLAINTIFF MERCK EPROVA AG'S OPPOSITION TO DEFENDANTS' MOTION
UNDER FED. R. CIV. P. 12(b)(2) TO DISMISS THE FIRST AMENDED
COMPLAINT FOR LACK OF PERSONAL JURISDICTION**

# TABLE OF CONTENTS

**Page**

I.     BACKGROUND ................................................................................................2

    A.     GNOSIS' WORLDWIDE BUSINESS ................................................ 2

    B.     GNOSIS' CONNECTIONS TO NEW YORK ..................................... 3

    C.     MERCK'S JURISDICTIONAL ALLEGATIONS .............................. 4

II.    ARGUMENT ...................................................................................................7

    A.     APPLICABLE LAW ........................................................................... 7

    B.     GENERAL JURISDICTION EXISTS OVER GNOSIS ...................... 9

    C.     THE COURT HAS LONG-ARM JURISDICTION OVER DEFENDANT PURSUANT TO CPLR § 302 .................................... 11

        1.     Personal Jurisdiction Exists Over Defendant under CPLR § 302(a)(1) For All Causes of Action in the Complaint ............................. 11

        2.     Personal Jurisdiction Exists Over Defendant under CPLR § 302(a)(2) for All Causes of Action in the Complaint ............................... 14

        3.     Personal Jurisdiction Exists Over Defendant under CPLR § 302(a)(3)(ii) for All Causes of Action in the Complaint .......................... 16

            i.     Gnosis or its Agent Committed a Tortious Act Outside the State and the Causes of Action of the Complaint Arise from the Tortious Acts ..................................... 16

            ii.    Gnosis' Misrepresentations Have Caused Injury Within the State ............................................................................ 16

            iii.   Gnosis Expected Or Should Have Reasonably Expected Consequences to Occur in New York State ................................................................................................ 18

            iv.    Gnosis Derives Substantial Revenue from International Commerce .............................................................. 20

    D.     PERSONAL JURISDICTION OVER GNOSIS COMPORTS WITH DUE PROCESS ....................................................................... 22

    E.     AT THE VERY LEAST, PLAINTIFF SHOULD BE PERMITTED JURISDICTIONAL DISCOVERY ..................................................... 24

III.   CONCLUSION ..............................................................................................25

# TABLE OF AUTHORITIES

## FEDERAL CASES

<u>Page</u>

*A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76 (2d Cir. 1993) .........................................6, 24

*Alfred Dunhill Ltd. v. Interstate Cigar Co.*, 499 F.2d 232 (2d Cir. 1974) ....................................15

*Alto Prods. Corp. v. Ratek Indus. Ltd.*, No. 95 Civ. 3314, 1996 WL 497027
    (S.D.N.Y. 1996) .....................................................................................................................13

*American Network, Inc. v. Access America/Connect Atlanta, Inc.*, 975 F. Supp.
    494 (S.D.N.Y. 1997) .............................................................................................................19

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194 (2d Cir. 1990), *cert.
    denied,* 498 U.S. 854 (1990) ...................................................................................................6

*Bangkok Crafts Corp. v. Capitolo di San Pietro in Vaticano*, 331 F. Supp. 2d
    247 (S.D.N.Y. 2004) .............................................................................................................15

*Bensusan Restaurant Corp. v. King*, 93 F. Supp. 295 (S.D.N.Y. 1996) .........................................6

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994) ..................23, 24

*Business Trends Analysts v. Freedonia Group, Inc.*, 650 F. Supp. 1452
    (S.D.N.Y. 1987) .....................................................................................................................15

*Cable News Network, L.P. v. GOSMS.COM, Inc.*, No. 00 Civ. 4812, 2000 WL
    1678039 (S.D.N.Y. Nov. 6, 2000) ........................................................................................18

*Capitol Records, Inc. v. Kuang Dyi Co. of RM*, No. 03 Civ. 0520, 2004 WL
    405961 (S.D.N.Y. Mar. 4, 2004) ..........................................................................................13

*Cartier v. Oakley*, N0. 06 Civ 5841, 2006 WL 3635321 (S.D.N.Y. Dec. 11,
    2006) .........................................................................................................12, 13, 22, 24

*City of New York v. A-1 Jewelry & Pawn, Inc.*, 501 F. Supp. 2d  369 (E.D.N.Y.
    2007) .................................................................................................................................20, 23

*Cosmetech Int'l, LLC v. Der Kwei Enterprise & Co., Ltd.*, 943 F. Supp. 311
    (S.D.N.Y. 1996) .....................................................................................................................18

*Gelfand v. Tanner Motor Tours, Ltd.*, 385 F.2d 116 (2d Cir. 1967)...............................................8

*Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897 (2d Cir. 1980) ........................................................17

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55 (2d Cir. 1985)...........................................7

*Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236 (2d Cir. 1999) ........................................................19

*Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039
    (2d Cir. 1991)....................................................................................................................6, 8

*Mario Valente Collezioni, Ltd. v. AAK Ltd.*, No. 02 CIV. 0099 (RPP), 2004 WL
    724690 (S.D.N.Y. Mar. 26, 2004) ......................................................................................15

*Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.*, 264 F.3d
    32 (2d Cir. 2001).........................................................................................................13, 16

*Mfg. Tech., Inc. v. Kroger Co.*, No. 06 Civ. 3010, 2006 WL 3714445 (S.D.N.Y.
    Dec. 13, 2006)....................................................................................................................21

*National Union Fire Ins. Co. of Pittsburgh v. BP Amoco P.L.C.*, 319 F. Supp.
    2d 352 (S.D.N.Y. 2004) .....................................................................................................13

*New York Marine Managers, Inc. v. M.V. "Topor-1"*, 716 F. Supp. 783
    (S.D.N.Y. 1989) ..................................................................................................................8

*Palmieri v. Estefan*, 793 F. Supp. 1182 (S.D.N.Y. 1992)...............................................................8

*Pariente v. Scott Meredith Literary Agency, Inc.*, No. 90-CV-0547, 1991 WL
    19857 (S.D.N.Y. 1991).......................................................................................................21

*Pension Committee of the Univ. of Montreal Pension Plan v. Bank of America
    Securities, LLC*, No. 05 Civ. 9016, 2006 WL 559811 (S.D.N.Y. Mar. 7,
    2006) ..................................................................................................................................17

*Potter's Photographic Applications Co. v. Ealing Corp.*, 292 F. Supp. 92
    (E.D.N.Y. 1968)..................................................................................................................11

*Ronar, Inc. v. Wallace*, 649 F. Supp. 310 (S.D.N.Y. 1986) ....................................................9, 21

*Rothschild v. Paramount Distillers, Inc.*, 923 F. Supp. 433 (S.D.N.Y. 1996)................................6

*RX USA Int'l, Inc. v. Superior Pharmaceutical Co.*, No. CV 04-5074, 2005 WL
    3333843 (E.D.N.Y. Dec. 7, 2005) .....................................................................................17

*Starmedia Network, Inc. v. Star Media Inc.*, No. 00 CIV 4647, 2001 WL 417118
    (S.D.N.Y. Apr. 23, 2001).....................................................................................................17

*Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424 (Fed. Cir. 1996) .........................23

*Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88 (2d Cir. 2000) .................................................7

## STATE CASES

*Banegas v. Five Counties Carting Recycling Corp.*, 276 A.D.2d 655 (N.Y. App. Div. 2000) ...................................................................................................13

*Fantis Foods, Inc. v. Standard Importing Co.*, 402 N.E.2d 122 (N.Y. 1980) ...............19

*Frummer v. Hilton Hotels Int'l Inc.*, 227 N.E.2d 851 (N.Y. 1967)....................................8

*Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40 (N.Y. 1988)..............................12, 13

*LaMarca v. Pak-Mor Mfg. Co.*, 735 N.E.2d 883 (N.Y. 2000)................................16, 21

*Laufer v. Ostrow*, 434 N.E.2d 692 (N.Y. 1982)...............................................................7

*Peterson v. Spartan Indus., Inc.*, 310 N.E.2d 513 (N.Y. 1974) ....................................25

*Sung Hwan Co., Ltd. v. Rite Aid Corp.*, 850 N.E.2d 647 (N.Y. 2006) .........................15

*Sybron Corp. v. Wetzel*, 385 N.E.2d 1055 (N.Y. 1978)................................................17

*Tonelli v. Chase Manhattan Bank, N. A.*, 49 A.D.2d 731 (N.Y. App. Div. 1975) .......21

## DOCKETED CASES

*Merck Eprova AG and Merck KGaA v. ProThera, Inc.*, No. 08 Civ 0035 (RMB) .......................4

## FEDERAL STATUTES

28 U.S.C. § 1746.............................................................................................................4

Fed. R. Civ. P. 4(k)(1)(a) .................................................................................................7

Fed. R. Civ. P. 8(a) ..........................................................................................................4

Fed. R. Civ. P. 12(b)(2).....................................................................................................1

## STATE STATUTES

CPLR § 301........................................................................................................................7

CPLR § 302.......................................................................................................8, 12, 23

CPLR §§302(a)(1)-(3) .....................................................................................................23

CPLR § 302(a)(1) ............................................................................................................12

CPLR § 302(a)(2) .................................................................................................15

CPLR § 302(a)(3)(ii).................................................................................16, 21, 22

CPLR § 3211(d)....................................................................................................25

Merck Eprova AG ("Merck Eprova" or "Plaintiff") hereby opposes Gnosis S.p.A.'s and Gnosis Bioresearch S.A.'s (collectively "Gnosis" or "Defendant") Motion under Fed. R. Civ. P. 12(b)(2) to Dismiss the First Amended Complaint for Lack of Personal Jurisdiction. Defendant admittedly operates a global business which provides pharmaceutical ingredients to customers throughout the United States, including New York. Defendant has systematically and continuously, through its distributor, intentionally sold product into the United States and has derived substantial income from international commerce. Despite these calculated efforts to avail itself of the benefits of U.S. commerce by distributing its products into the stream of commerce throughout the United States and New York, including the distribution of the falsely labeled product-at-issue in this lawsuit, Defendant is now trying to avoid any responsibility for the consequences of its actions.

Defendant argues that because Gnosis S.p.A. and Gnosis Bioresearch S.A. are Swiss and Italian companies, respectively, they should not be burdened by having to defend a lawsuit in the United States. Gnosis argues that this dispute should be adjudicated only in Europe. *See* Defendants' Memorandum of Law in Support of Motion under Fed. R. Civ. P. 12(b)(2) to Dismiss the First Amended Complaint for Lack of Personal Jurisdiction ("Motion to Dismiss") at p. 20. What Gnosis ignores is the fact that its product, falsely-labeled as pure L-5-MTHF, was widely distributed in the United States and caused injury to both consumers and to Merck Eprova and Merck Eprova's distributors in the United States. Gnosis, thus, is obligated to take responsibility and answer for its wrongdoing in the United States. That is the cost of running a global business and benefiting and profiting from the increased distribution of its product in the large U.S. market. Gnosis cannot hide behind its distributors and claim that it has no

responsibility as the manufacturer of a falsely-labeled nutritional product that consumers ingest. Such a claim is contrary to U.S. law.

Gnosis has purposefully availed itself of the benefits and protections of New York and the United States and can reasonably expect to be haled into court in the United States for its wrongdoing that causes injury in New York and the United States as a whole. Gnosis, through its distributors, actively conducts business in this jurisdiction, such that the product-at-issue is readily available and sold in New York. Accordingly, Gnosis' contact with this judicial district is substantial, continuous and systematic, and the exercise of jurisdiction by this Court is clearly warranted. Defendant's Motion to Dismiss should, therefore, be denied.

## I.    BACKGROUND

### A.    GNOSIS' WORLDWIDE BUSINESS

Gnosis S.p.A. and Gnosis Bioresearch S.A. are Italian and Swiss companies, respectively, and each provide their products on a worldwide basis. Gnosis' own website boasts the "world reach" of its services. *See* Declaration of Victoria E. Ford, Esq. ("Ford Dec."), Ex. A. In particular, the website provides that "Gnosis S.p.A. counts on a series of agents worldwide to ensure accurate customer-oriented service." *See id.* The website further proclaims that "Gnosis range of SAMe products, for example, ranks first on the American, Korean and Australian markets." *Id.* A European Comprehensive Report for Gnosis S.p.A., performed by Dun & Bradstreet, (the "Dun & Bradstreet Report") confirms these representations. *See* Ford Dec., Ex. B. The Report states that 80% of Gnosis' sales are to the United States and Australia. *See id.* at p. 5. Given its established global business, Gnosis clearly derives a substantial portion of its business from international commerce. Further, the label for Gnosis' product-at-issue in this

litigation is written in English.  *See* Ford Dec., Ex. C.  Thus, Gnosis' business is clearly directed outside of just Switzerland and Italy at English speaking countries.

### B.     GNOSIS' CONNECTIONS TO NEW YORK

Specifically, this lawsuit involves claims of false advertising, unfair competition, and deceptive trade practices arising from the sale of Gnosis' falsely-labeled product, diastereoisomeric 5-MTHF (the "Gnosis Compound"), in the State of New York through its North American distributor and agent AHD International, LLC ("AHD").  AHD's website explicitly states: "[o]ur low prices and quick delivery satisfy customers across North America.  We specialize in acting as *agents* for major foreign manufacturers by distributing nutritional ingredients in North America." (emphasis added).  *See* Ford Dec., Ex. D at p. 3.  Gnosis knowingly engaged AHD to distribute its product with the ultimate purpose and goal of obtaining widespread distribution throughout AHD's well-established North American territory.  Thus, Gnosis knew or should have known that its product was to be distributed by AHD throughout North America, including New York, the third most populous State in the United States.  *See* Ford Dec., Ex. E.

Further, Gnosis has admitted to at least one sale of the Gnosis Compound by AHD to a customer in New York.  *See* Motion to Dismiss at p. 7.  Defendant claims that the transaction was the only sale into New York and was only for one kilogram of product; however, AHD's website states that "[w]e are strictly a bulk supplier to manufacturers – we do not sell to re-sellers or individuals.  Our minimum order size is approximately *25 kilos*."  *See* Ford Dec., Ex. D at p. 1 (emphasis added).  Nonetheless, even a single sale of the product-at-issue in New York is sufficient to subject Gnosis to jurisdiction in New York.

