UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

Nº 07 Civ. 5898 (RJS)
_____

MERCK EPROVA AG,

Plaintiff,

VERSUS

GNOSIS S.P.A. and GNOSIS BIORESEARCH S.A.,

Defendants.

_____

MEMORANDUM AND ORDER
December 12, 2008
_____

RICHARD J. SULLIVAN, District Judge:

Plaintiff Merck Eprova AG ("Merck") brings this action against Defendants Gnosis, S.p.A. and Gnosis Bioresearch SA (collectively "Defendants" or "Gnosis"), alleging that Defendants knowingly mislabeled a dietary ingredient that competes with a related Merck product. Plaintiff alleges that this conduct constituted false advertising and contributory false advertising under the Lanham Act, 15 U.S.C. § 1125(a); unfair competition under the Lanham Act, *id.*; false advertising and deceptive trade practices under New York General Business Law sections 349(h) and 350(e)(3); and unfair competition under New York common law.

Before the Court is Defendants' motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. For the reasons set forth below, Defendants' motion is denied.

I. RELEVANT FACTS[1]

Merck is a Swiss corporation with its principal place of business in Switzerland. (Am. Compl. ¶ 2.) In 2001, Merck filed a New Dietary Ingredient Notification with the Food and Drug Administration ("FDA") regarding a dietary ingredient known as L-5-methyltetrahydrofolic acid calcium salt ("L-5-MTHF"). (*Id.* ¶ 10.) Beginning in approximately 2002, Merck began to market and sell L-5-MTHF in the United States. (*Id.* ¶ 13.)

Merck distributes this product in bulk, and purchasers of L-5-MTHF use it in various dietary supplements, medical foods, nutritional supplements, pregnancy vitamins, and foods for special dietary uses. (*Id.* ¶ 14.) Merck alleges that "the presence of genuine L-5-MTHF is used by Merck's customers as a unique selling point" to end consumers. (*Id.*)

Gnosis S.p.A. is an Italian corporation with its principal place of business in Italy. (*Id.* ¶ 3.) Gnosis Bioresearch SA is a Swiss corporation with its principal place of business in Switzerland. (*Id.*) Gnosis Bioresearch SA is also a wholly owned subsidiary of Gnosis S.p.A., and it sells all of its products to that parent entity. (Berna Decl. ¶¶ 13-14.)

Gnosis manufacturers, distributes, and supplies dietary ingredients, including an ingredient identified as 5-MTHF (the "Gnosis Compound"). (*Id.* ¶ 32.)[2] Gnosis S.p.A.'s website states that it "counts on a series of agents worldwide . . . [and] ranks first on the American, Korean, [and] Australian markets." (Ford Decl. Ex. A.) Plaintiff alleges that, "[t]hrough its agents," Gnosis causes the Gnosis Compound to be sold throughout the United States. (*Id.* ¶¶ 33-34.)

One such agent engaged by Defendants is AHD International LLC ("AHD"), an Atlanta, Georgia corporation. (Berna Decl. ¶ 6; *see also* Am. Compl. ¶¶ 33-34, 39.) AHD "specialize[s] in acting as agents for major foreign manufacturers by distributing nutritional ingredients in North America." (Berna Decl. Ex. D.) AHD advertises that it is "strictly a bulk supplier to manufacturers — [it] do[es] not sell to re-sellers or individuals," and its "minimum order size is approximately 25 kilos." (*Id.*) It also possesses an "exclusive distribution relationship with numerous natural products manufacturers" and a "5 warehouse distribution system," which provides purchasing customers with "assured availability and prompt delivery." (*Id.*) Defendants acknowledge that AHD conducted at least one sale of the Gnosis Compound in New York for approximately $5,000. (Berna Decl. ¶ 10.)

Plaintiff alleges that the Gnosis Compound is an impure form of Merck's product, and that Defendants have used advertising and labeling that is misleading to

---

[1] The following facts are taken from Merck's Amended Complaint, as well as declarations submitted in connection with the instant motion. *See Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005). For the purpose of resolving the motion, Plaintiff's allegations are assumed to be true and all reasonable inferences are granted in Plaintiff's favor. *See A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993).

