UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MERCK EPROVA AG,

                              Plaintiff,

      -v-                                        No. 07 Civ. 5898 (RJS)
                                                   MEMORANDUM AND ORDER

GNOSIS S.P.A. and GNOSIS BIORESEARCH S.A.,

                              Defendants.

RICHARD J. SULLIVAN, District Judge:

      Plaintiff Merck Eprova AG commenced this action against Defendants Gnosis S.P.A. and Gnosis Bioresearch S.A., alleging that Defendants' actions in advertising and promoting its dietary ingredients constituted false advertising under Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); contributory false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); federal unfair competition under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); unfair competition under New York common law; deceptive trade practices pursuant to N.Y. Gen. Bus. Law § 349(h); and false advertising under N.Y. Gen. Bus. Law § 350(e)(3). Trial in this matter took place from June 20, 2011 through June 30, 2011. On September 30, 2012, the Court entered judgment for Plaintiff on its Lanham Act false advertising and contributory false advertising claims, awarded Plaintiff attorneys' fees, and ordered Defendants to engage in a corrective advertising campaign that was either approved by the Court or developed by Merck.

      Before the Court is Plaintiff's motion for attorneys' fees and costs, which Plaintiff filed on November 5, 2012. Defendant filed its opposition brief on November 28, 2012, and Plaintiff replied on December 10, 2012. Additionally before the Court is a dispute between the parties

regarding the scope of the Court-ordered advertising campaign. For the reasons set forth below, the Court awards Plaintiff $1,924,962.50 in fees and $287,485.88 in costs. Further, the Court, in large part, orders Defendants to undertake the advertising campaign proposed by Plaintiff.

I. ATTORNEYS' FEES

The parties agree that the standard governing the Court in determining attorneys' fees is that set forth by the Second Circuit in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 522 F.3d 182 (2d Cir. 2008). Under this approach, a court must first set a "reasonable hourly rate" for each attorney and staff member, keeping in mind all case-specific variables. Second, the court must determine the number of hours reasonably expended. Third, it must multiply the reasonable hourly rate by the number of hours reasonably expended to determine the "presumptively reasonable fee." *See Margolies v. County of Putnum N.Y.*, No. 09 Civ. 2061 (RKE) (GAY), 2011 WL 721698, at *1 (S.D.N.Y. Feb. 23, 2011).

A. Reasonable Hourly Rate

A reasonable hourly rate is the rate a paying client would be willing to pay. *Arbor Hill*, 552 F.3d at 190. To determine this rate, the Second Circuit has directed courts to look to the twelve factors identified by the Fifth Circuit in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714 (5th Cir. 1974). These include, *inter alia*, the time and labor required; the level of skill necessary to perform the legal service properly; the attorneys' customary hourly rates; whether the fee is fixed or contingent; the amount of money involved in the case; the results obtained; and the experience, reputation, and ability of the attorneys. *See Arbor Hill*, 522 F.3d at 190. A court should also "bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively" and "that such an individual might be able to negotiate

with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case." *Id.*  In evaluating these factors, a court may rely on "its own knowledge of comparable rates charged by lawyers in the district," *Morris v. Eversley*, 343 F. Supp. 2d 234, 345 (S.D.N.Y. 2004), and evidence provided by the parties.