Additionally, AHD's customers purchased the bulk Gnosis Compound from AHD and used it in the formulation of pills that are also widely distributed in New York. For example, ProThera Inc. ("ProThera")[1] sells its own products containing the falsely-labeled Gnosis Compound in New York.[2] *See* Declaration of Markus Richter ("Richter Dec."), ¶¶ 6-14; *see also* Ford Dec., Ex. F. In sum, the falsely-labeled Gnosis Compound is sold and distributed in the State of New York, causing injury to both consumers and to Merck Eprova in the State of New York.[3]

### C.    MERCK'S JURISDICTIONAL ALLEGATIONS

The Federal Rules of Civil Procedure only require notice pleading. In particular, "[a] pleading which sets forth a claim for relief, . . . shall contain (1) a short and plain statement of the ground upon which the court's jurisdiction depends . . . ." Fed. R. Civ. P. 8(a). Merck Eprova has met this standard. Merck Eprova has alleged in its Amended Complaint that Defendant has transacted business within New York, contracted to supply goods or services in New York, and engaged in tortious acts within New York. *See* Plaintiff's First Amended Complaint, ¶ 6. Merck Eprova has also set forth that Gnosis' mislabeling of products outside of New York has caused injury within New York. *See e.g., id.* at ¶ 93. Further, in at least the following additional paragraphs of the Complaint, Merck Eprova has set forth the grounds upon which this Court's jurisdiction depends:

---

[1] Merck Eprova and Merck KGaA have also sued ProThera for false advertising and unfair competition, among other things, in the Southern District of New York. This case is pending as *Merck Eprova AG and Merck KGaA v. ProThera, Inc.*, No. 08 Civ. 0035 (RMB).

[2] Analytical testing of the Gnosis Compound and the product sold by ProThera confirms that ProThera is indeed selling the Gnosis Compound in pill form. *See* Declaration of Markus Richter ("Richter Dec."), ¶¶ 6-14.

[3] Gnosis apparently has a second U.S. distributor, Weller Health in California; however, it is not clear from Defendant's motion papers whether Weller Health distributed the Gnosis Compound or other dietary supplements manufactured by Gnosis. *See* Declaration of Renzo Berna attached to Motion to Dismiss ("Berna Dec."), ¶ 6. We note that Mr. Berna's Declaration is not in compliance with 28 U.S.C. § 1746 and should not be considered by this Court.

- "Upon information and belief, Defendant is a manufacturer, distributor and supplier of nutritional dietary ingredients, among other things." *Id.* at ¶ 32.

- "Through its agents, Gnosis sells and distributed its products worldwide, including sale and distribution into the United States and into New York State, in particular." *Id.* at ¶ 33.

- "Gnosis has provided the Gnosis Compound to other distributors, including AHD International LLC ("AHD") . . . ." *Id.* at ¶ 40.

- "Gnosis has performed the aforementioned acts globally, as well as within the United States and the State of New York." *Id.* at ¶ 51.

- "Any of the above results could expose the general public, including the United States and New York consumers, to dangerous medical implications." *Id.* at ¶ 57.

- "The distribution and sale of the Gnosis Compound has and will continue to cause Merck to lose sales of its genuine L-5-MTHF to both existing Merck customers and to potential customers." *Id*. at ¶ 58.

- "Gnosis has been and is engaging in willful deceptive acts or practices in New York against Merck and the public . . . through the following consumer-oriented acts: making false and misleading statements in press releases; making false and misleading statements on the internet; making false and misleading commercial advertising or promotions; mislabeling the Gnosis Compound as the pure L-5-MTHF diastereoisomer; and providing false and misleading certificates of analysis and product specification, all of which, . . . materially misrepresent the nature, characteristics and qualities of the . . . Gnosis Compound. The aforesaid acts . . . are in violation of N.Y. Gen. Bus. Law § 349(h)." *Id.* at ¶ 92.

- "The aforesaid misleading acts of Gnosis have additionally caused, and are likely to continue to cause injury to the public, including consumers in New York, and injury to Merck's business reputation." *Id.* at ¶¶ 93, 99.

Through these allegations, Merck respectfully submits that it has properly alleged jurisdiction over Defendant in New York.

When a Motion to Dismiss for lack of jurisdiction is filed prior to an evidentiary hearing or discovery, a plaintiff may defeat a motion to dismiss the complaint for lack of personal jurisdiction by merely making a *prima facie* showing of jurisdiction. *See A.I. Trade Finance, Inc. v. Petra Bank,* 989 F.2d 76, 79 (2d Cir. 1993) (finding *prima facie* showing of jurisdiction in

New York where plaintiff alleged that defendant's guaranty payable in New York was contract for services in New York); *Rothschild v. Paramount Distillers, Inc.,* 923 F. Supp. 433, 435 (S.D.N.Y. 1996) (finding *prima facie* showing of personal jurisdiction and denying motion to dismiss where plaintiff presented evidence or allegations that defendants sent infringing product into New York and provided infringing labels to New York facility, among other things).

Where discovery has not commenced, plaintiff is entitled to rely on mere factual allegations to make its *prima facie* showing of jurisdiction. *See Ball v. Metallurgie Hoboken-Overpelt, S.A.,* 902 F.2d 194, 197 (2d Cir. 1990), *cert. denied,* 498 U.S. 854 (1990) (defining a *prima facie* showing as legally sufficient allegations of jurisdiction). The plaintiff is entitled to have its complaint and affidavits interpreted, and any doubts resolved, in the light most favorable to it. *See Landoil Resources Corp. v. Alexander & Alexander Servs., Inc.,* 918 F.2d 1039, 1043 (2d Cir. 1991). This burden is satisfied even when the moving party makes contrary allegations that place in dispute the factual basis of plaintiff's *prima facie* case. *See Bensusan Restaurant Corp. v. King*, 93 F. Supp. 295, 298 (S.D.N.Y. 1996). Thus, plaintiff's burden to prove jurisdiction is low.

Here, Merck Eprova can readily make a *prima facie* showing of jurisdiction. Indeed, Plaintiff has appropriately alleged general jurisdiction and specific jurisdiction in the Complaint. In particular, Plaintiff has alleged that this "Court has personal jurisdiction over the Defendant because the Defendant transacts business within the State of New York, [and] contracts to supply goods or services in the State of New York . . . ." *See* Amended Complaint, ¶ 6. Further, throughout the Complaint, Merck Eprova has alleged that Gnosis has committed tortious act(s) outside the state which have caused injury to Merck Eprova and consumers within New York. Finally, submitted herewith is additional evidence and factual allegations that further evidence

the basis for jurisdiction over Gnosis in New York.  *See* Ford Dec. submitted herewith and Exs.

A-F attached thereto; Richter Dec., ¶¶ 6-14.