[2] 5-methyltetrahydofolic acid comes in at least two forms, the "L-form" and the "D-form." (Am. Compl. ¶ 19-21.) Plaintiff contends that its product is the pure — and commercially preferable — L-form. (*Id.* ¶ 9-10.) Plaintiff further alleges that the Gnosis Compound is an impure diastereoisomeric mixture of the L- and D-forms, but that Defendants falsely label it as the pure L-form, L-5-MTHF. (*Id.* ¶ 34.)

2

distributors and the general public in order to cause the Gnosis Compound to be distributed throughout the United States. (*Id.* ¶¶ 34, 35, 38, 46, 47, 46-50, 67.) For example, through separate litigation against AHD in the Northern District of Georgia, Plaintiff obtained certificates of analysis, product labels, and other materials that Gnosis provided to AHD in connection with their distribution relationship. (*Id.* ¶ 45.) These materials, Plaintiff alleges, "falsely claim that the Gnosis Compound is pure L-5-MTHF . . . ." (*Id.* ¶ 46.) Based on these allegations, Plaintiff argues that Gnosis knew, or should have known, that its distributors would falsely label and advertise the Gnosis Compound and other products using it. (*Id.* ¶ 70.)

Merck contends that these acts have occurred globally, including within New York State. (*Id.* ¶ 51.) These acts allegedly expose New York citizens to "dangerous medical implications," and cause Merck to lose both sales of its product and New York customers who are mislead by Defendants' marketing and labeling practices. Plaintiff also alleges that Defendants' sale of the mislabeled Gnosis Compound damages Merck's reputation in New York. (*Id.* ¶¶ 57-59.)

II. STANDARD OF REVIEW

On a motion to dismiss for lack of personal jurisdiction, the plaintiff "bears the burden of establishing that the court has jurisdiction over the defendant . . . ." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (internal citations omitted); *Maersk, Inc. v. Neewra, Inc.*, 554 F. Supp. 2d 424, 440 (S.D.N.Y. 2008). However, "[p]rior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith . . . legally sufficient allegations of jurisdiction, i.e., by making a *prima facie* showing of jurisdiction." *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir. 1998) (internal quotation marks and citations omitted); *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997).

Under this standard, the plaintiff "must plead facts which, if true, are sufficient in themselves to establish jurisdiction." *Bellepointe, Inc. v. Kohl's Dep't Stores, Inc.*, 975 F. Supp. 562, 564 (S.D.N.Y. 1997). Where the issue of personal jurisdiction "is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993) (internal citations omitted); *see also PDK Labs*, 103 F.3d at 1108 (citing *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)); *Norben Import Corp. v. Metro. Plant & Flower Corp.*, No. 03 Civ. 8660 (WHP), 2004 WL 2378295, at *1 (S.D.N.Y. Oct. 25, 2004).

III. ANALYSIS

In order for Plaintiff to make a *prima facie* showing that the Court may exercise personal jurisdiction over Defendants, it must establish that (1) jurisdiction is proper under New York State law, and (2) the exercise of personal jurisdiction comports with due process principles. *Pryor*, 425 F.3d at 165. Based on Plaintiff's allegations, the Court finds that specific jurisdiction exists over Defendants under the New York long-arm statute, N.Y. C.P.L.R. ("CPLR")

302(a)(3)(ii), and that the exercise of jurisdiction does not offend the Due Process Clause.

A. New York Long-Arm Jurisdiction

1. Legal Standard

With respect to the exercise of specific jurisdiction over non-domiciliary defendants, New York's long-arm statute states, in pertinent part:

> [A] court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . commits a tortious act without the state causing injury to person or property within the state . . . if he . . . expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . . .

CPLR 302(a)(3)(ii). Thus, to make a *prima facie* showing that personal jurisdiction is proper, Plaintiff must show that: (1) Gnosis, either itself or through an agent, committed a tortious act outside of New York that serves as the basis for Plaintiff's claims; (2) the act caused injury in New York; (3) Gnosis should have foreseen that its conduct would have consequences in New York; and (4) Gnosis derives substantial revenue from interstate commerce.