The Court has previously determined reasonable rates for Plaintiff's counsel in this matter.  On March 17, 2011, in an Order stemming from Defendants' egregious discovery violations, the Court held that the partners working on Plaintiff's claim merited a reasonable rate of $600 per hour, associates $300 to $350, paralegals $170 to $205, and support staff $150 for work performed in 2009 and 2010 – rates below those then requested by Plaintiff. (Doc. No. 146 at 14-17.)  Plaintiff now argues that the Court should depart from these rates and instead apply its counsel's – Alston & Bird's – 2011 billing rates.  Plaintiff asserts that 2011 rates are appropriate, despite the fact that these fees accrued beginning in 2009, because "compensation received several years after the services were rendered . . . is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed."  (Pl.'s Br. at 3 (quoting *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989).)  To account for this delay in payment, Plaintiff contends that the Court must apply "current rather than historic hourly rates."  (*Id.* (quoting *Missouri*, 491 U.S. at 283-84.)  Conversely, Defendants argue that the Court should apply the rates in the earlier Order because Alston & Bird's 2011 rates are unreasonable.  (Defs.' Opp. at 2.)  Specifically, Defendants cite the Court's rationale for reduction in the 2011 Order, arguing that Plaintiff likely had the ability to negotiate lower fees and that the fees requested are higher than those routinely awarded in this district. (*Id.*)  Defendants further assert that the 2011 rates would be inappropriate given the lengthy duration of this case. (*Id.* at 3.)

Having already considered the *Arbor Hill* factors with regard to a number of Plaintiff's counsel, the Court agrees with Defendants that the 2011 Order provides an appropriate benchmark in weighing this motion. However, the Court disagrees that those rates remain "fair and reasonable" given the passage of time. Moreover, Plaintiff has provided greater support for its attorneys' rates than it put forth in its previous application. Finally, it is without dispute that Supreme Court and Second Circuit precedent directs courts to apply current rates in fee disputes, *see, e.g.*, *Missouri*, 491 U.S. at 283-84, *A.R. v. New York City Dep't of Educ.*, 407 F.3d 65, 83 (2d Cir. 2005); *In re Paine Webber Ltd. P'Ships Litig.*, No. 94 Civ. 8547 (SHS), 2003 WL 21787410, at *3 (S.D.N.Y. Aug. 4, 2003). Ninety-seven percent of the recorded hours in this motion occurred from 2009 to 2011. (Pl.'s Reply at 2.) Accordingly, the Court will use the rates it determined to be reasonable via its prior *Arbor Hill* analysis as a starting point. However, it will add the rate increase each Alston & Bird attorney earned from 2010 to 2011 to better reflect Plaintiff's counsel's current billing practices. For those attorneys not addressed in the 2011 Order, the Court will apply a reduction to Plaintiff's requested rate proportional to that applied in the prior Order.

In its prior Order, the Court held $600 per hour to be a reasonable rate for partners Robert Hanlon and Thomas Parker, despite Plaintiff's request for $700 per hour for work completed in 2009 and $735 per hour for work completed in 2010. Plaintiff now requests a 2011 rate of $775 per hour. (*See* Pl.'s Br. at 11.) Given the partners' $40 hourly rate increase from 2010 to 2011, the Court concludes that a rate of $640 per hour is appropriate. While the Court did not previously consider the other partners listed in this motion, Plaintiff provides little reason for the Court to depart from its 2011 analysis. (*See id.* at 7.) Thus, applying the same proportional

4

reduction (that is, $135 of $775, or approximately 17.5%), the Court concludes that the reasonable rates for partners Deepro Mukerjee and Adam Biegel are $570 and $467, respectively, and that the reasonable rate for counsel Lara Holzman is $590.

The Court considered the work of three associates, Natalie Clayton, Victoria Spataro, and Adrienne Moran, in its prior Order. Plaintiff now requests rates of $590, $550, and $475 for the associates, respectively. The Court, however, previously concluded that a rate of $350 per hour was appropriate for Clayton and Spataro, and a rate of $300 per hour was appropriate for Moran. Since that time, Clayton's rate has increased $85 per hour, Spataro's $75, and Moran's $70. (*See id.* at 11.) Accordingly, the Court finds that a reasonable rate for each associate is, respectively, $435, $425, and $370. Plaintiff also seeks fees for a number of associates not considered in the prior Order. However, Plaintiff again provides no rationale for departing from the prior reductions. Thus, applying the same reduction as applied to Clayton's fee request (that is, $155 of $590, or approximately 26%), the Court finds that reasonable rates for the remaining associates range from $269 to $457. (*See id.*); *see also supra* Table 1.