## II.    <u>ARGUMENT</u>

### A.    APPLICABLE LAW

A court may exercise jurisdiction over any defendant "who could be subjected to the

jurisdiction of a court of general jurisdiction in the state in which the district court is located"

provided that such an exercise of jurisdiction comports with the Fifth Amendment's Due Process

Clause.  *See* Fed. R. Civ. P.  4(k)(1)(a); *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 94 (2d

Cir. 2000).  Under New York law, a foreign corporation is subject to general personal

jurisdiction in New York if it is "doing business" in the state.  *See* New York Civil Practice Law

and Rules ("CPLR") § 301; *see also Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58

(2d Cir. 1985).  By "doing business" in New York, the corporation is subject to "general"

jurisdiction such that the defendant is subject to personal jurisdiction for any and all claims

regardless of whether they have any relationship to the defendant's New York activity.  *See*

*Laufer v. Ostrow,* 434 N.E.2d 692, 696 (N.Y. 1982).

"[A] corporation is 'doing business' and is therefore 'present' in New York  . . . if it does

business in New York  . . . with a fair measure of permanence and continuity.'"  *Hoffritz,* 763

F.2d at 58 (quoting *Tauza v. Susquehanna Coal Co.*, 115 N.E. 915, 917 (N.Y. 1917)).  In order to

establish that this standard is met, a plaintiff must show that a defendant engaged in "continuous,

permanent, and substantial activity in New York."  *Landoil*, 918 F.2d at 1043 (citation omitted).

The continuous presence and substantial activities that satisfy the requirement of doing

business do not necessarily need to be conducted by the foreign corporation itself.  In certain

circumstances, jurisdiction has been found where an agent of the foreign corporation conducts

the activities performed in New York.  Under well-established New York law, a court may assert

jurisdiction over a foreign corporation when it affiliates itself with a New York representative

entity and that New York representative renders services on behalf of the foreign corporation that

go beyond mere solicitation and are sufficiently important to the foreign entity that the

corporation itself would perform equivalent services if no agent were available.  *See, e.g.,*

*Frummer v. Hilton Hotels Int'l Inc.*, 227 N.E.2d 851, 854 (N.Y. 1967) (finding jurisdiction over

foreign hotel chain based on the activities of affiliated reservations service); *Gelfand v. Tanner*

*Motor Tours, Ltd.*, 385 F.2d 116, 120-21 (2d Cir. 1967) (finding jurisdiction over tour operator

based on the activities of affiliated travel agent).  To come within the rule, a plaintiff need

demonstrate neither a formal agency agreement, nor that the defendant exercised direct control

over its putative agent.  *See, e.g., Palmieri v. Estefan*, 793 F. Supp. 1182, 1194 (S.D.N.Y. 1992);

*New York Marine Managers, Inc. v. M.V. "Topor-1"*, 716 F. Supp. 783, 785 (S.D.N.Y. 1989).

Here, as discussed in detail below, Gnosis should be subject to the New York courts

general jurisdiction due to the continuous, permanent, and substantial activity that its

distributors' conduct in New York.

Additionally, specific jurisdiction can also be obtained over a defendant under the New

York long-arm statute, CPLR § 302.  At least three provisions of the long-arm statute are

applicable here: Section 302(a)(1), 302(a)(2) and 302(a)(3)(ii).[4]

Section 302(a)(1) provides that:

---

[4] Gnosis claims in its Motion to Dismiss that Plaintiff did not allege long-arm jurisdiction under Section 302(a)(3). *See* Motion to Dismiss, p. 5.  However, a complaint is subject to notice pleading such that only a short and plain statement as to the grounds of jurisdiction is required.  *See* Section I(C), *supra.*  Gnosis relies on *Ronar, Inc. v. Wallace,* 649 F. Supp. 310 (S.D.N.Y. 1986) to support its representation that a plaintiff must plead facts in a complaint demonstrating a basis of long-arm jurisdiction with sufficient specificity.  *See* Motion to Dismiss, p. 2. However, in *Ronar* the discussion was regarding specific facts necessary for plaintiff to defeat a motion to dismiss, not with regard to the requirements of a complaint.  *See Ronar,* 649 F. Supp. at 315  In any event, Plaintiff alleged that Gnosis sold product in New York through its agents, committed torts outside of New York, and suffered injury in the State of New York.  *See* Amended Complaint, ¶¶ 33-35, 40, 51, 93, and 99.

A court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent: transacts any business within the state or contracts anywhere to supply goods or services in the state.

Section 302(a)(2) provides that:

A court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent: commits a tortious act within the state . . . .

Section 302(a)(3)(ii) states that:

A court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent: commits a tortious act without the state causing injury to person or property within the state, … if he … expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

Here, as discussed in detail below, Gnosis, through its distributors, transacted business in New York and committed torts in New York with respect to the product-at-issue in this lawsuit. Gnosis admits that its distributor transacted at least one sale of the product-at-issue in New York State. *See* Berna Dec. at ¶ 10, Motion to Dismiss at p. 7. Further, Gnosis, through its agents, committed tortious acts throughout the United States, which caused injury to persons within New York, due to sales of the product to consumers in New York. Gnosis was aware of or should have been aware of the country-wide distribution of its product throughout the United States and thus should reasonably have expected its acts or the acts of its distributor(s) to have consequences in New York. Finally, Gnosis derives substantial revenue from international commerce. *See* Ford Dec., Ex. B at p. 5. Thus, even if this Court were to find that the contacts of Gnosis through its distributors would not give this Court *general* jurisdiction over Gnosis, certainly, under the New York long-arm statute, jurisdiction is proper over Gnosis.

**B.      GENERAL JURISDICTION EXISTS OVER GNOSIS.**

Gnosis is clearly "doing business" in New York through its distributor AHD. While Gnosis may be located in Europe, Gnosis specifically advertises on its website that it provides its products on a worldwide basis. *See* Ford Dec., Ex. A. In fact, the Dun & Bradstreet Report

states that 80% of Gnosis' sales are to the United States and Australia. *See* Ford Dec., Ex. B at

p. 5. Gnosis also admittedly "counts on a series of agents worldwide" to distribute its products.

*See* Ford Dec., Ex. A.

Specifically, Gnosis utilizes the services of its North American distributor and agent

AHD. AHD is a well-known, specialized distributor of nutritional ingredients in North America

for major foreign manufacturers. *See* Ford Dec., Ex. D. Gnosis knowingly and purposefully

engaged AHD to distribute its product through its established distribution network across all of

North America, including New York, which is the state with the third highest population in the

United States. *See* Ford Dec., Ex. E. Gnosis has admitted to at least one sale of the product-at-

issue in this litigation by AHD into New York. *See* Berna Dec. at ¶ 10; Motion to Dismiss at

p. 7. Gnosis seems to be arguing that the supposedly small volume of this sale has some bearing

on general jurisdiction. *See* Motion to Dismiss at p. 7. However, this sale only relates to the

Gnosis Compound. Gnosis makes no representations or arguments regarding Gnosis' or AHD's

total sales of products into New York. It is not the volume of sales of the specific product-at-

issue in this litigation that is relevant to the analysis of general jurisdiction. Instead, it is the

extent to which Gnosis and AHD are "doing business" with respect to *any* products in New

York. *See Potter's Photographic Applications Co. v. Ealing Corp.*, 292 F. Supp. 92, 100

(E.D.N.Y. 1968) (holding that must look to the "cumulative significance of *all activities*" of

foreign corporation within state in order to determine whether doing business within state for

jurisdictional purposes) (emphasis added). Notably, Gnosis does not offer any information with

respect to AHD's total volume of sales into New York, nor the amount of revenue that Gnosis

derives from New York sales outside the product-at-issue.