2. Analysis

Defendants argue that Plaintiff did not adequately assert in the Amended Complaint that jurisdiction was proper under CPLR 302(a)(3), and that Plaintiff has not made a *prima facie* showing with respect to the second, third, and fourth elements of CPLR 302(a)(3)(ii). (Defs.' Mem. at 6-11.)

As a preliminary matter, it is of no moment that Plaintiff did not specifically cite to CPLR 302(a)(3) in the Amended Complaint. Defendants provide no authority for the argument that Plaintiff's "omission should effectively end any inquiry at this point" (Defs.' Mem. at 6), and the Court is aware of none. Notice pleading is all that is required by the Federal Rules, *see* Fed. R. Civ. P. 8(a)(1), and Plaintiff has alleged that Defendants conduct business in New York through agents and have engaged in tortious acts through those agents. (*See* Am. Compl. ¶¶ 6, 33, 55, 59.) These allegations put Defendants on notice that one potential basis for establishing personal jurisdiction would be CPLR 302(a)(3)(ii).

Defendants do not challenge Plaintiff's showing with respect to the first element of CPLR 302(a)(3)(ii). Accordingly, the Court looks to whether Plaintiff has established a *prima facie* case with respect to the second, third, and fourth elements of CPLR 302(a)(3)(ii).

a. Injury Within The State

Plaintiff has adequately alleged that an injury occurred within New York State. "The New York Court of Appeals has interpreted injury 'within the state' to include harm to a business in the New York Market through lost sales or lost customers." *Network, Inc. v. Access America/Connect Atlanta, Inc.*, 975 F. Supp. 494, 497 (S.D.N.Y. 1997) (citing *Sybron Corp. v. Wetzel*, 46 N.Y.2d 197, 205-

06 (N.Y. 1978). Plaintiff alleges that the distribution of the Gnosis Compound has caused, and will continue to cause, it to suffer lost sales and lost customers in New York State. (Am. Compl. ¶ 58.) These allegations are sufficient to satisfy this element of CPLR 302(a)(3)(ii).

    b. Foreseeable Consequences Within The State

Next, Defendants argue that their "ethereal connections with New York could not possibly lead to an expectation to be sued in New York." (Defs.' Mem. at 7.) Although colorfully presented, the argument is unpersuasive. Plaintiff's allegations are based in large part on Defendants' use of AHD as an agent and distributor. Specifically, Plaintiff contends (1) that Gnosis holds itself out as "rank[ing] first" in the American market (Ford Decl. Ex. A); (2) that it sought to maintain that competitive advantage by distributing its products as broadly as possible in the United States (*see* Am. Compl. ¶¶ 51, 55, 57); (3) that, in order to do so, Defendants intentionally engaged an agent that was "the distribution leader" in the North American market (Ford Decl. Ex. D); and (4) that the result of these intentional efforts to maximize commercial gain in the United States market included significant commercial contact with New York State (*see* Am. Compl. ¶¶ 57-58). These allegations are sufficient to establish a *prima facie* showing with respect to this element of long-arm jurisdiction under the CPLR.

"The test of whether a defendant expects or should reasonably expect his act to have consequences within the State is an objective rather than subjective one." *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 241 (2d Cir. 1999) (quoting *Allen v. Auto Specialties Mfg. Co.*, 357 N.Y.S.2d 547, 550 (3d Dep't 1974)). "New York courts have focused on whether there were concrete facts known to the nondomiciliary that should have alerted it that its product would enter the New York market." *Network, Inc.*, 975 F. Supp. at 497 (citing *Darienzo v. Wise Shoe Stores, Inc.*, 427 N.Y.S.2d 831, 833 (2d Dep't 1980)). "[F]oreseeability must be coupled with evidence of a purposeful New York affiliation, for example, a discernible effort to directly or *indirectly serve the New York market*." *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 468 (S.D.N.Y. 2008) (quoting *Schaadt v. T.W. Kutter, Inc.*, 564 N.Y.S.2d 865, 866 (3d Dep't 1991)) (emphasis added). Moreover, "[t]he activities of a representative of a non-domiciliary in New York will be attributed to the non-domiciliary for the purpose of long-arm jurisdiction if the non-domiciliary requested the performance of those activities in New York and benefitted therefrom." *Kappas v. T.W. Kutter, Inc.*, 596 N.Y.S.2d 361, 362 (1st Dep't 1993) (citing *Cato Show Printing Co., Inc. v. Lee*, 446 N.Y.S.2d 710 (1st Dep't 1981)).