Four paralegals worked on this case, at claimed rates ranging from $150 to $225. (*See id.*) In its March 2011 Order, the Court held that the rates Plaintiff sought for its paralegals were reasonable, particularly given their congruence with rates previously allowed in this district. *See, e.g.*, *Lucky Brand Dungarees, Inc. v. Ally Apparel Resources, LLC*, No. 05 Civ. 6757 (LTS) (MHD), 2009 WL 466136, at *6 (S.D.N.Y. Feb. 25, 2009) (awarding hourly rate of $205-$235 for paralegals). For the same reason, the Court concludes that the rates of $150 to $225 that Plaintiff seeks for its paralegals are reasonable.

Plaintiff also seeks reimbursement for fifteen support staff. While the number of staff is reasonable given the rigors of trial, the requested rates of $110 to as high as $295, are excessive for support staff and far outpace the $50 per hour rate often used in this district. *See Lucky Brand*, 2009 WL 466136, at *6. In its prior Order, the Court adopted Defendants' recommendation of $150 per hour as reasonable for support staff. Since that time, the staff members discussed in that Order have received hourly rate increases of $10. Accordingly, the Court concludes that $160 per hour is a reasonable rate for support staff with reported rates at or above that level. Support staff reporting lower rates will be included at those rates. (*See* Pl.'s Br. at 11-12); *see also supra* Table 1.

### B. Hours Reasonably Expended

The Court must next determine the number of hours reasonably expended by Plaintiff's counsel. In reviewing the submitted time logs for reasonableness, the Court relies on its own familiarity with the case, as well as its experience with the parties' evidentiary submissions and arguments. *See Lucky Brand*, 2009 WL 466136, at *1. The Court is then tasked with subtracting those hours that are "excessive, redundant, or otherwise unnecessary," *see Robinson v. City of New York*, 05 Civ. 9545 (GEL), 2009 WL 3109846, at *5 (S.D.N.Y. Sept. 29, 2009), with the guiding inquiry being "whether 'at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" *Id.* (quoting *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)). Defendants request a 50% across the board reduction of Plaintiff's hours, based on allegedly vague billing practices, inaccurate or incomplete entries, work done by overqualified or too many persons, excessive billing and travel, and inclusion of secretarial work. (Defs.' Opp. at 9-16.) For the reasons set forth below, Defendants arguments are unavailing.

6

Defendants raise a range of objections to Alston & Bird's billing practices, asserting that Alston & Bird engaged in block billing, provided too vague descriptions of the work completed, overbilled hours, employed too many or too experienced attorney's on tasks, and improperly included secretarial work and travel time in their calculations. (*Id.* at 9-12.) However, these objections are without merit. First, block billing of the sort submitted by Plaintiff's counsel "has been held to comply with Second Circuit standards and client expectations." *Gentle Wave Shipping S.A. v. Transfield Shipping Inc.*, 09 Civ. 7909 (RWS), 2010 WL 571975, at *2 (S.D.N.Y. Feb. 16, 2010). Further, while Defendants quibble with Alston & Bird's use of phrases such as "conference call," "prepare witness for deposition," and "memo drafting," counsel need not "record in great detail how each minute of his time was expended." *Id.* Instead, he should "identify the general subject matter of his time expenditures." *Id.* Finally, Defendants argue that Plaintiff's entries are often inaccurate, billing for eight hours of trial when court time was limited to half a day (Defs.' Opp. at 11), or merely implausible or excessive, where attorneys billed ten or more hours a day leading up to and during trial (*id.* at 13-14). However, plainly, as Plaintiff states, trial is a "time consuming process," both in and out of the Court. (Pl.'s Reply at 7.) In reviewing Plaintiff's counsel's time sheets, the Court finds nothing excessive or questionable about the entries.