Finally, Gnosis is a bulk manufacturer of methyltetrahydrofolate ("5-MTHF" or the "Gnosis Compound"). Gnosis sold its product in bulk form to AHD. AHD in turn sold the bulk form of the Gnosis Compound to a second level manufacturer that converted the bulk ingredient into pill form. Gnosis is well aware that the ultimate consumer of its Gnosis Compound would ingest the product in pill form. Thus, Gnosis knew or should have known that AHD would distribute the bulk form of the Gnosis Compound to pill manufacturers located throughout North America, including in New York, and that the pill form of the Gnosis Compound would ultimately be consumed by New York customers through AHD's established network of distribution. Specifically, AHD's customer, ProThera, must have either purchased the bulk Gnosis Compound from AHD or obtained it directly from Gnosis, and used it in pills that were distributed and widely available for purchase in New York. *See* Richter Dec., ¶¶ 6-14; *see also* Ford Dec., Ex. F.

In sum, Gnosis, through its distributors is doing business and present in the State of New York and thus, this Court has general jurisdiction over Gnosis. However, even if this Court were to find that general jurisdiction over Gnosis has not been established, Merck Eprova respectfully submits that specific jurisdiction over Gnosis, under the New York long arm-statute would be warranted under the facts alleged.

### C.    THE COURT HAS LONG-ARM JURISDICTION OVER DEFENDANT PURSUANT TO CPLR § 302.

#### 1.    Personal Jurisdiction Exists Over Defendant under CPLR § 302(a)(1) For All Causes of Action in the Complaint.

According to CPLR § 302(a)(1), a New York court "may exercise personal jurisdiction over any non-domiciliary . . . who . . . through an agent  . . . transacts *any* business within the state or contracts anywhere to supply goods or services in the state." *See* CPLR § 302(a)(1)

- 11 -

(emphasis added).[5]  Section 302 is a "'single act statute' and proof of one transaction in New York is sufficient to invoke jurisdiction . . . so long as defendant's activities  . . . were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 43 (N.Y. 1988) (internal citations omitted); *Cartier v. Oakley*, N0. 06 Civ. 5841 (LAP), 2006 WL 3635321, at *2 (S.D.N.Y. Dec. 11, 2006) (offering for sale of even one copy of infringing product in New York is sufficient to vest court with jurisdiction).  Here, Gnosis' distributor, AHD, admittedly sold at least 1 kilogram of the Gnosis Compound in New York.  *See* Berna Dec. at ¶ 10; Motion to Dismiss at p. 7.  As stated in Gnosis' motion papers "AHD resold one shipment of Gnosis product – consisting of one kilogram, for which AHD charged $5,000 to a New York buyer."  *See* Berna Dec. at ¶ 10.  Even just this one transaction involving the Gnosis Compound at issue in this litigation is sufficient to confer jurisdiction over Gnosis in New York.

AHD is also undoubtedly an agent of Gnosis.  AHD is Gnosis' North American distributor.  *See* Motion to Dismiss at p. 2 ("All of Gnosis' sales were made to its U.S.-based distributors located in Georgia and California").  A distributor is clearly an agent.  In fact, on AHD's own website it states that: "[o]ur low prices and quick delivery satisfy customers across North America.  We specialize in acting as *agents* for major foreign manufacturers by distributing nutritional ingredients in North America."  *See* Ford Dec., Ex. D at p. 3 (emphasis added).

Further, under New York law, a plaintiff "need not establish a formal agency relationship."  *See Kreutter v. McFadden Oil Corp.*, 522 N.E.2d at 44; *Banegas v. Five Counties Carting Recycling Corp.*, 276 A.D.2d 655 (N.Y. App. Div. 2000) (holding exclusive distributor

---

[5] Since discovery has not yet commenced in this action, Plaintiff is currently unaware of the specifics of the contractual relationship between Gnosis and AHD regarding distribution and territory of the distribution.  However, it is clear that AHD transacted business in New York on behalf of Gnosis and with Gnosis' knowledge and consent.

is an agent).  New York courts have customarily interpreted the term "agent" broadly for jurisdictional purposes.  *See Cartier*, 2006 WL 3635321, at *3; *see also Alto Prods. Corp. v. Ratek Indus. Ltd.,* No. 95 Civ. 3314, 1996 WL 497027, at *3 (S.D.N.Y. 1996) ("[I]n determining whether … an agency relationship exists under § 302, courts have focused on the realities of the relationship rather than the formalities of agency law.").  For personal jurisdiction purposes, an agent is an entity "that acts for the benefit of and with the knowledge and consent of the non-resident principal, and over which that principal some control."  *See National Union Fire Ins. Co. of Pittsburgh v. BP Amoco P.L.C.*, 319 F. Supp. 2d 352, 359 (S.D.N.Y. 2004) (internal citations omitted); *see also Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.*, 264 F.3d 32, 36 (2d Cir. 2001) (finding agency relationship between distributor and Italian corporation); *Capitol Records, Inc. v. Kuang Dyi Co. of RM*, No. 03 Civ. 0520, 2004 WL 405961, at *2 (S.D.N.Y. Mar. 4, 2004).

Under the applicable standard, there is no doubt that AHD is an agent of Gnosis.  First, AHD engaged in purposeful activities in New York: AHD admittedly sold the Gnosis Compound at issue in this litigation in New York.  *See* Motion to Dismiss at p. 7.  Second, Gnosis had knowledge of AHD's distribution network throughout North America and knew or should have known that this includes distribution in New York, the third most populous state in the United States.  *See* Ford Dec., Ex. E.  This is the way AHD represents itself as evidenced by AHD's website.  *See* Ford Dec., Ex. D.

Furthermore, Gnosis' consent to such wide distribution is implied since Gnosis knew of AHD's distribution territory and there is no evidence submitted to show that Gnosis specifically requested that AHD not distribute in New York.  Finally, based on Gnosis' boasted worldwide reach, Gnosis' clear intention was to establish as wide a distribution network as possible.  *See*

Ford Dec., Ex. A.  Notably, Gnosis' website does not proclaim that it distributes its product in the United States only in the two states where its distributors are domiciled, namely Georgia and California; instead, Gnosis assures consumers that it has global distribution with substantial sales in the American market.  *See id*.

Finally, it is also inherent in the distributor relationship that Gnosis exercise some control over AHD.  Standard distribution agreements, especially those related to ingestible products, would necessarily include some quality control provisions with respect to safety standards and trademark quality control issues.  Gnosis has not introduced evidence that any such control was lacking, and as such, based in the inherent nature of a manufacturer/distributor relationship, it must be concluded that control existed.  This is confirmed by the statement on Gnosis' own website that Gnosis has a "series of agents world wide to *ensure* accurate consumer-oriented service."  *See id*. (emphasis added).  Thus, Gnosis must exercise some control over AHD's sales of the Gnosis Compound.

Therefore, the sale of the Gnosis Compound in this action by Gnosis' agent/distributor AHD in New York is sufficient to confer long-arm jurisdiction over Gnosis.