Defendants publicly boast of their performance in the United States market, and they engaged an agent that specializes in distributing foreign companies' products in bulk throughout North America. Defendants concede that AHD conducted at least one sale of the Gnosis Compound in New York. (Berna Decl. ¶ 10.) Notwithstanding a dispute regarding the amount of the Gnosis

Compound involved in the sale,[3] the $5,000 transaction alleged in the Amended Complaint is significant to establish specific jurisdiction based on alleged misconduct relating to precisely this type of commercial transaction.

The foreseeability element may be satisfied by allegations relating to a distribution agreement by a defendant coupled with statements by the distributor regarding nation-wide distribution. *See Kernan*, 175 F.3d at 241-42; *American Network*, 975 F. Supp. at 495-96 (finding that the defendant's indication on its website that it serves customers "across the U.S." was sufficient to satisfy the foreseeability requirement of CPLR 302(a)(3)(ii)); *Adams v. Bodum Inc.*, 617 N.Y.S.2d 316, 316 (1st Dep't 1994) ("Defendant-appellant manufacturer's exclusive distributorship agreement with co-defendant distributor, covering as it did the entire United States, provided ample basis for the . . . court's finding that appellant should have reasonably expected that persons in New York would be purchasing and using its coffee maker."); *see also Kappas*, 596 N.Y.S.2d at 362. Here, both Gnosis and its distributor, AHD, made sweeping statements about the scope of their commercial activity in North America. Viewed objectively, such representations made it foreseeable that conduct by Defendants and their agents would have consequences in New York State.

---

[3] Defendants submitted a declaration stating that, "on information and belief," the shipment of the Gnosis Compound to New York "consist[ed] of one kilogram." (Berna Decl. ¶ 10). However, AHD advertises a "minimum order size" of "approximately 25 kilos." (Ford Decl. Ex D.) In any event, the Court need not resolve this factual dispute in order to decide Defendants' motion.

Although the distribution agreement between Defendants and AHD is not before the Court, Defendants acknowledge the existence of the relationship (Berna Decl. ¶ 6), and AHD's website states that it engages in the sort of "exclusive distribution relationship[s]" (Ford Decl. Ex. D) at issue in *Kernan*, 175 F.3d at 241-42. Likewise, although Plaintiff does not allege the existence of a formal information-sharing or pricing agreement such as that in *Kernan*, Gnosis provided AHD with technical information about the Gnosis Compound, including certificates of analysis and product labels. (Am. Compl. ¶¶ 41-42, 45-46.) It is reasonable to infer, in this procedural posture, that Gnosis provided such information for the purpose of facilitating the distribution of the Gnosis Compound throughout the United States.

Defendants' citation to *Montalbano v. Easco Hand Tools, Inc.*, 766 F.2d 737 (2d Cir. 1985) does not persuade the Court otherwise. (Defs.' Mem. at 9.) In *Montalbano*, the Second Circuit noted that New York courts construe the foreseeability requirement of CPLR 302(a)(3)(ii) with reference to *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980). *Montalbano*, 766 F.2d at 741. The court stated that the "crucial" language from *Woodson* is that

> if the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or *indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States* if its allegedly

6

>defective merchandise has there been the source of injury to its owners or to others.

*Id.* at 742 (quoting *Woodson*, 444 U.S. at 295) (emphasis added). Reviewing New York state authority on this issue, the Second Circuit stated that, for purposes of a foreseeability finding, there must be a "'purposeful affiliation' with a distributor that served an interstate market that included New York." *Id.* at 743. The court then found that personal jurisdiction did not exist because the distributor "serviced only a four-state non-New York market . . . ." *Id.* at 743. Thus, Plaintiff's allegations are distinguishable from *Montalbano.* Having embarked on a course of commercial activity that sought to capitalize on the entire United States market, it was foreseeable that Defendants might be sued in any state, including New York. Thus, Plaintiff's allegations are sufficient to make a *prima facie* showing with respect to the foreseeability element.