Defendants also argue for reductions as a result of Alston & Bird's allegedly overqualified or over-abundant staffing. (Defs.' Opp. at 12-13.) However, in reviewing Plaintiff's counsel's time logs, the Court does not detect the type of inappropriate staffing it found fault with in the 2011 Order. Indeed, the work of only five attorneys accounts for eighty-nine percent of the total hours expended in this case. (Pl.'s Br. at 9.) Moreover, while the 2011

Order was limited to fees specific to Defendants' egregious discovery violations, this fee motion pertains to all work completed in preparation for trial. Clearly, the greater breadth of this Order presupposes a greater expenditure of hours. Accordingly, the Court finds these objections without merit.

Defendants finally contend that Plaintiff inappropriately included secretarial work and inordinate travel time in its billing calculation. However, Defendants provide no specific support for these objections, and the Court sees no evidence of them in the time logs. Thus, these objections too must fail.

Based on the Court's familiarity with the work performed in this case, as well as the evidence presented of that work and the Court's knowledge of the relevant legal market, *see McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96-97 (2d Cir. 2006), the Court does not find that a reduction of hours is appropriate.

Accordingly, the Court calculates Plaintiff's attorneys' fees as follows:

| NAME | HOURS | RATE | TOTAL |
|---|---:|---:|---:|
| **Partner** | | | |
| Hanlon | 763.4 | 640 | 488,576.00 |
| Parker | 55.2 | 640 | 35,328.00 |
| Mukerjee | 33.9 | 570 | 19,323.00 |
| Biegel | 39.3 | 467 | 18,353.10 |
| **Counsel** | | | |
| Holzman | 17.8 | 590 | 10,502.00 |
| **Associates** | | | |
| Clayton | 988.9 | 435 | 430,171.50 |
| Spataro | 1213.5 | 425 | 515,737.50 |
| Ganske | 10.6 | 380 | 4,028.00 |
| Hess | 142.6 | 320 | 45,632.00 |
| Hsia | 1.3 | 457 | 594.10 |
| Ravi | 10.8 | 380 | 4,104.00 |
| Iams | 11.9 | 269 | 3,201.10 |
| Moran | 162.4 | 370 | 60,088.00 |
| Morris | 61.7 | 380 | 23,446.00 |

| | | | |
|---|---:|---:|---:|
| Schaeffer | 6.1 | 317 | 1,933.70 |
| Soderstrom | 193.1 | 280 | 54,068.00 |
| **Paralegals** | | | |
| Factor | 4.1 | 195 | 799.50 |
| Levy | 628.5 | 220 | 138,270.00 |
| Sanchez | 147.8 | 225 | 33,255.00 |
| Timony | 108.1 | 150 | 16,215.00 |
| **Support Staff** | | | |
| Belvoir | 2.2 | 160 | 352.00 |
| Brand | 11.5 | 110 | 1,265.00 |
| Brasher | 19.5 | 160 | 3,120.00 |
| Cuvilly | 21.2 | 160 | 3,392.00 |
| Davey | 3.9 | 160 | 624.00 |
| Fitzgerald | 19.8 | 160 | 3,168.00 |
| Grudzien | 9.2 | 160 | 1,472.00 |
| Johnson | 20.5 | 160 | 3,280.00 |
| Khaindrava | 1.6 | 160 | 256.00 |
| Lewis | 3.9 | 160 | 624.00 |
| Malloy | 1.9 | 160 | 304.00 |
| Michaels | 1.4 | 160 | 224.00 |
| Miller | 1.8 | 120 | 216.00 |
| Trawick | 17.4 | 160 | 2,784.00 |
| Worthy | 1.6 | 160 | 256.00 |
| **Total** | | | **$1,924,962.50** |

Defendants protest that such a sum far outpaces their sales of the product at issue, $175,664.71, as well as the damages awarded by the Court, $526,994.13. (Defs.' Opp. at 6.) But Defendants fail to account for the actual stakes in this case, namely, the market share of one of Plaintiff's flagship products, and the entirety of Alston & Bird's result, specifically, an injunction barring Defendants' continued falsely advertising. (*See* Pl.'s Br. at 4.) For these reasons, the Court concludes that $1,924,962.50 presents a "presumptively reasonable fee" for Plaintiff's counsel's representation in this case. *See Arbor Hill*, 522 F.3d at 190.