### 2.    Personal Jurisdiction Exists Over Defendant under CPLR § 302(a)(2) for All Causes of Action in the Complaint.

Gnosis is also subject to personal jurisdiction under CPLR § 302(a)(2), which provides that "[a] court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . commits a tortious act within the state . . . ."  As stated above, it is admitted that AHD sold the falsely-labeled Gnosis Compound in the State of New York.  *See* Berna Dec. at ¶ 10; Motion to Dismiss at p. 7.  For purposes of long-arm jurisdiction, a tort is broadly defined to encompass one that causes economic injury.  *See Sung Hwan Co., Ltd. v. Rite Aid Corp.* 850 N.E.2d 647, 652 (N.Y. 2006).  Specifically, false advertising and unfair competition

are recognized as torts. *See e.g, Alfred Dunhill Ltd. v. Interstate Cigar Co.*, 499 F.2d 232, 236

(2d Cir. 1974) (referring to Lanham Act as providing federal remedy for tort of false advertising)

(citations omitted); *Mario Valente Collezioni, Ltd. v. AAK Ltd.*, No. 02 CIV. 0099 (RPP), 2004

WL 724690, at *6 (S.D.N.Y. Mar. 26, 2004) (defining unfair competition under Lanham Act as

tort); *Bangkok Crafts Corp. v. Capitolo di San Pietro in Vaticano,* 331 F. Supp. 2d 247

(S.D.N.Y. 2004) (identifying New York unfair competition as tort); *Business Trends Analysts v.

Freedonia Group, Inc.,* 650 F. Supp. 1452, 1455-56 (S.D.N.Y. 1987) (finding violation of §

43(a) of Lanham Act a commercial tort). Therefore, Defendant's intentional mislabeling and

misrepresentation of the Gnosis Compound, as set forth in the Complaint, are tortious acts and

thus, the sale of this mislabeled product in New York State is a tortious act within the state.

Further, as discussed above, AHD is clearly an agent of Gnosis. Even Gnosis' Declarant,

Mr. Berna, states that AHD is a distributor of Gnosis. *See* Berna Dec. at ¶ 6. Not only does

Gnosis have a distributor that sells in New York, but also, AHD's customers sell product

containing the Gnosis Compound in New York.[6] As a bulk supplier, AHD has many customers

who purchase compounds and convert them into pills. One such distributor is ProThera. New

York consumers can readily purchase the Gnosis Compound in New York through the ProThera

website and have the Gnosis Compound delivered to New York. *See* Ford Dec., Ex. F. Such a

chain of distribution has been held to constitute an agency relationship. *See Mario Valente,* 264

F.3d at 36 (jurisdiction found over agent of agent). Consequently, through its distribution chain,

Gnosis has committed tortious acts in New York by distributing its falsely-labeled product.

---

[6] Given that Gnosis only sells bulk product, Gnosis is clearly aware that there will be distributors down the chain who will manufacture and sell the Gnosis Compound in pill form to consumers throughout the U.S., including New York.

**3.    Personal Jurisdiction Exists Over Defendant under CPLR § 302(a)(3)(ii) for All Causes of Action in the Complaint.**

Finally, Gnosis is also subject to personal jurisdiction pursuant to CPLR § 302(a)(3)(ii).

Pursuant to this section, jurisdiction is appropriate if:

(1)  The defendant committed a tortious act outside the State;
(2)  The cause of action arises from that act;
(3)  The act caused injury to a person or property within the State;
(4)  The defendant expected or should have reasonably expected the act to have consequences in the State; and
(5)  The defendant derived substantial revenue from interstate or international commerce.

*See LaMarca v. Pak-Mor Mfg. Co.*, 735 N.E.2d 883, 886 (N.Y. 2000).

Jurisdiction under Section 302(a)(3)(ii) is appropriate as to Gnosis because all five elements are satisfied.

**i.    Gnosis or its Agent Committed a Tortious Act Outside the State and the Causes of Action of the Complaint Arise from the Tortious Acts.**

As discussed above, the claims asserted in the Complaint are torts.  *See* Section II(C)(2), *supra*; Amended Complaint at ¶¶ 61, 67, 76, 85, 92 and 98.

Plaintiff claims that these tortious acts were committed within New York State. However, even if the Court were to find that they were not committed within New York State, the injury to Plaintiff clearly arose from those tortious acts.

**ii.    Gnosis' Misrepresentations Have Caused Injury Within the State.**

Defendant's violations of federal and New York law have caused injury to Merck Eprova and its licensees, which distribute L-5-MTHF, in New York.   The injury Merck Eprova has sustained due to Defendant's conduct consists of: lost profits in New York, damage to its New York business, damage to its reputation in New York, damage to established goodwill, and other damages which still have yet to be discovered.  *See* Amended Complaint at ¶¶ 58, 59, 64, 65, 73, 74, 82, 83, 89, 90, 94, 95, 100 and 101.

- 16 -

The Court of Appeals of New York has interpreted injury "within state" to include harm to a business in the New York market through lost sales or lost customers. *See Sybron Corp. v. Wetzel*, 385 N.E.2d 1055, 1058-59 (N.Y. 1978) (finding in suit for theft of trade secrets that threatened loss of plaintiff's customers and sales in New York constituted injury "within state"); *see also Starmedia Network, Inc. v. Star Media Inc.*, No. 00 CIV 4647, 2001 WL 417118, at *2 (S.D.N.Y. Apr. 23, 2001) (finding plaintiff's allegations of harm resulting from potential for confusion and deception satisfied requirement of injury "within state").

In particular, with respect to cases involving misrepresentations, courts have held that injury occurs where it is "immediately felt." *See Hargrave v. Oki Nursery, Inc.,* 636 F.2d 897, 900 (2d Cir. 1980); *see also Pension Committee of the Univ. of Montreal Pension Plan v. Bank of America Securities, LLC*, No. 05 Civ. 9016, 2006 WL 559811, at *7 (S.D.N.Y. Mar. 7, 2006). It has been held that where a plaintiff has alleged that New York is the location where it allegedly "lost sales, lost opportunity and diminution of overall good will and reputation…" due to defendant's misrepresentations, such allegations demonstrate that the situs of injury is New York. *See RX USA Int'l, Inc. v. Superior Pharmaceutical Co.*, No. CV 04-5074, 2005 WL 3333843, at *3 (E.D.N.Y Dec. 7, 2005). Furthermore, a plaintiff's allegations that New York residents have been confused and deceived by defendants' infringing actions are sufficient to allege harm under Section 302(a)(3)(ii). *See Cable News Network, L.P. v. GOSMS.COM, Inc.*, No. 00 Civ. 4812, 2000 WL 1678039, at *4 (S.D.N.Y. Nov. 6, 2000). Similarly, with respect to cases involving unfair competition, where plaintiff has alleged it lost New York-based customers as a result of defendants' practices, such allegations were held sufficient to support jurisdiction under Section 302(a)(3). *See Cosmetech Int'l, LLC v. Der Kwei Enterprise & Co., Ltd.,* 943 F. Supp. 311, 319 (S.D.N.Y. 1996).