### c. Revenue From Interstate Commerce

Lastly, Defendants derive substantial revenue from international commerce. This element of the CPLR "is designed to narrow 'the long-arm reach to preclude the exercise of jurisdiction over nondomiciliaries who might cause direct, foreseeable injury within the State but 'whose business operations are of a local character.'" *LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 211 (N.Y. 2000) (quoting *Ingraham v. Carroll*, 90 N.Y.2d 592, 599 (N.Y. 1997)). Plaintiff alleges that Defendants' activities are global in scope. (Am. Compl. ¶ 51.) The Gnosis website points to markets in Europe, the United States, Canada, Korea, Japan, and Australia. (Ford Decl. Ex. A.) A report submitted by Plaintiff indicates that 80% of Defendants' sales occur in the United States and Australia. (Ford Decl. Ex. B at 5.) Thus, Plaintiff has made the requisite *prima facie* showing that Defendants derive substantial revenue from international commerce.

### B. Due Process Considerations

To satisfy due process requirements in connection with the exercise of specific jurisdiction, Defendants must have "minimum contacts" with the forum, and exercising jurisdiction must be reasonable under the Due Process Clause. *See Kernan*, 175 F.3d at 242.

"Ordinarily . . . if jurisdiction is proper under the CPLR, due process will be satisfied because CPLR § 302 does not reach as far as the constitution permits." *Cartier v. Oakley*, No. 06 Civ. 5841 (LAP), 2006 WL 3635321, at *4 (S.D.N.Y. Dec. 11, 2006) (quoting *Topps Co. v. Gerrit J. Verburg Co.*, 961 F. Supp. 88, 91 (S.D.N.Y. 1997)); *see also D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 105 (2d Cir. 2006); *Ingraham*, 90 N.Y.S.2d at 597 ("[T]he subdivision [302(a)(3)] was not designed to go to the full limits of permissible jurisdiction. The limitations contained in subparagraphs (i) and (ii) were deliberately inserted to keep the provision 'well within constitutional bounds" (internal quotation marks omitted)). After considering the constitutional issue, the Court concludes that this case does not present an exception to the general rule that due process is satisfied where the elements of CPLR 302(a)(3) are met.

7

1. Minimum Contacts

For the purpose of due process, sufficient "minimum contacts" exist where a defendant attempts, even if indirectly, to serve the forum's market. *See Foot Locker Retail, Inc. v. SBH, Inc.*, No. 03 Civ. 5050 (DAB), 2005 WL 91306, at *4 (S.D.N.Y. Jan. 18, 2005) (citing *Schaadt*, 564 N.Y.S.2d at 866). Here, Defendants claimed to reach a national market, they hired AHD to distribute the Gnosis Compound throughout the country, they provided specific proprietary information about the Gnosis Compound to AHD to facilitate the product's distribution, and AHD made at least one such sale in New York. These allegations satisfy due process considerations.

"[I]f the [litigation] risks [were] too great" with respect to Defendants' business strategy, they had the option of "severing [their] connection with the State." *Woodson*, 444 U.S. at 297; *see also A-1 Jewelry & Pawn*, 501 F. Supp. 2d at 420 ("Interstate manufacturers and distributors, however, can act to limit the states in which their products will be sold thus structuring their primary conduct to provide some minimum assurance as to where that conduct will and will not render them liable to suit . . . ." (internal quotation marks omitted)). Having chosen not to limit the scope of their business strategy, due process does not shield Defendants from their obligations relating to injuries allegedly caused by their distribution of the Gnosis Compound.

2. Reasonableness Of Exercising Jurisdiction

"The second stage of the due process inquiry asks whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice' — that is, whether it is reasonable under the circumstances of the particular case." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The "reasonableness" of asserting jurisdiction is based on five factors:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Bank Brussels Lambert*, 305 F.3d at 129 (quoting *Metro. Life*, 84 F.3d at 568). However, "the exercise of jurisdiction is favored where the plaintiff has made a threshold showing of minimum contacts," and Defendant must "*present*[] '*a compelling case* that the presence of some other considerations would render jurisdiction unreasonable.'" *Metro. Life*, 84 F.3d at 568 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985)) (emphasis added).