## II. Costs

Pursuant to Federal Rule of Civil Procedure 54(d)(1), taxable costs "should be allowed to the prevailing party." Fed.R.Civ.P. 54(d)(1). The term "costs," as used in Fed.R.Civ.P. 54, is

9

defined in 28 U.S.C. § 1920 and Local Rule 54.1 as spanning the costs of transcripts, depositions, witness fees, printing, copying, and the like.  Moreover, where statutes provide for the shifting of attorneys' fees, awards may "include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *Amaprop Ltd. v. Indiabulls Fin. Services Ltd.*, 10 Civ. 1853 (PGG), 2011 WL 1002439, *9 (S.D.N.Y. Mar. 16, 2011).  As such, plaintiffs may recover "[i]dentifiable, out-of-pocket expenses," but not "non-recoverable, routine office overhead."  *Kuzma v. I.R.S.*, 821 F.2d 930, 933-34 (2d Cir. 1987); *see also Settlement Funding, LLC v. AXA Equitable Life Ins. Co.*, No. 09 Civ. 8685 (HB), 2011 WL 2848644 (S.D.N.Y. July 18, 2011) (allowing costs for trial graphics and video deposition); *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207 (JGK), 2010 WL 3119374, at *7 (S.D.N.Y. Aug. 6, 2010) (awarding costs for filing fees, expert witnesses, electronic discovery services, copies, mailing, and travel).

Plaintiff seeks the costs of trial graphics, electronic research, copying and binding, travel, local transportation, long distance telephone bills, messenger services, delivery, working meals, trial technology support, deposition videos, sample testing, and expert witness fees. (Pl.'s Br. at 12-13.)  Defendants object that Plaintiff has failed to provide sufficiently specific supporting documentation for the copying and binding costs; however, Plaintiffs provided invoices specifying the number of pages copied and copies made.  (*See* Decl. of Robert E. Hanlon ("Hanlon Decl."), dated Nov. 5, 2012, Ex. 11.)  Similarly, Defendants challenge the sufficiency of Plaintiff's internet research documentation; however, these costs are itemized on Plaintiff's counsel's logs.  (*See id.* at Ex. 1-5.)  Defendants also argue that Plaintiff claims "unnecessary" costs, such as chemical testing of Defendants' product.  But Defendants are not the arbiters of

what was "necessary" for Plaintiff's litigation strategy, and it is not implausible that such testing could prove helpful in litigation concerning false claims of chemical purity.  Finally, Defendants contest Plaintiff's inclusion of the costs of local meals and the quality of Plaintiff's counsel's local transportation.  Again, these costs are itemized in Plaintiff's submitted logs and Plaintiff's attest that all of the forgoing costs are "ordinarily charged to clients."  (*See id.*; Pl.'s Br. at 14.)

Accordingly, the Court calculates Plaintiff's expenses as follows:

| EXPENSE | TOTAL |
|---|---:|
| Document Production/Binding8 | 38,066.43 |
| Outside Doc. Reproduction | 15,456.17 |
| Deposition Travel | 9,347.22 |
| Local Transportation | 5,508.20 |
| Long Distance Telephone Bills | 1,500.37 |
| Messenger Services | 331.49 |
| Delivery Charges (UPS) | 1,780.02 |
| Working Meals | 5,557.85 |
| Trial Technology Support | 31,424.83 |
| Deposition Videos | 18,333.67 |
| Sample Testing from BioScreen | 21,483.00 |
| Expert Witness Fees | 121,394.00 |
| Lexis/Westlaw Research Fees | 17,302.63 |
| **Total** | **$287,485.88** |