Based upon Gnosis' admitted sale of the product-at-issue in New York, Merck Eprova has alleged that it has lost and will continue to lose sales and customers due to Gnosis' misrepresentations which have caused consumers to doubt the overall efficacy of all L-5-MTHF products. *See e.g.,* Amended Complaint at ¶ 58 ("The distribution and sale of the Gnosis Compound has and will continue to cause Merck to lose sales of its genuine L-5-MTHF to both existing Merck customers and to potential customers."). Indeed, many times over, Merck Eprova has alleged its loss of sales and customers and damage to goodwill in New York. *See* Amended Complaint at ¶¶ 58, 59, 64, 65, 73, 74, 82, 83, 89, 90, 94, 95, 100 and 101. Accordingly, Merck Eprova has sufficiently alleged injury within New York.

### iii.    Gnosis Expected Or Should Have Reasonably Expected Consequences to Occur in New York State.

Gnosis was well aware, and purposefully availed itself, of AHD's expansive distribution network. The breadth of AHD's distribution channels was readily apparent from its company literature as set forth on its website, and Gnosis knew or should have reasonably expected that its products, distributed by its agent, AHD, would end up all across North America. *See* Ford Dec., Exs. A and D. As courts have stated, the foreseeability requirement of Section 302(a)(3)(ii) "relates to forum consequences generally and not to the specific event which produced injury within the state." *Fantis Foods, Inc. v. Standard Importing Co.*, 402 N.E.2d 122, 126 n.4 (N.Y. 1980). When determining whether this requirement is met, "New York courts have focused on whether there were concrete facts known to the nondomiciliary that should have alerted it that its product would enter the New York market." *American Network, Inc. v. Access America/Connect Atlanta, Inc.*, 975 F. Supp. 494, 497 (S.D.N.Y. 1997). Broad statements related to country-wide distribution have been found to constitute a reasonable expectation of consequences in a particular state. For example, in *American Network*, this Court held that there were "tangible

manifestations" that defendant was attempting to reach a New York market where it stated twice on its home page that it could help customers "across the U.S." *See id.* at 498. Further, in *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236 (2d Cir. 1999), the Court of Appeals for the Second Circuit held that an agreement between a Japanese producer and American distributor to distribute the Japanese defendant's products worldwide, except for seventeen specified Asian countries, combined with its "general knowledge" that the American distributor would sell the product in the United States, was sufficient to find that the Japanese producer attempted to indirectly serve the New York market. *See id.* at 242.

Gnosis undoubtedly had "general knowledge" that AHD would sell the product throughout the United States. Given that New York has the third greatest population in the United States, it strains credibility to claim that Gnosis would believe that the Gnosis Compound would *not* make its way to New York. *See* Ford Dec., Ex. E. AHD's customers, including ProThera, distribute and sell the Gnosis Compound in pill form in New York. Given Gnosis' claims that it services the American market, Gnosis surely has knowledge of which distributors sell its products and where. Accordingly, Gnosis cannot maintain that it would not expect to be sued in New York.

Further, even Gnosis' own website characterizes Gnosis' business as one of "world reach." *See* Ford Dec., Ex. A. It further provides that "Gnosis S.p.A. counts on a series of agents worldwide to ensure accurate consumer-oriented service." *See id.* Additionally, it explicitly lists the "U.S.A." as one of its markets and boasts that "Gnosis range of SAMe products, for example, ranks first on the *American*, Korean, Australian markets." *Id.* (emphasis added). Gnosis clearly holds itself out as serving the entire United States, and clearly does not exclude New York State. Defendant is directing its product to the U.S. market for the purpose of

- 19 -

having U.S. customers, including New York citizens, purchase its products.  Accordingly, Gnosis expected explicitly, or should reasonably have expected, its false representations as to the Gnosis Compound to have consequences in New York.

### iv.     Gnosis Derives Substantial Revenue from International Commerce.

Gnosis clearly derives substantial revenue from international commerce.  As discussed above, Gnosis' own website characterizes Gnosis' business as one of "world reach."  *See* Ford Dec., Ex. A.  Additionally, it explicitly lists the "U.S.A." as one of its markets and boasts that "Gnosis range of SAMe products, for example, ranks first on the *American*, Korean, Australian markets."  *See id.* (emphasis added).

While there is no specific dollar threshold at which revenue becomes "substantial" for purposes of CPLR 302(a)(3)(ii), courts look either to the percentage of a party's overall revenue derived from interstate or international commerce, or to the absolute amount of revenue generated by a party's activities in interstate or international commerce, with each case to be decided on its own facts.  *See City of New York v. A-1 Jewelry & Pawn, Inc*., 501 F. Supp. 2d 369, 417 (E.D.N.Y. 2007); *Pariente v. Scott Meredith Literary Agency, Inc.,* No. 90-CV-0547, 1991 WL 19857, at *4 (S.D.N.Y. 1991); *Ronar, Inc. v. Wallace,* 649 F. Supp. 310, 316-17 (S.D.N.Y. 1986).

The requirement that a defendant derive substantial revenue from interstate or international commerce is "designed to narrow 'the long-arm reach to preclude the exercise of jurisdiction over nondomiciliaries who might cause direct, foreseeable injury within the State but whose business operations are of a local character."  *See LaMarca,* 735 N.E.2d at 886-87 (citations omitted).  Gnosis' business is anything but local.  Gnosis' business is clearly global. Gnosis serves markets in Europe, the United States, Canada, Korea, Japan and Australia.  *See*

Ford Dec., Ex. A.  Furthermore, given Gnosis' representation that certain products "rank first on the American, Korean, Australian market," Gnosis must derive substantial revenue from such international commerce.[7]  In fact, the Dun & Bradstreet Report provides that 80% of Gnosis' sales are to the U.S.A. and Australia—making it indisputable that Gnosis derives substantial revenue from international commerce.  *See* Ford Dec., Ex. B at p. 5.

Importantly, under Section 302(a)(3), "[d]ismissal is inappropriate even where there is no proof that a defendant 'derives substantial revenue from interstate or international commerce,' where that knowledge is peculiarly under the control of the defendant, and may come to light in the course of subsequent discovery."  *Mfg. Tech., Inc. v. Kroger Co.,* No. 06 Civ. 3010, 2006 WL 3714445, at *3-4 (S.D.N.Y. Dec. 13, 2006) (quoting *Tonelli v. Chase Manhattan Bank, N. A.,* 49 A.D.2d 731, 731 (N.Y. App. Div. 1975)).  Here, Merck Eprova has set forth its bases supporting Gnosis' substantial revenue; however, any additional specific proof is under the control of Defendant, and at this stage in the litigation Merck Eprova has not had access to it.

Finally, although Gnosis claims in its Motion to Dismiss that Plaintiff did not allege long-arm jurisdiction under Section 302(a)(3),[8] as previously discussed, the Complaint alleges facts sufficient for long-arm jurisdiction under this section of the CPLR.  *See* discussion at Section I(C), *supra*; Amended Complaint ¶¶ 33-35, 40, 51, 93, and 99.

Accordingly, since Plaintiff alleged that Gnosis, through its agents, committed tortious acts outside New York, that caused injury to a person or property within New York and Gnosis expected or should have reasonably expected such act to have consequences in New York and

---

[7] Defendants' position that the sale of one kilogram of the Gnosis Compound for $5,000 is not substantial revenue is not applicable to a jurisdictional analysis under Section 302(a)(3)(ii).  The proper analysis is to consider whether Plaintiff derives substantial revenue from international or interstate commerce *as a whole*.