Defendants have not persuaded the Court that the exercise of personal jurisdiction in this case would be unreasonable. First, although conducting litigation in New York may impose a burden on Defendants, "'the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago.'"

*Kernan*, 175 F.3d at 244 (quoting *Metro. Life*, 84 F.3d at 568). Defendants concede this point with respect to communication, and the Court finds implausible their contention that "transportation has only become more difficult since . . . 1987." (Defs.' Mem. at 19.) Defendants are part of an international business engaged in commercial activity on a global scale. Inconvenience relating almost exclusively to communication and travel does not implicate constitutional concerns. *See Bank Brussels Lambert*, 305 F.3d at 129-30. Thus, Defendants have not met their burden of demonstrating that this factor weighs against exercising jurisdiction.

Second, New York's interest in this dispute is significant. This interest is partly based on the need to enforce the State's commercial laws, which Defendants acknowledge apply to some of Plaintiff's claims (*see* Defs.' Mem. at 21). More importantly, New York has a strong interest in preventing harm to its citizens arising from the distribution of potentially dangerous dietary supplements through the use of false advertising and misleading marketing. Thus, this factor counsels in favor of exercising jurisdiction.

On the other hand, Plaintiff's interest in convenient and effective relief is not meaningfully advanced by litigating this action in New York State. Plaintiff, a Swiss Corporation, seeks to sue Swiss and Italian Defendants. Although Plaintiff too is engaged in commercial activity in the forum, that fact alone does not suggest that it would be *more* convenient to resolve this action in New York instead of the myriad other jurisdictions in which Merck engages in commerce. This factor weighs in Defendants' favor.

The fourth factor — the efficient administration of justice — looks to "where witnesses and evidence are likely to be located." *Schottenstein v. Schottenstein*, No. 04 Civ. 5851 (SAS), 2004 WL 2534155, at *10 (S.D.N.Y. Nov. 8, 2004). While some evidence may be located abroad and in Georgia, a significant number of witnesses and documents providing relevant information regarding the sales and marketing practices of Defendants and their agent, AHD, in New York are likely to be located in the forum. Accordingly, this factor weighs in favor of exercising jurisdiction.

Finally, the parties have failed to point to any substantive social policies that might be advanced or hindered by exercising jurisdiction over Defendants. Although Defendants argue that Plaintiff's allegations may implicate certain unspecified policies of other foreign governments (Defs.' Mem. at 21-22), they do not argue that the exercise of jurisdiction conflicts with those policies. Accordingly, the Court finds that "holding [Defendants] subject to jurisdiction in New York does not appear likely to *erode* any shared social policies." *Bank Brussels Lambert*, 305 F.3d at 130 (emphasis added). This factor in the Court's due process analysis is neutral.

In sum, the second and fourth factors favor Plaintiff's position, the third factor cautions against exercising jurisdiction over Defendants, and the first and fifth factors are roughly neutral. Therefore, Defendants have not presented a "compelling case" that subjecting them to suit in New York would

9

raise concerns of a constitutional magnitude. Accordingly, the Court finds that Defendants have sufficient contacts with New York State to satisfy the strictures of the Due Process Clause, and that the exercise of personal jurisdiction is reasonable.

### IV. CONCLUSION

For the reasons stated above, Defendants' motion is denied. The Court finds that specific jurisdiction over Defendants exists pursuant to CPLR 302(a)(3)(ii), and that Defendants' contacts with New York State are sufficient to meet federal constitutional standards. The Clerk of the Court is respectfully directed to terminate the motion docketed as document number 9.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: December 12, 2008
New York, New York

\*   \*   \*

Plaintiff is represented in this matter by Robert Eliot Hanlon, Esq. and Thomas Jude Parker, Esq., Alston & Bird LLP, 90 Park Avenue, New York, New York 10016. Defendants are represented by Bryon L. Friedman, Esq., Littleton, Joyce, Ughetta, Park & Kelly, L.L.P., 34th Floor, New York, New York 10006; and Steven C. Smith, Esq. and William D. Chapman, Esq., Smith, Chapman, and Campbell, 1800 North Broadway, Suite 2000, Santa Ana, California, 92706.

10