III.  CORRECTIVE ADVERTISING CAMPAIGN

In its Opinion After Bench Trial, the Court ordered Defendants to engage in a campaign of corrective advertising to explain the differences between the products at issue in this action.  The Court is now in receipt of a joint letter from the parties, dated January 25, 2013, outlining the parties' respective proposals for that campaign.  While the parties agree on the majority of the proposed plan, including much of its content and its dissemination to Defendants' clients and at trade shows, the parties do clash over certain key aspects.  Specifically, Plaintiff proposes that the ads (1) disclose that the campaign is court-ordered; (2) explain that Defendants'

misrepresentations were found to be willful; (3) provide a link to the Court's Opinion hosted on Alston & Bird's website; (4) run on Defendants' homepage; (5) run on third-party industry websites; and (6) run in trade magazines where Defendants' offending products were advertised. Defendants object that (1-2) compelling disclosures that the campaign is compulsory and their misrepresentations willful would be punitive and unrelated to curing market confusion over the products; (3) providing a link to the Court's Opinion is similarly unnecessary, and merely provides free advertising for Alston & Bird[1]; (4) the ads should only run on Defendants' website where the products are sold, and not Defendants' homepage; (5-6) the ads should not run on third-party websites nor in trade magazines as Defendants themselves did not advertise there.

An order of corrective advertising must be "reasonable and causally related to the false advertising." *Mobius Mgmt. Sys., Inc. v. Fourth Dimension Software, Inc.*, 880 F. Supp. 1005, 1025 n.13 (S.D.N.Y. 1994). Accordingly, while the Court agrees with much of Plaintiff's proposed campaign, certain requests extend beyond the campaign's purpose of addressing consumer confusion created by Defendants' conduct. Accordingly, the Court concludes that (1) the ads shall disclose that the campaign is court-ordered to provide consumers with context for Defendants' clarification. However, (2) the ads need not disclose that Defendants' misrepresentations were willful as that is immaterial to the content of the false advertisement. Similarly, (3) the ads shall provide a link to the Court's Opinion to provide greater context; however, the Opinion need not be hosted on Alston & Bird's website. Additionally, (4) the ads shall run on Defendants' homepage as well as their products' sale page to ensure sufficient market dissemination. Finally, (5-6) the ads need only run on third-party industry websites and in trade magazines where the offending products were or are presently advertised by Gnosis.

---

[1] For example, the Opinion is presently available without charge on Justia.com.

## IV. CONCLUSION

In sum, the Court concludes that the requested attorneys' fees and costs are "within the range of attorneys' fees awards made in comparable cases." *See Bellifemine*, 2010 WL 3119374, at *7. Thus, the Court AWARDS Plaintiff $1,924,962.50 in attorneys' fees and $287,485.88 in costs. The Clerk of Court is respectfully directed to terminate the motion located at docket number 243.

Further, the Court concludes that Plaintiff's proposed corrective advertising campaign is largely "reasonable and causally related to the false advertising" at issue. *Mobius Mgmt. Sys., Inc.*, 880 F. Supp. at 1025 n.13. Thus, the Court ORDERS Defendants to implement Plaintiff's proposed campaign, less the modifications described above. Specifically, Gnosis's corrective advertising campaign (1) shall disclose that the ads are court-ordered; (2) need not disclose that Defendants' misrepresentations were willful; (3) shall provide a link to the Court's Opinion, regardless of which site hosts the Opinion; (4) shall run on Defendants' homepage and their products' sale page; and (5-6) need only run on third-party industry websites and in trade magazines where the offending products were or are presently advertised by Gnosis.

SO ORDERED.

Dated:     January 31, 2013
           New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1-31-13