[8] Plaintiff did not cite to any specific sections of the CPLR as a basis for jurisdiction but rather alleged facts sufficient to demonstrate jurisdiction under all of the sections discussed above.

Gnosis derives substantial revenue from international commerce, jurisdiction is proper of Gnosis under CPLR 302(a)(3)(ii).

### D.    PERSONAL JURISDICTION OVER GNOSIS COMPORTS WITH DUE PROCESS.

In addition to satisfying CPLR § 302, personal jurisdiction over Gnosis comports with Constitutional Due Process requirements.  "Ordinarily ... if jurisdiction is proper under the CPLR, due process will be satisfied because CPLR § 302 does not reach as far as the constitution permits."  *See Cartier,* 2006 WL 3635321, at *4 (citation omitted).  As demonstrated above, specific personal jurisdiction is properly asserted over Gnosis under CPLR §§302(a)(1)-(3).

In any event, Merck Eprova can readily establish that Defendant's due process rights are preserved if the Court maintains jurisdiction over them.  To comply with due process, a person who is not present within the territory of the forum must have "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.''  *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)).  A defendant must "purposefully avail itself of the privilege of conducting activities within the forum State."  *Hanson v. Denckla,* 357 U.S. 235, 253 (1958).  Further, "the defendant's conduct and connection within the forum State [must be] such that he should reasonably anticipate being haled into court there."  *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).  "A foreign corporation 'purposefully avails' itself of a particular forum where the corporation places its products into interstate commerce and reasonably foresees that those products will be delivered into that forum."  *Kernan v. Kurz-Hastings, Inc.,* 997 F. Supp. 367, 374 (W.D.N.Y. 1998), *aff'd*, 175 F.3d 236 (2d Cir. 1999).

New York courts have held that manufacturers or distributors who place their products "in a stream of commerce destined for sale through a broad interstate market, and reap the

attendant benefits" are "properly subject to suit in one of the states comprising that market." *See e.g., City of New York*, 501 F. Supp. 2d at 420 (citation omitted).  The *City of New York* court aptly recognized that "[i]nterstate distributors and manufacturers 'place their products into the stream of commerce with either the subjective intention, or objective reason to know, that their products will be sold 'to a nationwide market, that is, in any or all states.'" *Id.* (quoting *Violet v. Picillo,* 613 F. Supp. at 1576)*.*  "Stream of commerce" cases in the Federal Circuit have similarly held that personal jurisdiction exists over non-resident defendants where an infringing product, produced by that defendant challenging jurisdiction, was sold in the forum by a third party that served as a distributor for the alleged infringing product in an established distribution network, of which defendant was knowledgeable and could have reasonably expected that the product would be sold in the forum.  *See generally, Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 428 (Fed. Cir. 1996); *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994).

As discussed above, Gnosis was well aware of AHD's nationwide distribution network (and perhaps Weller Health's, as well).  Gnosis, by distributing to AHD, knowingly placed its products into the stream of commerce, knowing that such products would be sold nationwide. Gnosis' representations on its website about serving the American market support this knowledge.  *See* Ford Dec., Ex. A.  Because Gnosis put the Gnosis Compound into the stream of commerce with the knowledge or reasonable expectation that it would be sold in New York, Gnosis has purposely availed itself of the privilege of conducting business in New York such that the exercise of long-arm jurisdiction fully comports with due process.  *See Cartier,* 2006 WL 3635321, at *4 (citation omitted) (finding same as to defendant).[9]

---

[9] The fact that AHD is not located in New York is irrelevant to the analysis.  *See Beverly Hills*, 21 F.3d at 1560 (holding manufacturers were subject to personal jurisdiction even though they did not control any distributors in

**E.    AT THE VERY LEAST, PLAINTIFF SHOULD BE PERMITTED JURISDICTIONAL DISCOVERY.**

Merck Eprova has made a *prima facie* showing of personal jurisdiction, which is all that is required at this stage to defeat a motion for dismissal for lack of personal jurisdiction.  *See A.I. Trade Finance,* 989 F.2d at 79-80 (reversing dismissal of complaint where plaintiff made *prima facie* showing that defendant amenable to personal jurisdiction in New York).  Therefore, for the foregoing reasons, Defendant's Motion to Dismiss should be denied.

In the event the Court were to find that Merck Eprova has not made a *prima facie* showing that jurisdiction exists, Plaintiff respectfully requests that the Court allow for jurisdictional discovery pursuant to CPLR § 3211(d) and an evidentiary hearing on this issue.  According to CPLR § 3211(d), "[s]hould it appear from affidavits submitted in opposition to a motion [to dismiss for lack of personal jurisdiction] . . . that facts essential to justify opposition may exist but cannot then be stated, the court may . . . order a continuance to permit further affidavits to be obtained or disclosure to be had . . . ."

At the very least, Merck Eprova has demonstrated that facts "may exist" that support this Court's jurisdiction over Gnosis.  *See* CPLR § 3211(d); *Peterson v. Spartan Indus., Inc.*, 310 N.E.2d 513, 515 (N.Y. 1974).  Plaintiff respectfully submits that it is entitled to discovery on jurisdictional issues because it has made a non-frivolous showing that facts pertinent to an acceptable basis for jurisdiction may exist.  *Peterson,* 310 N.E.2d at 515 (trial court correctly referred issue for a hearing and permitted plaintiff to conduct jurisdictional discovery).

---

forum state).  Rather, what is important is that the manufacturer/distributor purposefully shipped the accused product into the forum state through an *established* distribution channel.  *Id.* at 1565.  It is through such an act that the manufacturer/distributor can expect the product to be purchased in the forum state, whereby the forum state does not exceed its powers under the Due Process Clause if it asserts jurisdiction.  *Id.* at 1566.  Here, Defendant clearly put the Gnosis Compound into an established distribution channel and, therefore, cannot dispute that personal jurisdiction is appropriate.

Finally, in the unlikely event that facts sufficient to establish jurisdiction over Gnosis in New York are not presented to the Court's satisfaction after such jurisdictional discovery, then Plaintiff respectfully requests that this action be transferred to the Northern District of Georgia, the domicile of AHD. Despite its irrational arguments to the contrary, Gnosis surely is subject to jurisdiction *somewhere* in the United States for the torts committed in the United States. If this Court were to find that New York is not the appropriate forum, then undoubtedly, jurisdiction must be appropriate in Georgia.

**III.**     <u>**CONCLUSION**</u>

In light of the fact that Gnosis, through its distributor, conducts business in New York, has committed torts in New York and has committed torts outside New York which have caused injury in New York, Gnosis' Motion to Dismiss should be denied.

Dated: February 29, 2008

<div style="margin-left:40%;">

Respectfully submitted,

s/ Robert E. Hanlon
_____

Robert E. Hanlon (RH 8794)
Thomas J. Parker (TP 7219)
Alston & Bird LLP
90 Park Avenue
New York, New York 10016
Tel: 212-210-9400
Fax: 212-210-9444
robert.hanlon@alston.com
thomas.parker@alston.com

*Attorneys for Plaintiff Merck Eprova AG*

</div>